JS 44  (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CPJD Holdings LLC d/b/a The Little Lion

**DEFENDANTS**
Utica First Insurance Company

**(b)** County of Residence of First Listed Plaintiff   Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Oneida, NY
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Douglas R. Widin, Esq./Elizabeth Vieyra, Esq.  (REED SMITH LLP)
Three Logan Square    Suite 3100    1717 Arch Street
Philadelphia, PA 19103    215-851-8100

Attorneys *(If Known)*
Steven J. Schildt, Esq.   (POST & SCHELL, P.C.)
Four Penn Center, 13th Fl.    1600 John F. Kennedy Blvd.
Philadelphia, PA 19103    215-587-1089

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                       *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care / | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent / ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce / ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) / ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions / ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
Proceeding

☒ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332
Brief description of cause:
Insurance breach of contract and bad faith action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
>75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  3/6/20
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **234 Chestnut Street    Philadelphia, PA 19103**

Address of Defendant: **5981 Airport Road    Oriskany, NY 13424**

Place of Accident, Incident or Transaction: **Philadelphia, PA**

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **3/6/20**    _Steve Schildt_    **79011**
Must sign here
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
      *(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Steven J. Schildt**, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: **3/6/20**    _Steve Schildt_    **79011**
Sign here if applicable
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CPJD HOLDINGS LLC d/b/a THE LITTLE LION | ) ) | CIVIL NO._____ |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| UTICA FIRST INSURANCE COMPANY | ) | |
| Defendant | ) | |

## CASE MANAGEMENT TRACK DESIGNATION FORM

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court.  (See reverse side of this form for a detailed explanation of special
   management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      (X)

| | | |
|---|---|---|
| **3/6/20** | *Steven J. Schildt*, **Attorney-at-law** | Defendant |
| **Date** | Steven J. Schildt, **Attorney-at-law** | **Attorney for** |
| (215) 587-1089 | (215) 587-1444 | sschildt@postschell.com |
| **Telephone** | **FAX Number** | **E-mail Address** |

**(Civ. 660) 10/02**

**POST & SCHELL, P.C.**                              Attorney for Defendant
BY: STEVEN J. SCHILDT, ESQ.
I.D. # 79011
1600 JFK BLVD., 13TH FLOOR
PHILADELPHIA, PA 19103
PHONE: 215-587-1089
E-MAIL: sschildt@postschell.com

| | | |
|---|---|---|
| CPJD HOLDINGS LLC d/b/a THE LITTLE LION | ) | IN THE COURT OF COMMON PLEAS |
| | ) | PHILADELPHIA COUNTY |
| Plaintiff | ) | |
| | ) | OCTOBER TERM 2019, NO. 191003548 |
| vs. | ) | |
| | ) | |
| UTICA FIRST INSURANCE COMPANY | ) | |
| Defendant | ) | |
| | ) | |

## <u>DEFENDANT'S NOTICE OF REMOVAL</u>

TO:    Douglas R. Widin, Esq.
       Reed Smith LLP
       Three Logan Square, Suite 3100
       1717 Arch Street
       Philadelphia, PA 19103

Defendant has filed a Notice in the United States District Court for the Eastern District of Pennsylvania for removal of a civil action pursuant to 28 U.S.C. §1441, et seq., now pending in the Court of Common Pleas for Philadelphia County. Said case qualifies under diversity jurisdiction pursuant to 28 U.S.C. §1332. Specifically, the parties are of diverse citizenship and the amount in controversy as alleged in the complaint is more than $75,000. Defendant has also filed in the Eastern District of Pennsylvania a copy of the complaint served upon it.

POST & SCHELL, P.C.

BY:    _____
       **STEVEN J. SCHILDT, ESQ.**

DATE: 3/6/20                    Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CPJD HOLDINGS LLC d/b/a THE
LITTLE LION )
           **Plaintiff** )
   v. )
                        )
UTICA FIRST INSURANCE COMPANY )
          **Defendant** )

CIVIL NO._____

### DEFENDANT'S NOTICE OF REMOVAL

    1.     On 2/10/20 defendant received service of the complaint. A copy of the complaint and its exhibits are attached hereto.

    2.     Plaintiff's complaint concerns the handling of a fire property damage claim under a business property insurance policy.

    3.     This Court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

    4.     Plaintiff is a limited liability corporation (see caption and paragraph 2 of complaint).

    5.     Limited liability corporations ("LLCs") have a special citizenship rule. Specifically, "the citizenship of an LLC is determined by the citizenship of each of its members." Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010). LLC "members" are also called "owners." Based on defendant's internet and LEXIS public records investigation, all of the members/owners of plaintiff are Pennsylvania citizens. Further, pursuant to the eased pleading requirements regarding the citizenship of LLCs, defendant has been unable to identify (via the internet and LEXIS public records) any members/owners of plaintiff who are New York citizens (the citizenship of defendant). This is sufficient specificity to support a diversity

removal involving an LLC.  Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99 (3d Cir. 2015).

6.      Defendant is a New York corporation with its principal place of business in Oriskany, NY.

7.      Thus, we have Pennsylvania versus New York, which is complete diversity.

8.      Count 1 of the complaint alleges breach of contract and count 2 alleges insurance bad faith (and demands attorney fees and punitive damages pursuant to the Pennsylvania insurance bad faith statute).

9.      Both counts demand damages in excess of $50,000.  Counts for breach of contract and insurance bad faith can be aggregated to meet the $75,000 amount in controversy requirement.  See, e.g., Ketz v. Progressive Northern Ins. Co., 2007 U.S. Dist. LEXIS 43245, *7-9 (M.D. Pa. 2007); Brown v. Liberty Mut. Fire Ins. Co., 2006 U.S. Dist. LEXIS 76139, *8 (E.D. Pa. 2006).

10.      Further, demands for punitive damages are included in the calculation of the amount in controversy.  See, e.g., Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004) ("a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum.").

11.      Additionally, when attorney fees are recoverable under an alleged statutory cause of action, such fees are included in the calculation of the amount in controversy.  See, e.g., Suber v. Chrysler Corp., 104 F.3d 578, 585 (3d Cir. 1997) ("attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action.").

12.     Finally, plaintiff recently made a settlement demand of $2.9 million.

13.     The instant action satisfies diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332 because all parties are of diverse citizenship and the amount in controversy as alleged by plaintiff is in excess of $75,000.

14.     Defendant's Notice of Removal has been filed within 30 days of service of the complaint and is therefore timely under 28 U.S.C. §1446.

15.     Defendant has also filed copies of this Notice with the Prothonotary of the Philadelphia County Court of Common Pleas in order to effect removal of this action pursuant to 28 U.S.C. §1446(d).

POST & SCHELL, P.C.

BY:  _____

STEVEN J. SCHILDT, ESQ.
I.D. # 79011
Attorney for Defendant
1600 JFK Blvd., 13th Floor
Philadelphia, PA 19103
Phone: 215-587-1089
E-mail: sschildt@postschell.com


FARBER BROCKS & ZANE L.L.P.

BY:  _____

WILLIAM R. BROCKS, JR., ESQ.
Attorney for Defendant
400 Garden City Plaza, Suite 100
Garden City, NY  11530
Phone: 516-739-5100
E-mail: wbrocks@fbzlaw.com
**(pro hac vice motion pending)**

DATE:  3/6/20

3

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that the attached Removal Package has been served and filed this day to

the following person(s):

Douglas R. Widin, Esq. (via regular mail)
Reed Smith LLP
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103

Prothonotary (via electronic filing)
Philadelphia County Court of Common Pleas
City Hall
1400 JFK Boulevard
Philadelphia, PA  19107

POST & SCHELL, P.C.

BY: _____

**STEVEN J. SCHILDT, ESQ.**
**I.D. # 79011**
Attorney for Defendant
1600 JFK Blvd., 13th Floor
Philadelphia, PA 19103
Phone: 215-587-1089
E-mail: sschildt@postschell.com

FARBER BROCKS & ZANE L.L.P.

BY: _____

**WILLIAM R. BROCKS, JR., ESQ.**
Attorney for Defendant
400 Garden City Plaza, Suite 100
Garden City, NY  11530
Phone: 516-739-5100
E-mail: wbrocks@fbzlaw.com
**(pro hac vice motion pending)**

**DATE:  3/6/20**

**Perrault, Connie**

| | |
|---|---|
| **From:** | cp-efiling@courts.phila.gov |
| **Sent:** | Monday, February 10, 2020 8:58 AM |
| **To:** | Perrault, Connie |
| **Subject:** | Notice of an E-Filing on Case #191003548 |

Dear Steven J. Schildt,

A legal paper has been filed electronically in connection with a
Trial Division - Civil case in which you are counsel of record for
a party, or you are an unrepresented party, and have consented to
be served electronically with any pleading (other than original
process) as provided in Pa.R.C.P. No. 205.4 and Philadelphia Civil
*Rule No. 205.4.

Filed as noted below. The following information is provided for
your records:

Caption:
CPJD HOLDINGS LLC VS UTICA FIRST INSURANCE COMPANY
Case Number: 191003548

Date Reviewed and Accepted:
February 10, 2020 08:58 am EDT/DST

Date Presented to the Office of Judicial Records for Filing
and Date Deemed Filed:
February 07, 2020 04:29 pm EDT/DST
Type of Pleading/Legal Paper:
COMPLAINT FILED NOTICE GIVEN
E-File No.: 2002017143

To retrieve the legal paper filed and any related notice, order or
legal paper, log in to the Electronic Filing Web Site at
http://courts.phila.gov using the Court-issued User Name and Password.
You may also go directly to the legal paper/document by copying and
pasting the following web address(es) into your browser or by clicking
the link(s) below to view the related document(s). Each link represents
a separate document filed in connection with this matter. Utilizing the
link(s) below will only take you to the actual document. You will not
be logged into the court's electronic filing system.

Complaint final.pdf
https://fjdefile.phila.gov/efsfjd/zk_ealib.open_doc?h=vRTrtA1bkzblHZJk



THANK YOU,

ERIC FEDER
DEPUTY COURT ADMINISTRATOR
DIRECTOR, OFFICE OF JUDICIAL RECORDS


D I S C L A I M E R
----------------------------------------------------------------
The First Judicial District will use your electronic mail address
and other personal information only for purposes of Electronic
Filing as authorized by Pa. R.C.P. 205.4 and Philadelphia Civil
*Rule 205.4.

Use of the Electronic Filing System constitutes an acknowledgment
that the user has read the Electronic Filing Rules and Disclaimer
and agrees to comply with same.


----------------------------------------------------------------


This is an automated e-mail, please do not respond!

Court of Common Pleas of Philadelphia County
Trial Division
# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
| --- |
| **OCTOBER 2019** **003548** |
| E-Filing Number: 1910065533 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| CPJD HOLDINGS LLC, ALIAS: THE LITTLE LION | UTICA FIRST INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| 243 CHESTNUT STREET PHILADELPHIA PA 19103 | 5981 AIRPORT ROAD ORISKANY NY 13424 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | **RECEIVED** |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |
| | NOV 7 2019 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
| --- | --- |
| | UTICA FIRST INSURANCE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
| --- | --- |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
| --- | --- | --- |
| 1 | 1 | ☐ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☒ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
| --- | --- | --- | --- |
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☒ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

| CASE TYPE AND CODE |
| --- |
| 10 - CONTRACTS OTHER |

| STATUTORY BASIS FOR CAUSE OF ACTION |
| --- |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** OCT 29 2019 M. BRYANT | IS CASE SUBJECT TO COORDINATION ORDER?<br>YES   NO |
| --- | --- | --- |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: CPJD HOLDINGS LLC

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
| --- | --- |
| DOUGLAS R. WIDIN | REED SMITH<br>1717 ARCH STREET<br>SUITE 3100<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
| --- | --- | --- |
| (215)851-8170 | (215)851-1420 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
| --- | --- |
| 40074 | dwidin@reedsmith.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
| --- | --- |
| DOUGLAS WIDIN | Tuesday, October 29, 2019, 11:40 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**REED SMITH LLP**
By: Douglas R. Widin
PA I.D. No. 40074
Elizabeth Vieyra
PA I.D. No. 326532
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
215-851-8100
dwidin@reedsmith.com
evieyra@reedsmith.com

*Filed and Attested by the
Office of Judicial Records
07 FEB 2020 04:29 pm
M. RUSSO*

*Attorneys for Plaintiff CPJD Holdings LLC
d/b/a The Little Lion*

|  |  |  |
|---|---|---|
| **CPJD HOLDINGS LLC d/b/a**<br>**THE LITTLE LION**<br>243 Chestnut Street<br>Philadelphia, PA 19103 | : | **PHILADELPHIA COUNTY**<br>**COURT OF COMMON PLEAS** |
|  | : |  |
| Plaintiff, | : | OCTOBER TERM, 2019 |
|  | : |  |
| v. | : | Case No. 191003548 |
|  | : |  |
| **UTICA FIRST INSURANCE COMPANY,**<br>5981 Airport Road<br>Oriskany, NY 13424 | : | JURY TRIAL DEMANDED |
|  | : |  |
| Defendant. | : |  |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-6333**
**TTY (215) 451-6197**

## AVISO

Le **han** demandado a usted en la corte.   Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.   Hace falta ascentar una comparencia escrita o en persona o con un abogado  y  entregar  a  la  corte  en  forma  escrita  sus defensas o sus objeciones a las demandas en contra de su persona.   Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.   Ademas, la corte puede  decider  a  favor del  demandante  y  requiere  que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda  a  un abogado immediatamente.   Si  no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio.  Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados**
**De Filadelfia Servicio De Referencia E Informacion Legal**
**One Reading Center Filadelfia, Pennsylvania  19107 (215) 238-6333**
**TTY (215) 451-6197**

Dated: February 7, 2020                      Respectfully submitted,

                                             /s/ Douglas R. Widin
                                             Douglas R. Widin
                                             Elizabeth Vieyra

- 2 -

**REED SMITH LLP**
By:  Douglas R. Widin
PA I.D. No. 40074
Elizabeth Vieyra
PA I.D. No. 326532
Three Logan Square
Suite 3100                                          *Attorneys for Plaintiff CPJD Holdings LLC*
1717 Arch Street                                    *d/b/a The Little Lion*
Philadelphia, PA 19103
215-851-8100
dwidin@reedsmith.com
evieyra@reedsmith.com

| | |
|---|---|
| **CPJD HOLDINGS LLC d/b/a** <br> **THE LITTLE LION** <br> 243 Chestnut Street <br> Philadelphia, PA 19103 <br><br>                    Plaintiff, <br><br>     v. <br><br> **UTICA FIRST INSURANCE COMPANY,** <br> 5981 Airport Road <br> Oriskany, NY 13424 <br><br>                    Defendant. | **PHILADELPHIA COUNTY** <br> **COURT OF COMMON PLEAS** <br><br> OCTOBER TERM, 2019 <br><br> Case No. 191003548 <br><br> JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

1.    This is a lawsuit arising out of the bad faith failure and refusal of defendant, Utica

First Insurance Company ("Utica") to honor contractual obligations that, pursuant to a business

owner's insurance policy, it owes to plaintiff, CPJD Holdings LLC, doing business as The Little

Lion ("The Little Lion"), in connection with property damage and business interruption losses

suffered by The Little Lion through no fault of its own.

**The Parties**

2.      The Little Lion is a Pennsylvania limited liability corporation with its principal place of business at 241-243 Chestnut Street, Philadelphia, Pennsylvania 19103.  The Little Lion operated a highly successful restaurant, which has been closed since a February 18, 2018 fire.  That fire and the events subsequent to it form the factual background of this action.

3.      Utica is a New York insurance company with a principal place of business at 5981 Airport Road Oriskany, New York 13424, and a mailing address of P.O. Box 851, Utica, New York 13503.  Utica is licensed to do business in Pennsylvania.

**Jurisdiction**

4.      Jurisdiction is proper in this Court pursuant to 42 Pa.C.S.A. § 931(a).

**Venue**

5.      Venue is proper in Philadelphia County pursuant to Pennsylvania Rule of Civil 2179 because Utica regularly conducts business here, this cause of action arose here, and the transactions and/or occurrences out of which this cause of action arose took place here.

**Factual Background**

6.      Utica sold and issued to The Little Lion a package business owner's insurance policy, Policy No. BOP 4433869-02, effective for the period November 13, 2017 to November 13, 2018 (the "Policy).  A true and correct copy of the Policy is attached as Exhibit A.

7.      The Policy provides, among other coverages not involved here, first-party business personal property and business interruption insurance, together with other associated

- 2 -

and supplemental coverages, to protect The Little Lion at its leased premises at 241-243

Chestnut Street, Philadelphia, PA 19103 (the "Property") against physical loss and damage to its

property and associated loss of business income derived from operation of the restaurant.

8.      Prior to its opening in January 2016, The Little Lion, at substantial effort and

expense, undertook renovations of the Property's interior, installing fixtures and interior

improvements and outfitting the Property as a first-class restaurant.  The Property and these

fixtures and improvements were insured by Utica under the Policy.

9.      On February 18, 2018, the Property and certain aspects of the fixtures and

improvements were significantly damaged as a result of a fire originating at a neighboring

property.  The City of Philadelphia and the federal Bureau of Alcohol, Tobacco, Firearms, and

Explosives restricted access to the Property for months, citing safety concerns and an ongoing

investigation of the fire's origination.

10.      As a result of the restricted access to the Property, The Little Lion was not able to

even begin repair and remediation of the damage to the Property, fixtures, and improvements for

a significant period of time.  Accordingly, due to the damage to its property, The Little Lion

ceased operation of its business as of the date of the fire and remained closed.

11.      The Little Lion promptly reported the fire, the resulting damage, and the business

closure to Utica, and initiated a claim for insurance proceeds due under the Policy on account of

the damage to The Little Lion's property and the loss of business income caused by that damage.

- 3 -

12.     Access to the Property remained restricted following the fire.  The Little Lion first gained any access to the Property on March 21, 2018, when City of Philadelphia and federal authorities allowed an accompanied 15-minute entry into the Property to survey the damage.

13.     The Little Lion did access the Property for the permitted 15-minute period, but it was not possible to assess and document the damage in any meaningful and detailed manner during that short period of access.

14.     The Little Lion reported to Utica on the condition of the Property as best it could based on the information it learned from the limited inspection.

15.     The Little Lion cooperated with Utica in Utica's investigation of the claim, providing inventories of business personal property, construction estimates for restoration of the Property, and financial documentation in support of The Little Lion's claim for loss of business income.  The Little Lion also engaged forensic accountants who prepare a detailed accounting of The Little Lion's loss of business income arising from the fire.

16.     Utica delayed in responding to The Little Lion, providing its first estimate of The Little Lion's claim for loss of business income on September 17, 2018.  Utica's initial estimate contained glaring errors, including a double-subtraction for taxes from its calculation of income loss.  Although The Little Lion and its accountants promptly brought the errors to Utica's attention, Utica failed to provide any substantive response to The Little Lion's inquiries for months.

17.     During discussions regarding the business interruption loss, Utica repeatedly attempted to take improper deductions from the calculation of business income in an effort to

- 4 -

improperly minimize the amount of money Utica would be responsible to pay.  Utica did so in contravention of the Policy provisions and in contravention of acceptable accounting practices.

18.     Utica's conduct with regard to the calculation of the business interruption proceeds of the Policy due to The Little Lion was an attempt to unreasonably deny The Little Lion the benefits due under the Policy and was not undertaken in good faith.

19.     In September 2018, The Little Lion gained access to the Property such that full-scale inspection of the Property could be undertaken with consequent assessment of damage, so that remediation and reconstruction of the damage to the Property could begin.

20.     The inspections accomplished starting in September 2018 demonstrated that the amount of water damage to certain parts of the Property, most notably the centerpiece main dining room of the restaurant, was less than had been anticipated based on the earlier limited and attenuated inspection that had been permitted by City and federal authorities.

21.     As part of its remediation efforts, in September 2018, The Little Lion engaged technicians who performed mold and microbial testing throughout the Property.  Through the testing by those technicians, The Little Lion confirmed that the restaurant's grand main dining room, although it sustained some damage, could be partially salvaged and restored without a complete demolition and rebuild — thus substantially preserving the character and ambiance of the restaurant.

22.     In September and October 2018, The Little Lion undertook restoration of the dining room.

Case ID: 191003548

23.    The Little Lion notified Utica, through Utica's property loss adjuster, of its restoration efforts in the main dining room while such restoration was taking place.  The Little Lion specifically advised Utica, through Utica's property loss adjuster, that mold and microbial testing conducting in September 2018 revealed that many improvements in the dining room were salvageable and that The Little Lion was embarking on repair and restoration of the main dining room.  On October 25, 2018, Utica's property loss adjuster visited the Property and observed the condition of the dining room, including the restored improvements.

24.    Restoration of the dining room was principally completed on or about November 1, 2018.

25.    On November 5, 2018, a worker from A & S Sprinkler Company, working in conjunction with the City of Philadelphia Water Department, conducted a pressure test of the fire suppression system at 241-243 Chestnut Street.  During testing, the sprinkler technician, in error, turned on a water supply that allowed water to flow directly above the dining room.  The water supply remained on for approximately one hour, resulting in flooding of the Property through the dining room ceiling.

26.    The November 5, 2018 sprinkler discharge caused extensive water damage to the Property, including to the main dining room areas that had escaped substantial fire-related damage earlier and that had been restored prior to the sprinkler discharge.

27.    The Little Lion began efforts to remediate the water damage caused by the sprinkler discharge almost immediately after the sprinkler discharge occurred.

- 6 -

Case ID: 191003548

28.     Also on November 5, 2018, The Little Lion notified Utica, via email, of the sprinkler discharge damage and requested that a claim be opened.

29.     On November 6, 2018, Utica's adjuster visited the Property and inspected the damage.

30.     On December 13, 2018, Utica's adjuster verbally advised The Little Lion that Utica would not provide any coverage whatsoever for loss resulting from the November 5, 2018 sprinkler discharge.

31.     Utica's adjuster advised The Little Lion again on December 27, 2018, via telephone, that Utica would not provide any coverage for loss arising from the November 5, 2018 sprinkler discharge.

32.     On January 3, 2019, The Little Lion submitted an itemized claim for loss arising from the November 5, 2018 sprinkler discharge, which included damaged elements of the main dining room that had survived the fire loss.  Utica did not respond to the claim at that time.

33.     Due to the failure of Utica's representatives to respond to The Little Lion's legitimate inquiries, due to the purposeful attempts of Utica's consultants, with Utica's knowledge, to undervalue the business interruption claim, and due to the failure of Utica to conclude the fire loss claim, The Little Lion contacted an executive at Utica to report these circumstances in the claim handling.  Shortly after that contact was made, Utica began moving forward toward resolution of the fire loss claim.

34.     On February 13, 2019, Utica issued checks in payment of The Little Lion's business personal property and business interruption losses arising from the February 18, 2018

Case ID: 191003548

fire.  Utica's total payment for the business personal property claim was in the amount of the Policy's per occurrence limit for such coverage.  Utica did not provide any accompanying documentation with the checks indicating what portions of The Little Lion's claims Utica was paying.

35.    Despite asking repeatedly for an itemization of the personal property to which Utica's February 13, 2019 payment applied, The Little Lion has not received any explanation of how the claim for business personal property damage from the February 18, 2018 fire was adjusted or what damage Utica paid for as part of the claim.

36.    The limits of liability of the Policy applicable to physical damage to the Property, fixtures, and improvements was, as it turns out, a woefully inadequate sum to cover all of the damage done by the fire.  In fact, even without consideration of any element of the main dining room initially, based on the earlier attenuated inspection, thought to be damaged or destroyed, the amount of property damage incurred at The Little Lion was far in excess of the applicable limit of liability of the Policy.

37.    In January and February 2019, The Little Lion continued to engage Utica via email and telephone regarding its claim for loss arising from the November 5, 2018 sprinkler discharge.  The Little Lion again advised Utica, this time in writing, that the damage to the main dining room as assessed after the attenuated, limited inspection afforded by the City and federal authorities, had been less than initially thought, but that the damage overall was still in excess of the Policy's limits of liability.  The Little Lion again asked for a statement from Utica regarding which elements of loss and damage Utica had made payment for, but Utica did not respond at that time.

Case ID: 191003548

38.     On March 7, 2019, Utica sent a letter demanding document production from The Little Lion and demanding submission to an examination under oath by The Little Lion's owners.

39.     Principally, the stated basis set out in Utica's letter for demanding an examination under oath was the contention that The Little Lion had claimed damage as a result of the sprinkler leak to property that had been submitted as damaged as part of the previous fire loss. Essentially, Utica accused The Little Lion of submitting a fraudulent claim and attempting to "double dip" by claiming destruction of the same property twice.

40.     Had Utica acted reasonably and not acted with the intention of punishing The Little Lion for pointing out the earlier intentional conduct of Utica designed to understate the business income loss with respect to the first, fire loss and designed to unreasonably deny The Little Lion the benefits of the Policy with regard to that loss, Utica would have acknowledged that there was no overlap between the claims for the two losses and would have properly adjusted and paid the second, sprinkler loss in a timely manner.

41.     The elements of property damage that Utica pointed to as being an overlap between the property claimed to be destroyed or damaged in the fire loss and the property destroyed or damaged in the subsequent, sprinkler leakage loss were those elements of property in and around the main dining room that Utica had been informed orally and in writing that The Little Lion had initially, based on the attenuated inspections available, incorrectly assumed to have been damaged or destroyed in the fire loss.

Case ID: 191003548

42.     The issuance of the demand for submission to examination under oath was a further attempt to unreasonably deny The Little Lion the benefits of the Policy, but this time with respect to the sprinkler discharge loss.

43.     Because Utica addressed the letter demanding submission to an examination under oath to The Little Lion's closed restaurant, which Utica fully knew was closed and not open for business, The Little Lion did not receive the letter for approximately two weeks.

44.     Nevertheless, when The Little Lion finally received the letter, it produced the requested documents in May 2019.  The examination under oath occurred on June 6, 2019.

45.     On August 27, 2019, The Little Lion, through its attorneys, wrote to Utica setting out its position with regard to coverage for loss arising from the sprinkler discharge.

46.     By letter dated September 13, 2019, Utica declined to substantively respond to The Little Lion's position regarding coverage of loss arising from the sprinkler discharge. Instead, Utica demanded that The Little Lion submit a revised claim and provide more evidence in support of its loss before Utica would respond.  Utica also demanded an inspection of two items of equipment, each of which was of modest value, that The Little Lion had advised Utica on January 3, 2019 were damaged and being held in storage.

47.     Despite The Little Lion's repeated follow-up correspondence, including on September 12 and 23, 2019, and The Little Lion's efforts to coordinate an inspection of the two items of equipment in storage, Utica did not conduct an inspection until October 3, 2019 – a delay of ten months from when The Little Lion advised Utica that the items were in storage.

Case ID: 191003548

Although the two items were available during the inspection, Utica unreasonably and without basis later claimed that The Little Lion failed to cooperate in its inspection of the two items.

48.      On October 1, 2019, The Little Lion submitted a revised claim for loss arising from the sprinkler discharge.  The claim was revised only in that it updated The Little Lion's estimates for loss of business income.  The claim for loss of business personal property was unchanged from January 3, 2019.  The Little Lion demanded payment of its claim for business personal property loss arising from the sprinkler discharge by October 14, 2019.

49.      The Little Lion also asked Utica to enter into a "tolling agreement" with regard to the sprinkler discharge loss of November 5, 2018 in order to avoid the requirement to sue Utica within one year after the happening of the loss or otherwise be barred from seeking to recover for that loss.  Utica never responded to The Little Lion's request to enter into a tolling agreement, thereby making it necessary for The Little Lion to sue in this Court rather than continue attempts to resolve the claim without resort to litigation.

50.      Utica failed to substantively respond to The Little Lion's claim for business personal property loss arising from the sprinkler discharge by October 14, 2019.  Instead, Utica continued to delay, raising issues about the two items in storage, which Utica had a full opportunity to inspect, as an excuse for its conduct.

51.      On October 31, 2019, Utica provided its first response to The Little Lion's claim, submitted on January 3, 2019, for loss arising from the sprinkler discharge.  Utica's response did not provide a breakdown of what items of business personal property Utica agreed to cover, but offered to pay $60,000 for property damage, which was far less than the amount of damage incurred, and contended incorrectly and without reasonable basis that all other damage from the

- 11 -

Case ID: 191003548

sprinkler loss had been paid for as part of the payment for the fire loss.  In the recsponse, Utica disclaimed coverage for The Little Lion's loss of business income arising from the sprinkler discharge writing, "Utica First has determined that there is no compensable loss of income payment to be issued as a result of the November 5, 2018 loss."

52.     To date, despite repeated requests from The Little Lion, Utica has failed and refused to provide The Little Lion with an explanation regarding its position that The Little Lion is entitled to no payment for loss of business income arising from the sprinkler discharge.

53.     To date, despite repeated requests from The Little Lion, Utica has failed and refused to provide the The Little Lion with an explanation of the items of property that Utica identified as damaged in the fire loss and for which it made payment.

54.     As a result of Utica's failure to pay The Little Lion's claim for loss resulting from the November 5, 2018 sprinkler discharge, The Little Lion has suffered continuing damages and continuing loss of business income.

55.     The Little Lion has performed all its obligations under the Policy, and any and all conditions precedent to The Little Lion's rights under that Policy respecting its claim have been satisfied or waived.

## COUNT I – BREACH OF CONTRACT (FAILURE TO INDEMNIFY)

56.     The Little Lion incorporates by reference all preceding paragraphs of this Complaint as through the same were set forth herein.

57.     The Policy is a valid and enforceable contract of insurance for which all premiums have been paid.

Case ID: 191003548

58.     By failing to pay The Little Lion's claim, Utica materially breached the Policy, which breach has damaged, and will continue to damage, The Little Lion.

59.     Under Pennsylvania law, Utica has an implied contractual obligation to act in good faith toward, and to deal fairly with, The Little Lion so as not to deprive The Little Lion of the essential benefits of the insurance contract.  Utica has materially breached its implied contractual obligation to The Little Lion by, among other things, the following:

(a)     Refusing to pay The Little Lion's claim for loss of business income arising from the sprinkler discharge when Utica was aware that such loss is covered under the Policy;

(b)     Failing to promptly respond to The Little Lion's inquiries and requests for updates regarding Utica's investigation of its claims, a pattern of conduct which began during Utica's handling of The Little Lion's claim for loss arising from the fire;

(c)     Failing to fully and promptly investigate The Little Lion's claims for loss covered under the Policy, a pattern of conduct which began during Utica's handling of The Little Lion's claim for loss arising from the fire;

(d)     Placing its interest before the interests of its insured The Little Lion, a pattern of conduct which began during Utica's handling of The Little Lion's claim for loss arising from the fire;

(e)     Disclaiming without any reasonable basis an obligation to pay losses incurred by The Little Lion as a result of the sprinkler loss;

(f)     Failed to pay in full the amount of property damage loss incurred by The Little Lion as a result of the sprinkler loss;

(g)     Failing to pay the business interruption loss incurred by The Little Lion as a result of the sprinkler loss; and

(h)     Such other conduct as discovery and the facts shall disclose.

- 13 -

60.     Utica's investigation and refusal to pay substantial portions of The Little Lion's claim for loss arising from the sprinkler discharge is unreasonable, willful and wanton, and in reckless disregard of The Little Lion's rights under the Policy and at law.

61.     Utica lacks a reasonable basis for its refusal to pay substantial portions of The Little Lion's claim for loss arising from the sprinkler discharge and knows it lacks, and/or has recklessly disregarded its lack of, a reasonable basis for such refusal.

62.     Utica's refusal to honor its obligations under the Policy is frivolous and unfounded.

63.     The Little Lion has been, and continues to be, harmed as a result of Utica's breach.

WHEREFORE, The Little Lion demands judgment in its favor and against Utica, pre- and post-judgment interest, and court costs to the full extent permitted by law, and such other relief as this Court may deem just and proper.

The Little Lion demands judgment in its favor and against Utica with respect to Count I hereof and award of (i) compensatory damages in an amount to be proven at trial for breach of contract and failure to pay the rightfully owed proceeds of the Policy; (ii) compensatory and/or consequential damages in an amount that will fully compensate The Little Lion for Utica's material breach of its contractual obligation of good faith and fair dealing; (iii) pre- and post-judgment interest and court costs to the full extent permitted by law; and (iv) such other and further relief as this Court may deem just and proper.

Case ID: 191003548

## COUNT II – BAD FAITH UNDER 42 Pa. C.S.A. §8371

64.     The Little Lion incorporates by reference all preceding paragraphs of this Complaint as through the same were set forth herein.

65.     Pennsylvania's so-called "bad faith" statute (42 Pa. C.S.A. §8371) provides a remedy for bad faith conduct of an insurer by which it knowingly or with reckless disregard acts to unreasonably and without foundation deprives its insured of the benefits of an insurance policy, and states as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith towards the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

66.     All of the acts of Utica recounted above unreasonably deprived The Little Lion of the benefits of the Policy

67.     All of the acts of Utica recounted above by which Utica deprived The Little Lion of the benefits of the Policy were undertaken knowing there was no reasonable basis for them or with reckless disregard to whether there was a reasonable basis for those acts.

68.     The Little Lion has been damaged as a result of the unreasonable denial of benefits of the Policy.

69.     Utica has acted in bad faith towards The Little Lion within the meaning of 42 Pa. C.S.A. §8371.

Case ID: 191003548

WHEREFORE, The Little Lion demands judgment in its favor and against Utica with respect to Count II hereof and award to The Little Lion of (i) interest on the amount of the claim from the date the claim was made by The Little Lion in an amount equal to the prime rate of interest plus 3 percent, (ii) punitive damages, and (iii) court costs and attorney fees.

A jury trial is demanded on all claims so triable.

Dated: February 7, 2020                    Respectfully submitted,

                                           /s/ Douglas R. Widin
                                           Douglas R. Widin
                                           Elizabeth Vieyra
                                           REED SMITH LLP
                                           Three Logan Square
                                           1717 Arch Street, Suite 3100
                                           Philadelphia, PA 19103
                                           Tel: 215-851-8100
                                           Fax: 215-851-1420
                                           dwidin@reedsmith.com
                                           evieyra@reedsmith.com
                                           *Attorneys for Plaintiff CPJD Holdings LLC d/b/a*
                                           *The Little Lion*

Case ID: 191003548

## VERIFICATION

I, Christopher Younge, am authorized to make this Verification on behalf of Plaintiff CPJP Holdings LLC d/b/a The Little Lion. Subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities, I hereby depose and say that the facts set forth in the Complaint are true and correct to the best of my knowledge, information and belief.

Christopher Younge

Case ID: 191003548

# EXHIBIT A

Case ID: 191003548



## <u>POLICY CERTIFICATION</u>

I hereby certify that to the best of my knowledge the attached is a true and complete copy of the policy for the Business Owners Policy, BOP 4433869-02, issued to CPJD Holding Company DBA The Little Lion, for the effective dates of 11/13/17 to 11/13/18.

_Melissa L. Mann_
Melissa L. Mann
Assistant Secretary

_03/07/19_
Date

State of New York        )
                                    ):
County of Oneida )

     On  this  7 March 2019,  before  me personally  appeared, Melissa Mann, to  me  known to be the person named herein and who executed the foregoing document and acknowledged to me that he executed the same.

_____
Notary Public State of New York
Appointed in County of Oneida
My Commission Expires    _11.30.21_

CHRISTINE MARIE ROSE-ROWAN
Notary Public, State of New York
Qualified in Oneida County
No. 01AM4911988
Commission Expires  _11.30.21_

P.O. Box 851, Utica, N.Y. 13503-0851      Telephone: (315) 736-8211  Fax: (315) 768-4 ... Case ID: 191003548

| BUSINESSOWNERS PROGRAM DECLARATIONS | **POLICY ISSUED ON THE CO-OPERATIVE PLAN** **UTICA FIRST INSURANCE COMPANY** *CONSTITUTED IN OHIO AS* | NON-ASSESSABLE POLICY |
|---|---|---|

**UTICA FIRST INSURANCE COMPANY (MUTUAL)**
Home Office - 5981 Airport Road, Oriskany, NY 13424
Mail Address - P.O. Box 851, Utica, NY 13503-0851

Policy Number

| BOP 4433869 02 |

Named Insured and P.O. Address   (Number, Street, Town or City, County, State, Zip Code)            Direct Billed - Insured

THE LITTLE LION
CPJD HOLDING COMPANY DBA
241-243 CHESTNUT ST                                          Renewal Certificate
PHILADELPHIA PA 19106

Policy Period: From   11/13/17   to   11/13/18   12:01 a.m. Standard Time

Business Description: Food Service

The Insured is:  _x_  an individual____  a partnership ____  a joint venture ____  Other (Describe)

All known exposures at the beginning of the policy period have been identified below.
Location of all premises owned, rented, occupied or controlled by the insured:

| Loc. | Bld. | Prot | Con. | Occupancy | Situated | Zip Code |
|---|---|---|---|---|---|---|
| 1 | 1 | PR | R | All other Food | 241-243 CHESTNUT ST PHILADELPHIA, PA | 19106 |

This replaces all previously issued policy Declarations, if any. This policy applies only to accidents, occurrences or losses which happen during the policy period shown above. This policy applies only to those coverages below for which a limit of Insurance and/or a limit of liability or charge is shown. Our limit for each coverage shall not be more than the amount stated for such coverage, subject to all terms of this policy.

| Property Coverage | Protective Devices (List Type) | Deductible | Limit of Insurance | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Loc. No. | Bldg. No. | RC | ACV | Loc. No. | Bldg. No. | RC | ACV |
| | | | 1 | 1 | | | | | | |
| Cov. A - Building(s) | | | $ | | | | $ | | | |
| Cov. B - Business Property | Cntrl Sprk | $1,000 | $ 378,560 | | x | | $ | | | |
| Cov. C - Loss of Income | | | $ ACTUAL LOSS | | | | $ | | | |

Liability Coverage                                      Liability Insurance Limits

| Cov. (L) Each Occurrence Limit | $ | 1,000,000 | /per occurrence |
| General Aggregate Limit | $ | 2,000,000 | |
| Cov. (M) Medical Payments Limit | $ | 5,000 | /per person |
| Cov. (N) Aggregate Limit Products/Completed Work | $ | 1,000,000 | |
| Cov. (O) Fire Legal Liability | $ | 100,000 | /per occurrence |
| Cov. (P) Pers and/or Adv Injury Liability | $ | 1,000,000 | /per occurrence |

If this is checked ____ we do not provide coverage for Products Completed Work, and the each occurrence Limit does not apply to Coverage N.

Add'l Cov. (Specify)                              CYBER LIABILITY        $288.00

SYSTEMS BREAKDOWN COV.

| Subject to following forms and endorsements | SEE FORMS INVENTORY PAGE | | ANNUAL |
|---|---|---|---|
| | | | 6,220.00 |
| | POLICY TOTAL | | 6,220.00 |

Agency at   2369000
LIBERTY EXCESS & SURPLUS INC
8B SMEDLEY LANE
NEWTOWN SQUARE, PA   19073

Our Authorized Representative and
Countersignature Date 09/12/17

AAIS (2/94)                              INSURED COPY

Case ID: 191003548



**UTICA FIRST INSURANCE COMPANY**
*CONSTITUTED IN OHIO AS*
**UTICA FIRST INSURANCE COMPANY (MUTUAL)**
Home Office - 5981 Airport Road, Oriskany NY 13424
Mail Address - P.O. Box 851, Utica, NY 13503-0851

Businessowner Policy
FORMS INVENTORY PAGE

| Policy Number: | BOP 4433869 02 | |
|---|---|---|
| Named Insured: | THE LITTLE LION | |
| Agent: | LIBERTY EXCESS & SURPLUS INC | 2369000 |

# FORMS INVENTORY

| | | | | | |
|---|---|---|---|---|---|
| BP 0850UF | (10/06) | Virus and Bacteria Exclusion | DN 0850UF | (10/06) | Discl Notice-Virus and Bacteri |
| WAREXCL | (01/05) | War Exclusion | BP 0335 | (10/06) | PA Amendatory Endorsement |
| CL-208 | (1.00) | Amendment of Cancellation | GL-890 | (1.00) | Lead Liability Exclusion |
| ML-120 | (04/81) | Ins Consul Serv Exemption Act | GL-202 | (01/87) | Exclusion - Athletic or Sports |
| CL-300 | (1.00) | Amendatory Endorsement | BP 0663 | (12/99) | Known Injury or Damage Amend. |
| GL-890A | (1.00) | Asbestos Liability Exclusion | BP 5087 | (02/09) | Amendatory Endorsement |
| BP-200 | (01/87) | Businessowners Special Policy | BP-331UF | (1.00) | Protective Devices |
| DN0331 | (1.00) | Disclosure Notice Sec Devices | UA504B | (02/17) | Protective Safeguard End't |
| UA-505 | (01/91) | Punitive Damages Exclusion | UA-508 | (01/91) | Other Insurance Endorsement |
| BP0620 | (01/99) | Loss of Income 72WaitingPeriod | BP 0676 | (06/02) | Excl-Fungus or Related Perils |
| BP 0678 | (06/02) | EIFS Exclusion | DNWTR | (02/09) | Disclosure Notice |
| BP 0750 | (01/15) | Certified Terrorism Loss | CL 1045 | (01/15) | Notice of Terrorism Coverage |
| CL 0605 | (01/15) | Certified Terrorism Prem Discl | DN 0700T | (01/15) | TRIPRA Discl Notice |
| BP 0760 | (01/15) | Cert. Act of Terrorism Exclus | BP 0840 | (02/08) | Can-Spam Exclusion |
| BP 0833 | (01/05) | Auto and Mobile Equip Amends | CL 0310 | (09/06) | Disclosure Notice Silica |
| CL 0320 | (10/06) | Disclosure Notice Can-Spam | BP 0838UF | (10/05) | Silica Exclusion |
| DN 0838UF | (10/05) | Discl Notice Silcia Exclusion | BP 0867UF | (04/11) | Defense Cost Amend Endorsemt |
| BP 0845UF | (10/05) | Lessor of Premises | DN 0845 | (1.00) | Disclosure Notice Addl Insured |
| BP-001 | (09/97) | Systems Breakdown Coverage | BP-316 | (01/87) | Personal/Advertising Injury |
| CP-601UF | (2.00) | Spoilage Coverage | CP-601EX | (1.00) | Extended Spoilage Coverage |
| UFCYBC | (01/16) | Cyber Liability Coverage Form | GL-122A | (12/97) | Non-owned/Hired Auto Liability |
| MAX1UF | (01/17) | Maximizer Coverage Endt UF | UFCYBSD | (01/16) | Cyber Liab Supplemental Dec |
| CYBDN | (1.00) | Cyber Liab Disclosure Notice | PRIV0401 | (04/01) | Privacy Statement |

Issued Date: 09/12/17

FORMINV 06 09

INSURED COPY

AAIS
BP-331UF  Ed 1.0
Page 1 of 1

This endorsement changes the
Property Coverages provided by this policy
-- PLEASE READ THIS CAREFULLY --

# PROTECTIVE DEVICES

(The entries required to complete this endorsement
will be shown below or on the "declarations".)

| Prem. No. | Bldg. No. | Protective Device or Service |
|-----------|-----------|------------------------------|
| 1 | 1 | Sprinkler System   Central Burglar Alarm |

## ADDITIONAL EXCLUSIONS

1. The following additional exclusion applies only when a device or service described on the schedule above provides fire protection:

   **We** do not pay for loss caused by fire if, prior to the fire, **you**:

   a. had knowledge of any suspension or impairment in any protective device or service described on the schedule above and did not notify **us**; or

   b. failed to maintain in complete working order, any protective device or service described on the schedule above which **you** control.

   If part of an automatic sprinkler system is shut off and **you** restore full protection within 48 hours, notification to **us** is not necessary.

2. The following additional exclusion applies only when a device or service described on the schedule above provides theft protection:

   **We** do not pay for loss caused by theft if, prior to the theft, **you**:

   a. had knowledge of any suspension or impairment in any protective device or service described on the schedule above and did not notify **us**; or

   b. failed to maintain in complete working order, any protective device or service described on the schedule above which **you** control.

## OTHER PROPERTY COVERAGE CONDITIONS

The following condition is added:

**Protective Devices -- You** are required to maintain the protective devices and services described on the schedule above.

BP-331UF  Ed 1.0

**This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## PENNSYLVANIA

The Common Policy Conditions are amended as follows.

1. Cancellation And Nonrenewal is added:

   **Cancellation And Nonrenewal** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

   "We" may cancel or not renew this policy by written notice to "you" at the address shown on the "declarations". "Our" notice will include the specific reason for cancellation or nonrenewal. Proof of delivery or mailing is sufficient proof of notice.

   If this policy has been if effect less than 60 days, "we" may cancel for any reason. "We" will give "you" at least 30 days notice before cancellation is effective.

   a. For policies other than those described in b. below, if this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us", "we" may cancel only if one or more of the following reasons apply:

      1) a condition, factor, or loss experience material to insurability has changed substantially, or a substantial condition, factor, or loss experience material to insurability has become known during the policy term;

      2) loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease will, at the time of cancellation, be certified to the Insurance Commissioner as directly affecting in-force policies;

   3) "you" have made a material misrepresentation which affects the insurability of the risk;

   4) the policy was obtained through fraudulent statements, omissions, or concealment of fact material to the acceptance of the risk or hazard assumed by "us";

   5) "you" have failed to pay a premium when due, whether the premium is payable directly to "us" or "our" agents or indirectly under a premium finance plan or extension of credit;

   6) material failure to comply with policy "terms", conditions, or contractual duties. This includes failure to comply with safety standards and loss control recommendations if:

      a) "we" have provided "you" with written notice of the failure to comply with safety standards and loss control recommendations;

      b) "we" have provided "you" with a reasonable opportunity to cure deficiencies with respect to safety standards and loss control recommendations; and

      c) the deficiencies with respect to safety standards and loss control recommendations have not been cured; or

7. other reasons that the Insurance Commissioner may approve.

If this policy has been in effect 60 days or more and "we" cancel or nonrenew for nonpayment of premium or material misrepresentation, "we" will give "you" at least 15 days notice before cancellation is effective; if "we" cancel or nonrenew for any other reason, "we" will give "you" at least 60 days notice before cancellation or nonrenewal is effective.

Copyright, American Association of Insurance Services, Inc., 2006

AAIS
BP 0335 10 06
Page 2 of 3

The policy may also be cancelled from inception upon discovery that it was obtained through fraudulent statements, omissions, or concealment of fact material to the acceptance of the risk or to the hazard assumed by "us".

The return premium, if any, will be refunded to "you" not later than ten business days after the effective date of the termination if "we" cancel this policy, or not later than 30 days after the effective date of the termination if "you" cancel this policy.

b.  If this policy covers owner-occupied private residential structures with four or less household units or non-business personal property of individuals, the following provisions apply:

If this policy has been in effect for 60 days or more, or if it is a renewal of a policy issued by "us", "we" may cancel or not renew only for the following reasons:

1)  the premium has not been paid when due;
2)  the policy was obtained through fraud, material misrepresentation, or omission of fact which, if known by "us", would have caused "us" not to issue the policy;
3)  there has been a substantial change or increase in hazard in the risk assumed by "us" subsequent to the date the policy was issued;
4)  there is a substantial increase in the hazards insured against by reason of willful or negligent acts or omissions by "you"; or
5)  any other reasons approved by the commissioner pursuant to rules and regulations promulgated by the commissioner.

"We" will give "you" notice at least 30 days in advance of cancellation or nonrenewal. "Our" notice will state the reasons for cancellation or nonrenewal.

This policy terminates automatically on its expiration or anniversary if "you": surrender the policy to "us"; have notified "us" or "our" agent in writing of "your" intent not to renew; or have not paid the renewal or installment premium when due.

2.  Notice Of Increased Premium is added:

**Notice Of Increased Premium** -- "We" will give "you" notice at least 30 days before the renewal date if "we" intend to increase the renewal premium.

The Common Policy Conditions are amended as follows.

3.  Item b. of the definition of Pollutants is deleted and replaced by:

b.  electrical emissions, whether visible or invisible, and sound emissions.

The Property Coverages are amended as follows.

4.  Throughout this policy, the "term" actual cash value means the cost to repair or replace property using materials of like kind and quality, to the extent practical, less a deduction for depreciation, however caused.

5.  The following section is added:

**INVESTIGATION OF CLAIMS**

Unless "we" need more time to investigate "your" claim, "we" will give "you" notice of "our" intent to accept or deny "your" claim within 15 working days after receipt of a duly executed proof of loss.

If "we" deny "your" claim, "we" give "you" written notice of "our" denial. "Our" notice will identify any provision of this policy on which the denial is based.

Copyright, American Association of Insurance Services, Inc., 2006

Case ID: 191003548

AAIS
BP 0335 10 06
Page 3 of 3

If "we" need more time to investigate "your" claim, "we" will give "you" notice of "our" need for more time within 15 working days after receipt of a duly executed proof of loss. "Our" notice will state why more time is needed.

If "our" investigation cannot be completed within 30 days of the date of "our" initial notice, "we" will give "you" written notice to state why more time is needed.  "We" will give "you" such notice within 30 days of the date of "our" initial notice.

"We" will continue to give "you" written notice every 45 days thereafter to state why more time is needed until "we" give "you" notice of "our" intent to accept or deny "your" claim.

The requirements of this provision do not apply if there is a reasonable basis supported by specific information available for review by the insurance regulatory authority that "you" have fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, "we" will give notice of "our" intent to accept or deny "your" claim within a reasonable period of time after receipt of a duly executed proof of loss.

6.   Under Additional Conditions, Death Of An Individual Named Insured is amended to include the following:

Subject to the payment of any premium due for the current policy period and any extension thereof, and all other "terms" of the policy, this policy will continue for no less than 180 days after the date of "your" death, unless the property covered by this policy is sold before the end of that 180 days. If the property is sold within such 180 day period, coverage will continue until the date of sale.

The Commercial Liability Coverages are amended as follows.

7.   The definition of "bodily injury" is deleted and replaced by the following:

"Bodily injury" means bodily harm, sickness, or disease sustained by a person. "Bodily injury" includes death that resultsfrom bodily harm, sickness, or disease.

8.   Under Commercial Liability Coverages, Coverage L -- Bodily Injury Liability And Property Damage Liability, Exclusions, exclusion f. is deleted and replaced by the following:

f.   "We" do not pay for "bodily injury" or "property damage" arising out of the use of "mobile equipment" in, or in the practice or preparation for any prearranged or organized racing, speed, pulling or pushing, demolition, or stunt activities or contests.

BP 0335 10 06

Copyright, American Association of Insurance Services, Inc., 2006

AAIS
BP 5087 02 09
Page 1 of 2

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT

The policy is amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

1. In BP-100, under the Property Coverages Section, item g. of Perils Not Covered And Exclusions is deleted and replaced by the following:

   g. Water Damage

      1) "We" do not cover loss caused by:

         a) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;

         b) water that backs up through, overflows from, or is otherwise discharged from:

            (1) a sewer or drain;
            (2) a sump, sump pump, or related equipment; or
            (3) any other type of system designed to remove subsurface water which is drained from the foundation area;

         c) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

            (1) basements, whether paved or not;
            (2) doors, windows, or other openings;

         (3) foundations, floors, walls, or paved surfaces; or
         (4) swimming pools, septic tanks, or other structures; or

         d) material present in or carried or otherwise moved by water described in items a) through c) above.

      However, if fire, explosion, or sprinkler leakage results, "we" do pay for the resulting loss.

      2) This exclusion:

         a) applies regardless of the cause of the water or the material carried or moved by water described under items 1)a) through 1)d) above, whether or not such cause is an act of nature; and

         b) applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

            (1) overtops;
            (2) escapes from;
            (3) is released from; or
            (4) is otherwise discharged from;

            a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

2. In BP-200, under the Property Coverages Section, item 7. of Perils Not Covered, Exclusions and Limitations is deleted and replaced by the following:

   7. Water Damage

      a. "We" do not cover loss caused by:

1) flood; surface water; waves, including, but not limited to, tidal wave and tsunami; tidal water; tides; overflow of any body of water; or spray from any of these; all whether or not driven by wind. This includes, but is not limited to, storm surge, storm tide, and tidal surge;

2) water that backs up through, overflows from, or is otherwise discharged from:

   a) a sewer or drain;
   b) a sump, sump pump, or related equipment; or
   c) any other type of system designed to remove subsurface water which is drained from the foundation area;

3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into:

   a) basements, whether paved or not;
   b) doors, windows, or other openings;
   c) foundations, floors, walls, or paved surfaces; or
   d) swimming pools, septic tanks, or other structures; or

4) material present in or carried or otherwise moved by water described in items 1) through 3) above.

However, if fire, explosion, or sprinkler leakage results, "we" do pay for the resulting loss.

b. This exclusion:

1) applies regardless of the cause of the water or the material carried or moved by water described under items a.1) through a.4) above, whether or not such cause is an act of nature; and

2) applies to, but is not limited to, water and material present in or carried or moved by water, whether or not driven by wind, that:

   a) overtops;
   b) escapes from;
   c) is released from; or
   d) is otherwise discharged from;

   a dam, levee, dike, floodgate, seawall, or other device or feature designed or used to retain, contain, or control water.

BP 0587 02 09

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# KNOWN INJURY OR DAMAGE AMENDMENTS

The Commercial Liability Coverage is amended as follows:

1. Under Definitions, the following definition is added:

   "Designated insured" means:

   a. "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if "you" are shown on the "declarations" as an individual;

   b. "you" and all "your" partners or members and their spouses, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a partnership or a joint venture;

   c. "you" and all "your" members and managers, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as a limited liability company; and

   d. "you" and all "your" executive officers and directors, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as an organization (other than a partnership, joint venture, or limited liability company). It also includes "your" stockholders, but only for their liability as such; or

   e. any "employee" who is authorized to give or receive notice of an "occurrence" or a claim.

2. Under Principal Coverages, Coverage L and, if applicable, Coverage N are amended by the addition of the following:

   This insurance applies only to:

   a. "Bodily injury" or "property damage" which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" that was known by a "designated insured" prior to the inception date of the policy period. If a "designated insured" knew, as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period, that "bodily injury" or "property damage" had occurred, any continuation of, resumption of, or change in such "bodily injury" or "property damage" will be deemed to have been known by the "designated insured" prior to the inception date of the policy period.

   b. "Bodily injury" or "property damage" that occurs during the policy period and which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge of Bodily Injury or Property Damage Condition, to have occurred prior to the inception date of this policy period, will include any continuation of, resumption of, or change in such "bodily injury" or "property damage" after the end of this policy period.

3. Under Defense Coverage, the following is added:

   "We" have no duty to defend a suit or claim seeking "damages" because of "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period.

AAIS
BP 0663 12 99
Page 2 of 2

4.  Under Conditions, the following condition is added:

    **Knowledge of Bodily Injury or Property Damage** -- Knowledge of "bodily injury" or "property damage" will be deemed to have occurred at the earliest of the following times:

    a.  when a suit, claim, or demand for "damages" alleging "bodily injury" or "property damage" is received by any "designated insured";

    b.  when any "designated insured" reports

the "bodily injury" or "property damage" to "us" or any other insurer; or

c.  when any "designated insured" becomes aware of anything that indicates that "bodily injury" or "property damage" may have occurred or is occurring.

BP 0663 12 99
Copyright, American Association of Insurance Services, 2000

This endorsement changes the Commercial Liability
Coverage provided by this policy
-- PLEASE READ CAREFULLY --

## EXCLUSION -- WET ROT, DRY ROT, BACTERIA, FUNGI, OR PROTISTS

The Commercial Liability Coverage is amended as follows:

1.  The following exclusions are added:

    a.  "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that results directly or indirectly from ingestion of, inhalation of, physical contact with, or exposure to:

        1)  wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or
        2)  a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

    b.  "We" do not pay for any loss, cost, or expense arising out of any request, demand, or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of:

        1)  wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or
        2)  a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

    c.  "We" do not pay for any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of:

        1)  wet rot; dry rot; a bacterium; a fungus, including but not limited to mildew and mold; or a protist, including but not limited to algae and slime mold; or
        2)  a chemical, matter, or a compound produced or released by wet rot, dry rot, a bacterium, a fungus, or a protist, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2.  However, exclusion 1.a. above does not apply to:

    a.  "bodily injury" that results from a fungus cultivated or harvested for human consumption or a food-borne or beverage-borne bacterium that causes illness commonly known as food poisoning (Food-borne or beverage-borne bacteria that cause illness commonly known as food poisoning include but are not limited to Staphylococcus aureus, Salmonella, Clostridium perfringens, Campylobacter, Listeria monocytogenes, Vibro parahaemolyticus, Bacillus cereus, and Escherichia coli.); or

    b.  "bodily injury" suffered by an "employee" of an "insured" while performing duties in connection with the "insured's" farming operations, but only to the extent that "bodily injury" to an "insured's" "employees" is covered by this policy.

BP 0676 06 02

Copyright, American Association of Insurance Services, 2002

AAIS
BP 0678 06 02
Page 1 of 1

This endorsement changes the Commercial Liability
Coverage provided by this policy
-- PLEASE READ CAREFULLY --

## EXCLUSION -- EXTERIOR INSULATION AND FINISH SYSTEMS

The Commercial Liability Coverage is amended as follows:

1.  Under Definitions, the following definition is added:

    "EIFS" means an exterior wall cladding or finish system used on any part of any structure consisting of:

    a.  a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

    b.  an adhesive or mechanical attachment of the insulation board to the substrate;

    c.  a reinforced base coat on the face of the insulation board or base coat and mesh;

    d.  a protective finish applied to the surface of the base coat providing surface texture to which color may be added; and

    e.  any conditioners, primers, accessories, flashings, coatings, caulking, and sealants that interact to form an energy efficient wall.

2.  The following exclusions are added:

    a.  "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that arises out of the design, manufacture, sale, service, construction, fabrication, preparation, installation, application, maintenance, or repair, including any remodeling, correction, or replacement of an "EIFS" or any part thereof, or any substantially similar system or any part thereof, including any method or procedure to correct problems with installed systems performed by or on behalf of an "insured".

    b.  "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that arises out of "your work" and that results directly or indirectly from any exterior component, fixture, or feature of any structure if an "EIFS" is used on any part of that structure.

    c.  "We" do not pay for actual or alleged "bodily injury" or "property damage" included in the "products/completed work hazard" and that results directly or indirectly from any exterior component, fixture, or feature of any structure if an "EIFS" is used on any part of that structure.

    d.  "We" do not pay for "bodily injury" or "property damage" liability assumed by an "insured" under a contract or agreement for the design, manufacture, sale, service, construction, fabrication, preparation, installation, application, maintenance, repair, including any remodeling, correction, or replacement of an "EIFS" or any part thereof, or any substantially similar system or any part thereof.

---

BP 0678 06 02

Copyright, American Association of Insurance Services, 2002

This endorsement changes the policy
**--PLEASE READ CAREFULLY --**

# CERTIFIED TERRORISM LOSS

The Businessowners Policy is amended as follows:

1. The following definitions are added.

   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States:

      1) to be an act of terrorism;
      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;
      3) to have resulted in damage:
         a) within the United States; or
         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission; and
      4) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and
      5) to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

   b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2. The "terms" of any terrorism exclusion that is part of or that is attached to this policy are amended by the following provision:

   This exclusion does not apply to "certified terrorism loss".

3. The following provision is added:

   If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a calendar year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

4. Under Property Coverages, the following provisions are added.

   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Property Coverages section of this policy provide coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and

   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

BP 0750 01 15

Copyright, American Association of Insurance Services, Inc., 2015

AAIS
BP 0760 01 15
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

## CERTIFIED ACT OF TERRORISM EXCLUSION

1.  The following definition is added.

    "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States:

    a.  to be an act of terrorism;

    b.  to be a violent act or an act that is dangerous to human life, property, or infrastructure;

    c.  to have resulted in damage:

        1) within the United States; or
        2) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

    d.  to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

    e.  to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended

2.  Under Property Coverages, the following exclusion is added.

    ### CERTIFIED ACT OF TERRORISM EXCLUSION

    "We" will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

3.  Under Property Coverages, the following provisions are added.

    a.  Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Property Coverages section of this policy provide coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

        1) exclusions that address war, military action, or nuclear hazard; or
        2) any other exclusion; and

    b.  the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

        1) exclusions that address war, military action, or nuclear hazard; or
        2) any other exclusion.

4.  Under Commercial Liability Coverages, the following exclusion is added.

    ### CERTIFIED ACT OF TERRORISM EXCLUSION

    "We" will not pay for any injury or damage caused directly or indirectly by a "certified act of terrorism". Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

---

**BP 0760 01 15**

Copyright, American Association of Insurance Services, Inc., 2015

AAIS
BP 0833 01 05
Page 1 of 4

This endorsement changes the Commercial
Liability Coverages provided by this policy
-- PLEASE READ THIS CAREFULLY --

# AUTO AND MOBILE EQUIPMENT AMENDMENTS

The Commercial Liability Coverages are amended as follows:

## ADDITIONAL DEFINITIONS

1. The definition of "auto" is deleted and replaced by the following:

   "Auto" means:

   a. a land motor vehicle, a trailer, or semi-trailer which is designed for travel on public roads. "Auto" includes attached machinery and equipment; or

   b. any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

2. The definition of "insured" is deleted and replaced by the following:

   "Insured":

   a. means:

   1) "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if "you" are shown on the "declarations" as an individual;

   2) "you" and all of "your" partners or members and their spouses, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a partnership or a joint venture;

   3) "you" and all of "your" members but only with respect to the conduct of "your" business if "you" are shown on the "declarations" as a limited liability company. "Your" managers are also "insureds" but only with respect to their duties as managers;

   4) "you" and all of "your" trustees, but only while acting within the scope of their duties as trustees, if "you" are shown on the "declarations" as a trust; or

   5) "you" and all of "your" "executive officers" and directors, but only while acting within the scope of their duties as "executive officers" and directors, if "you" are shown on the "declarations" as an organization other than a partnership, joint venture, or limited liability company. "Insured" also includes "your" stockholders, but only for their liability as stockholders.

   b. also includes:

   1) any person or organization, except "your" "employee" or "volunteer worker", while acting as "your" real estate manager;

   2) if "you" die during the policy period, "your" legal representative while acting within the scope of such duties, or a person or organization who has temporary custody of "your" property with respect to liability arising out of the maintenance or use of that property until "your" legal representative is appointed. "Your" legal representative has all of "your" rights and duties under this coverage.

Copyright, American Association of Insurance Services, Inc., 2005

3) "your" "employees" for acts within the scope of their employment by"you", and "your" "employees" and "volunteer workers" while in the course of performing duties related to the conduct of "your" business.

However, this does not include "your" managers if "you" are a limited liability company or "your" "executive officers" if "you" are an organization other than a partnership, joint venture, or limited liability company.

None of these "employees" or "volunteer workers" is "insureds" for:

a) "bodily injury" or "personal and advertising injury":

(1) to "you", "your" partners or members (if "you" are a partnership or joint venture), "your" members (if "you" are a limited liability company), or fellow "employees" while in the course of employment or while performing duties related to the conduct of "your" business, or "your" other "volunteer workers" while performing duties related to the conduct of "your" business;

(2) for which there is an obligation to fully or partially reimburse a third party for "damages" arising out of injury described in paragraph 3)a)(1) above or 3)b) below; or

(3) arising out of his or her rendering or failure to render professional health care services.

b) consequential injury to a spouse, child, parent, brother, or sister of that injured fellow "employee" as described in paragraph 3)a)(1)above.

c) "property damage" to property owned by; occupied by; used by; rented to; loaned to; in the care, custody, or control of; or over which physical control is being applied by "you", "your" "employees", "your" "volunteer workers", or any of "your" partners or members (if "you" are a joint venture or a partnership), or any of "your" members (if "you" are a limited liability company).

However, no person or organization is an "insured" with respect to the conduct of a current or past partnership, joint venture, or limited liability company that is not named on the "declarations" as an "insured".

3. The definition of "mobile equipment" is deleted and replaced by the following:

"Mobile equipment":

a. means land vehicles (including any attached machinery or equipment) that meet one or more of the following criteria:

1) those which are used only on premises owned by or rented to "you" (premises includes adjoining ways);

2) those which are designed primarily for use off public roads, including bulldozers, farm machinery, and forklifts;

3) those which travel on crawler treads;

4) those, whether self-propelled or not, designed or used primarily to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

a) power cranes, shovels, loaders, diggers, drills; and

b) graders, scrapers, rollers, and other road construction or repair equipment;

Copyright, American Association of Insurance Services, Inc., 2005

5) those not described in a.1), a.2), a.3), or a.4) above which are not self-propelled, but are used primarily to afford mobility to the following types of permanently attached equipment:

a) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment);
b) geophysical exploration, lighting, and well servicing equipment; and
c) cherry pickers and similar devices used to raise or lower workers; or

6) vehicles not described in a.1), a.2), a.3), or a.4) above which are primarily maintained for other than the purpose of transporting persons or cargo.

b. however, does not include self-propelled vehicles with the following types of permanently attached machinery or equipment:

1) equipment designed primarily for snow removal, street cleaning, or road maintenance other than road construction or resurfacing;
2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers;
3) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment); or
4) geophysical exploration, lighting, and well servicing equipment.

The vehicles described in b. above are considered "autos".

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

## COMMERCIAL LIABILITY COVERAGES

### COVERAGE L - BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY

Under Exclusions, exclusion h. is deleted and replaced by the following:

h. "We" do not pay for "bodily injury" or "property damage" arising out of:

1) the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, or "loading or unloading" of an "auto", aircraft, or watercraft, owned by, operated by, rented to, or loaned to any "insured"; or
2) the negligent supervision, hiring, or training of another person by an "insured" if the "bodily injury" or "property damage" involved the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, or "loading or unloading" of an "auto", aircraft, or watercraft, owned by, operated by, rented to, or loaned to any "insured".

However, this exclusion does not apply to:

1) parking an "auto" on premises owned by, rented to, or controlled by "you" or on the ways immediately adjoining such premises if the "auto" is not owned by, rented to, or loaned to "you" or the "insured";

Copyright, American Association of Insurance Services, Inc., 2005

AAIS
BP0833 01 05
Page 4 of 4

2) liability assumed under a "covered contract" for the ownership, maintenance, or use of an aircraft or a watercraft;

3) watercraft, if it is on shore on premises owned by, rented to, or controlled by "you";

4) watercraft, if it is not owned by "you" and is:

   a) less than 51 feet in length; and
   b) not being used to carry persons or property for a charge; or

5) "bodily injury" or "property damage" arising out of:

   a) the operation of machinery or equipment described in b.2), b.3), and b.4) of the definition of "mobile equipment"; or

   b) the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle law in the state where it is licensed or principally garaged.

BP 0833 01 05

Copyright, American Association of Insurance Services, Inc., 2005

AAIS
BP 0838UF 10 05
Page 1 of 1

This endorsement changes the Commercial
Liability Coverages provided by this policy
-- PLEASE READ THIS CAREFULLY --

# SILICA EXCLUSION

The Commercial Liability Coverages Section is
amended as follows:

## DEFINITIONS

The following definition is added:

"Silica" means silicon dioxide ($SiO_2$) including:

1.  crystalline silica, silica dust, industrial sand,
    silica sand, quartz, quartz dust, cristobalite,
    tridymite, tripoli, and silica mixed with other
    compounds;

2.  amorphous silica and silica gel; and

3.  silica dust mixed with other dust particles.

## COMMERCIAL LIABILITY COVERAGE SECTION

1.  The following is added to the exclusions
    under Coverage L - Bodily Injury Liability
    and Property Damage Liability:

    "We" do not pay for:

    a.  "bodily injury" arising out of the actual,
        alleged, or threatened ingestion,
        inhalation, or absorption of "silica";

    b.  "propery damage" arising out of the
        actual, alleged, or threatened contact
        with, existence of, exposure to, or
        presence of "silica"; or

    c.  any loss, cost, or expense arising out
        of the testing for, monitoring, cleaning up,
        removing, containing, treating,
        detoxifying, neutralizing, or in any way
        responding to or assessing the effects of
        "silica" by any "insured" or any other
        person or organization.

2.  The following is added to the exclusions
    under Coverage P - Personal and
    Advertising Injury Liability:

    "We" do not pay for:

    a.  "personal and advertising injury" arising
        out of the actual, alleged, or threatened
        ingestion, inhalation of, absorption of,
        contact with, existence of, exposure to,
        or presence of "silica"; or

    b.  any loss, cost, or expense arising out of
        the testing for, monitoring, cleaning up,
        removing, containing, treating,
        detoxifying, neutralizing, or in any way
        responding to or assessing the effects of
        "silica" by any "insured" or any other
        person or organization.

BP 0838UF 10 05

Copyright, American Association of Insurance Services, Inc., 2005

AAIS
BP 0840 02 08
Page 1 of 1

This endorsement changes the Commercial
Liability Coverages provided by the policy
-- PLEASE READ THIS CAREFULLY --

## TELEPHONE CONSUMER PROTECTION ACT OF 1991, CAN-SPAM ACT OF 2003, AND OTHER INFORMATION DISTRIBUTION VIOLATIONS EXCLUSION

The Commercial Liability Coverage is amended as follows:

### COMMERCIAL LIABILITY COVERAGES

The following is added to the exclusions under Coverage L -- Bodily Injury Liability and Property Damage Liability and Coverage P -- Personal and Advertising Injury Liability:

"We" do not pay for "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of violations of or alleged violations of:

a.  the Telephone Consumer Protection Act of 1991 (TCPA), including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;

b.  the CAN-SPAM Act of 2003, including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations; or

c.  any federal, state, or local law, regulation, statute, or ordinance, other than the TCPA or the CAN-SPAM Act of 2003, that limits or prohibits the communicating, transmitting, sending, or distribution of material or information.

BP 0840 02 08

Copyright, American Association of Insurance Services, Inc., 2008

AAIS
BP 0845UF 10 05
Page 1 of 1

This endorsement changes the Commercial
Liability Coverages provided by the policy
**-- PLEASE READ THIS CAREFULLY --**

# ADDITIONAL INSURED
## LESSOR OF PREMISES

(Entries required to complete the Schedule
will be shown below or on the declarations.)

## SCHEDULE

Person or Organization designated as Additional Insured:
BEN-HUR CHESTNUT, LP
2400 ROUTE 1
NORTH BRUNSWICK NJ 08900

Designated Premises (part of the premises leased to Named Insured):

See Policy Declarations

The Commercial Liability Coverage are amended as follows:

1. Under Additional Definitions, the definition of **insured** is amended to include each person or organization shown in the Schedule as an additional insured, but only with respect to such person's or organization's liability for **bodily injury, property damage**, or **personal and advertising injury:**

   a. for which **you** are legally liable; and

   b. caused, in whole or in part, by **your** acts or omissions or the acts or omissions of those acting on **your** behalf in connection with that part of the premises shown in the Schedule that is leased to **you** from the person or organization shown in the Schedule.

2. With respect to the coverage provided to these additional insured, this insurance does not apply to:

   a. structural alteration, new construction, or demolition operations performed by or on behalf of the person or organization shown in the Schedule; or

   b. any **occurrence** that takes place after **you** are no longer a tenant of the premises shown in the Schedule.

**BP 0845UF 10 05**

Copyright, American Association of Insurance Services, Inc., 2005

Case ID: 191003548

AAIS
BP 0850UF 10 06
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# VIRUS OR BACTERIA EXCLUSION

The following provisions are added with respect to all property coverages provided by this policy. All other "terms" of the policy apply, except as amended by this endorsement.

1. When "fungus or related perils" is a defined "term", that definition is deleted and replaced by the following, but only with respect to the Property Coverages provided by this policy.

   "Fungus or related perils" means:

   a. a fungus, including but not limited to mildew and mold;

   b. a protist, including but not limited to algae and slime mold;

   c. wet rot;

   d. dry rot; or

   e. a chemical, matter, or compound produced or released by a fungus, a protist, wet rot, or dry rot, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2. The following exclusion is added under Perils Not Covered and Excluded. It applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

**Virus or Bacteria** -- "We" do not pay for loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

This exclusion applies to, but is not limited to, any loss, cost, or expense as a result of:

a. any contamination by any virus, bacterium, or other microorganism; or

b. any denial of access to property because of any virus, bacterium, or other microorganism.

3. The Virus or Bacteria exclusion set forth by this endorsement supersedes the "terms" of any other exclusions referring to "pollutants" or to contamination with respect to any loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress.

4. The "terms" of this endorsement, whether or not applicable to any loss, cost, or expense, cannot be construed to provide coverage for a loss, cost, or expense that would otherwise be excluded under the policy to which this endorsement is attached.

BP 0850UF 10 06

Copyright, American Association of Insurance Services, Inc., 2006

AAIS
BP 0867UF 04 11
Page 1 of 1

This endorsement changes the
Commercial Liability Coverages provided by this policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## DEFENSE COSTS REIMBURSEMENT
### PENNSYLVANIA

The Commercial Liability Coverages are amended as follows. All other **terms** of the policy apply, except as amended by this endorsement.

## COMMERCIAL LIABILITY COVERAGES

The following is added to the Insuring Agreements under Coverage L -- Bodily Injury Liability and Property Damage Liability, Coverage O -- Fire Legal Liability, and Personal and Advertising Injury Liability:

If **we** defend the **insured** against a **suit** or **we** pay for an **insured's** defense, and **we** later determine that the **suit** is not covered, **we** have the right to be reimbursed for the defense costs **we** have incurred.

However, under this provision, **our** right to be reimbursed for defense costs applies only to such costs that **we** incur after **we** give **you** written notice that the **suit** may not be covered and that **we** are reserving **our** rights to end the defense coverage and to seek reimbursement for defense costs.

BP 0867UF 04 11

Copyright, American Association of Insurance Services, Inc., 2011

No coverage is provided by this notice, nor does it replace any provisions of your policy.
Read your declarations and policy for complete information on the coverages you are
provided. If there are any discrepancies between the policy and this notice,
**THE PROVISIONS OF THE POLICY GOVERN.**

**AAIS**
**CL 0310 09 06**
**Page 1 of 1**

# DISCLOSURE NOTICE

## NO COVERAGE FOR LIABILITY ARISING OUT OF SILICA

Your policy does not provide coverage for silica, meaning legal liability to others for injury or damage arising from exposure to silica and silica related dust. This means that claims for bodily injury or property damage arising out of silica and silica related dust are not covered. If your policy provides coverage for personal injury and/or advertising injury, this also means that claims for personal injury or advertising injury arising out of silica and silica related dust are not covered.

In addition, your policy does not provide coverage for loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of silica.

CL 0310 09 06

Copyright, American Association of Insurance Services, Inc., 2006

No coverage is provided by this notice, nor does it replace any provisions of your policy. Read your declarations and policy for complete information on the coverages you are provided. If there are any discrepancies between the policy and this notice, THE PROVISIONS OF THE POLICY GOVERN.

**AAIS**
**CL 0320 10 06**
**Page 1 of 1**

## DISCLOSURE NOTICE

## NO COVERAGE FOR LIABILITY ARISING OUT OF TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA) AND CAN-SPAM ACT OF 2003

Your policy does not provide coverage for exposures associated with the Telephone Consumer Protection Act of 1991 (TCPA) and the CAN-SPAM Act of 2003. This means that claims for bodily injury or property damage arising out of violations of the Telephone Consumer Protection Act of 1991 (TCPA) or CAN-SPACM Act of 2003 are not covered. If your policy provides coverage for personal injury and/or advertising injury, this also means that claims for personal injury or advertising injury arising out of the Telephone Consumer Protection Act of 1991 (TCPA) or CAN-SPAM Act of 2003 are not covered.

In addition, your policy does not provide coverage for any amendments to these Acts, and any similar federal, state, or local laws, ordinance, statutes, or regulations.

**CL 0320 10 06**

Copyright, American Association of Insurance Services, Inc., 2006

Case ID: 191003548

AAIS
CL 0605 01 15
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

## CERTIFIED TERRORISM LOSS DISCLOSURE OF
## PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

(The entries required to complete this endorsement will be shown
below, on the "declarations", or on the "schedule of coverages".)

Certified Terrorism Loss Premium $_____ 166.00 _____

Additional information, if any, concerning terrorism premium:

1.  The portion of "your" premium that is attributed to coverage for "certified terrorism loss" is shown in the
    Schedule above.

2.  Coverage for "certified terrorism loss", to the extent that such coverage is provided by this policy or
    Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under
    a federal program. Under that program, the United States pays the following percentage of insured losses for
    "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain:

    a.  85%, for insured losses occurring before January 1, 2016;

    b.  84%, for insured losses occurring during the 2016 calendar year;

    c.  83%, for insured losses occurring during the 2017 calendar year;

    d.  82%, for insured losses occurring during the 2018 calendar year;

    e.  81%, for insured losses occurring during the 2019 calendar year; and

    f.  80%, for insured losses occurring on or after January 1, 2020.

    However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk
    Insurance Act, as amended, exceed one hundred billion dollars in a calendar year (January 1 through
    December 31), the Treasury will not make payment for any portion of the amount of such losses that
    exceeds one hundred billion dollars.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has
    exceeded one hundred billion dollars in a calendar year
    (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk
    Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one
    hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a calendar year
    (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation
    in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk
    Insurance Act, as amended.

CL 0605 01 15

Copyright, American Association of Insurance Services, Inc., 2015

**AAIS**
**CL 1045 01 15**
**Page 1 of 2**

**Insurance Company:** Utica First Insurance Company

**Policy Number:** BOP 4433869 02

**Named Insured:** THE LITTLE LION

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act. See the next page for a further description of an act of terrorism as provided under the Act.

<u>**ACCEPTANCE OR REJECTION OF TERRORISM INSURANCE COVERAGE**</u>
You may accept or reject this offer of coverage. If you choose to accept this coverage, the premium for this coverage is payable according to the terms of your billing notice. You may reject this offer by completing and signing the enclosed statement and returning it to us. If you send us a signed rejection of coverage, your policy will exclude coverage for certified terrorism losses.

**Insurers should include the following premium statement in a Notice prepared for policies that are not subject to Standard Fire Policy statutes with respect to losses resulting from terrorism:**

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act, is:

$   166.00

_____   I accept this offer of terrorism coverage and acknowledge that I have been notified that under the Terrorism Risk Insurance Act, as amended, any losses resulting from certified acts of terrorism under my policy may be partially reimbursed by the United States government and may be subject to a $100 billion cap that may reduce my coverage, and I have been notified of the portion of my premium attributable to such coverage.

_____   I hereby reject this offer of terrorism coverage. I understand that an exclusion of certified terrorism losses will be made part of this policy. I also acknowledge that I have been notified that under the Terrorism Risk Insurance Act, as amended, any losses resulting from certified acts of terrorism under my policy may be partially reimbursed by the United States government and may be subject to a $100 billion cap that may reduce my coverage, and I have been notified of the portion of my premium attributable to such coverage.

Copyright, American Association of Insurance Services, Inc., 2015

AAIS
CL 1045 01 15
Page 2 of 2

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, such losses may be partially reimbursed by the United States government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is shown above and does not include any charges for the portion of loss that may be covered by the federal government under the Act.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**Policyholder's Signature:**                                    **Date:**

_____

Print Name

_____

The following excerpt from the Act is provided for your information:

According to Section 102(1) of the Terrorism Risk Insurance Act, as amended, "The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States ---- (i) to be an act of terrorism; (ii) to be a violent act or an act that is dangerous to (I) human life; (II) property; or (III) infrastructure; (iii) to have resulted in damage within the United States, or outside the United States in the case of (I) an air carrier or vessel described in paragraph (5)(B); or (II) the premises of a United States mission; and (iv) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion."

CL 1045 01 15

Copyright, American Association of Insurance Services, Inc., 2015

AAIS

| This endorsement changes the Commercial |
| Property Coverages provided by this policy |
| -- PLEASE READ THIS CAREFULLY -- |

CP-601UF
Ed 2.0

# SPOILAGE COVERAGE

### SCHEDULE
(The information required below may be shown on a separate schedule or supplemental declarations.)

| Prem. No. | Bldg. No. | Description of Covered Property | Limit | PERILS COVERED | | Refrigeration Maintenance or Service Agreement |
| | | | | Breakdown and Contamination | Power Disruption | |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 1 | PERISHABLE STOCK | 20,000 | X | X | X |

## ADDITIONAL DEFINITIONS

**Perishable Stock** means personal property preserved and maintained under controlled conditions and susceptible to loss if the controlled conditions change.

## PROPERTY COVERED

**We** cover **perishable stock** owned by **you** or by others that is in **your** care, custody, or control as described on the schedule. **We** insure against loss caused by the covered perils. **Perishable stock** is covered only while at the premises described on the schedule.

## PERILS COVERED

**We** cover loss to covered **perishable stock** caused by the following events only when indicated by an "X" on the schedule.

1. **Breakdown --** This means a change in temperature or humidity resulting from:

   a. mechanical breakdown;

   b. malfunction; or

   c. failure

   of the refrigeration system, or the equipment or apparatus controlling the refrigeration system, while at the described premises.

2. **Contamination --** This means contamination by the refrigerant of the refrigeration system.

3. **Power Disruption --** This means a change in temperature or humidity resulting from:

   a. complete or partial lack of electrical power originating within 500 feet of the insured premises which was caused by a named peril or;

   b. fluctuation of electrical current originating within 500 feet of the insured premises which was caused by a named peril

   due to conditions beyond **your** control.

CP-601UF Ed 2.0

-- 1 --
Copyright MCMXCIV, American Association of Insurance Services

AAIS

Case ID: 191003548

## PERILS EXCLUDED

1. The following Perils Excluded in this policy apply to Spoilage Coverage:

   a. Civil Authority.

   b. Earth Movement or Volcanic Eruption.

   c. Nuclear Hazard.

   d. War.

   e. Water.

2. The following "Perils Excluded" are added:

   **We** do not pay for loss if one or more of the following exclusions apply to the loss.

   a. **Disconnection or Deactivation --** This means the disconnection of the refrigeration system from the source of power, or the deactivation of electrical power caused by turning off a switch or other device used to control the electrical current or power.

   b. **Glass Breakage --** This means the breakage of any glass that is a permanent part of the refrigeration system.

c. **Inability to Provide Sufficient Power --** This means:

   1) the inability of an electrical utility company or other power source to provide sufficient power due to governmental order or lack of fuel; or

   2) the lack of generating capacity at the described premises to meet demand.

## OTHER CONDITIONS

**Refrigeration Maintenance or Service Agreement --** **We** do not cover losses occurring at the described premises if **you** do not notify **us** as soon as reasonably possible when **you** know of any suspension, termination, cancellation, or impairment of an applicable refrigeration maintenance or service agreement. This condition applies only when a refrigeration maintenance or service agreement is indicated by an "X" on the schedule for the described premises. This condition does not apply when factors away from the described premises result in the complete or partial lack of electrical power or fluctuation of electrical current at the described premises.

Case ID: 191003548

AAIS

> This endorsement changes the Commercial
> Property Coverages provided by this policy
> -- PLEASE READ THIS CAREFULLY --

CP-601EX
Ed 1.0

# EXTENDED SPOILAGE COVERAGE

## SCHEDULE
(The information required below may be shown on a separate schedule or supplemental declarations.)

| Prem. No. | Bldg. No. | Description of Covered Property | Limit |
|---|---|---|---|
| See Dec Page | See Dec Page | PERISHABLE STOCK | $5,000 |

## ADDITIONAL DEFINITIONS

**Perishable Stock** means personal property preserved and maintained under controlled conditions and susceptible to loss if the controlled conditions change.

## PROPERTY COVERED

**We** cover **perishable stock** owned by **you** or by others that is in **your** care, custody, or control as described on the schedule. **We** insure against loss caused by the covered perils. **Perishable stock** is covered only while at the premises described on the schedule.

## PERILS COVERED

**We** cover loss to covered **perishable stock** caused by the following events
1. **Power Disruption** -- This means a change in temperature or humidity resulting from:

   a. complete or partial lack of electrical power originating from damaged or destroyed overhead or underground transmission/power lines where the damage or destruction of the overhead or underground transmission/power line occurred at a location greater than 500 feet from the insured premises;
   b. fluctuation of electrical current originating from damaged or destroyed overhead or underground transmission/power lines where the damage or destruction of the overhead or underground transmission/power line occured at a location greater than 500 feet from the insured premies due to conditions beyond your control.

## PERILS EXCLUDED

1. The following Perils Excluded in this policy apply to Spoilage Coverage:

   a. Civil Authority.
   b. Earth Movement or Volcanic Eruption.
   c. Nuclear Hazard.
   d. War.
   e. Water.
   f. Flood.

2. The following "Perils Excluded" are added:

   **We** do not pay for loss if one or more of the following exclusions aply to the loss.

   a. **Disconnection or Deactivation** - This means the disconnection of the refrigeration system from the source of power, or the deactiviation of electrical power caused by turning off a switch or other device used to control the electrical current or power.
   b. **Glass Breakage** - This means the breakage of any glass that is a permanant part of the refrigeration system.
   c. **Inability to Provice Sufficient Power** - This means:
      1) the inability of an elecrical utility company or other power source to provice sufficient power due to governmental order or lack of fuel; or
      2) the lack of generating capacity at the described premises to meet demand.

CP-601EX Ed 1.0 --- -- 1 -- --- AAIS



**Introducing an important new optional coverage for your Business**

# Cyber Liability Insurance

It's not just the big banks and multinational corporations that are targets for cyber crime, even if their breaches tend to get the biggest headlines.

The average cost of a breach for a small business is over $36,000.

Legal costs alone (defense and settlements) represent 57% of breach costs. Additional costs include IT services, customer notification, and public relations expenses.

This great new coverage provides:

Multimedia Liability Coverage
Security and Privacy Liability Coverage
Privacy Regulatory Defense and Penalties Coverage
PCI DSS Assessment Coverage
Privacy Breach Response Costs, Notification Expenses and Customer
Support and Credit Monitoring Expenses Coverage
Network Asset Protection Coverage
Cyber Extortion Coverage
Cyber Terrorism Coverage
BrandGuard Coverage
Business Owner ID Theft Recovery Coverage

The annual premium for Cyber Liability is only 5% of your policy premium or $        288.00

This important coverage has been automatically added to your policy for your convenience.  If you wish to remove this coverage please contact your independent insurance agent to request removal.

**CYBDN**

Case ID: 191003548



**UTICA FIRST**
INSURANCE COMPANY

P.O. Box 851, Utica, N,Y, 13503-0851 800-456-4556

# DISCLOSURE NOTICE
## Protective Devices

This Notice provides information about changes to the terms of your policy. No coverage is provided by this Notice, nor does it replace any provisions of your policy. You should read your policy and review your declarations page for complete information regarding the coverages you are provided. If there are any discrepancies between your policy and this Notice, THE PROVISIONS OF THE POLICY GOVERN.

## BP331UF 1.0 Protective Devices

If your policy includes endorsement BP331UF, Additional Exclusions and Other Property condition may apply when a device or service is described on the schedule. Please review this form and discuss any comments or questions you have with your designated insurance agent as shown on the Declarations Page of your policy.

DN 0331 1.0

# DISCLOSURE NOTICE
# CERTIFIED TERRORISM LOSS

This Notice provides information about changes to the terms your policy with respect to loss caused by terrorism. No coverage is provided by this Notice, nor does it replace any provisions of your policy. You should read your policy and review your declarations page for complete information regarding the coverages you are provided. If there are any discrepancies between the policy and this notice, THE PROVISIONS OF THE POLICY GOVERN.

## DETERMINING A CERTIFIED ACT OF TERRORISM

Under TRIPRA 2015 an 'act of terrorism' now means any act that is certified by the Secretary of the Treasury in consultation with the Secretary of Homeland Security and the Attorney General of the United States to be an act of terrorism and to be a violent act or an act that is dangerous to human life, property, or infrastructure, which results in damage within the United States or, in certain cases, outside of the U.S. Furthermore, an act of terrorism is still an act deemed to have been committed by an individual or by individuals as part of an effort to coerce the civilian population of the U.S. or to influence the policy or affect the conduct of the U.S. Government by coercion.

## INFORMATION REGARDING LIMITATIONS ON
## FEDERAL AND INSURER LIABILITY

You should also know that the Terrorism Risk Insurance Act contains a $100 billion cap that limits U.S. government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

DN 0700T 01 15

# DISCLOSURE NOTICE
## SILICA EXCLUSION

## NO COVERAGE FOR LIABILITY ARISING OUT OF SILICA

This notice is designed to provide information regarding the Silica Exclusion endorsement attached to your new or renewal policy.

This notice is <u>not</u> part of your insurance contract.  No coverage is provided by this Notice. **READ YOUR POLICY CAREFULLY** to determine the actual terms and conditions of your policy and it's endorsements.

The Silica Exclusion endorsement that is applicable to the Businessowners coverage provided by your policy is identified as BP 0838UF.

**Silica Exclusion, BP 0838UF**

Your policy does not provide coverage for silica, meaning legal liability to others for injury or damage arising from exposure to silica and silica related dust. This means that claims for bolidy injury or property damage arising out of silica and silica related dust are <u>not</u> covered. If your policy provides coverage for personal injury and/or advertising injury, this also means that claims for personal injury or advertising injury arising out of silica and silica related dust are <u>not</u> covered.

In addition, your policy does not provide coverage for loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of silica.

DN 0838UF 1005



**UTICA FIRST**
INSURANCE COMPANY

P.O. Box 851, Utica, N,Y, 13503-0851 800-456-4556

## DISCLOSURE NOTICE
### Additional Insured Form Changes

This notice is designed to provide information regarding the additional insured endorsement(s) that are attached to your renewal policy.

This notice is <u>not</u> part of your insurance contract. No coverage is provided by this notice. **READ YOUR POLICY CAREFULLY** to determine the actual terms and conditions of your policy and its endorsements.

The endorsement(s) that are applicable to the Businessowners coverage provided by your policy have changed to one of the below listed forms:

    BP 0307  01 04  **Owner or Lessor of Leased Land**
    BP 0499  01 04  **Grantor of Franchise**
    BP 0701  01 04  **Additional Insured - Co-owner of the Premises**
    BP 0702  01 04  **Additional Insured - Controlling Interest**
    BP 0703  01 04  **Additional Insured - Mortgagee, Assignee, or Receiver**
    BP 0704  01 04  **Additional Insured - State or Political Subdivision -**
                    **Premises Permits**
    BP 0708  01 04  **Additional Insured - Vendors**
    BP 0709  01 04  **Additional Insured -  Concessionaires Trading Under**
                      **the Insured's Name**
    BP 0841 10 05  **Additional Insured - Designated Party**
    BP 0842 10 05  **Additional Insured - Lessor of Leased Equipment**
    BP 0845 10 05  **Additional Insured - Lessor Of Premises**

Please review these forms and discuss any comments or questions you have with your designated insurance agent as shown on the Declarations Page of your policy.

DN 0845 1.0

# DISCLOSURE NOTICE
# VIRUS OR BACTERIA EXCLUSION

This notice is designed to provide information regarding the new Virus Or Bacteria Exclusion endorsement attached to your new or renewal policy.

This notice is not part of your insurance contract.  No coverage is provided by this notice. **READ YOUR POLICY CAREFULLY** to determine the actual terms and conditions of your policy and its endorsements.

The Virus Or Bacteria Exclusion endorsement that is applicable to the Business owners coverage provided by your policy is identified as BP 0850UF.

**Virus Or Bacteria Exclusion, BP 0850UF**

The following provision is added with respect to all property coverages provided by your policy:

> This endorsement specifically states that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is not covered under your policy.

The endorsement applies to all coverages, coverage extensions, supplemental coverages, optional coverages, and endorsements that are provided by the Property Coverage Section of the Businessowners policy to which this endorsement is attached, including, but not limited to, those that provide coverage for property, earnings, extra expense, or interruption by civil authority.

DN 0850UF 10 06

# DISCLOSURE NOTICE
## Businessowners Program

This Notice provides information about changes to the terms of your policy. No coverage is provided by this Notice, nor does it replace any provisions of your policy. You should read your policy and review your declarations page for complete information regarding the coverages you are provided. If there are any discrepancies between your policy and this Notice, **THE PROVISIONS OF THE POLICY GOVERN.**

### Amendatory Endorsement

Mandatory endorsement BP 0475 is attached to your renewal policy to restate and clarify the Water exclusion, as well as revise the definition of "hardware", under the property coverage terms of the policy.

With respect to the Water exclusion, this endorsement adds language to the exclusion to clarify and provide examples of specific types of water that are excluded, such as tsunamis, tides, storm surge, storm tide, and tidal surge. Coverage is also excluded for water that backs up through, overflows from, or is otherwise discharged from any type of system, including a sewer, drain, or sump pump, that removes subsurface water from
the area around the foundation. Additionally, material present in or carried or otherwise moved by any excluded water is also not covered.

The Water exclusion applies regardless of the cause of the excluded water or material present in or carried or otherwise moved by any excluded water, whether or not such cause is an act of nature. Additionally, the exclusion applies to such excluded water or material that overtops, escapes from, is released from, or is otherwise discharged from devices, such as dams, levees, or seawalls, designed or used to retain, contain, or control water.

With respect to the definition of "hardware", the endorsement clarifies that the term is limited to only the types of computer equipment specifically listed in the definition. The endorsement applies to all coverages provided under the Property Coverages Section of your policy.

DNWTR 02 09

AAIS

> This endorsement changes the Commercial
> Liability Coverages provided by this policy
>
> **- PLEASE READ THIS CAREFULLY-**

GL-122-A
Ed. 1.0 (12/97)

# NON-OWNED AUTO LIABILITY COVERAGE
# HIRED AUTO LIABILITY COVERAGE

**LIMITS FOR THIS COVERAGE:** $   1,000,000  EACH OCCURRENCE
$   1,000,000  AGGREGATE

The Commercial Liability Coverage is amended as follows:

## NON-OWNED AUTO LIABILITY

Coverage L is extended to apply to **bodily injury** or **property damage** arising out of the use of a **non-owned auto** in **your** business by a person other than **you.**

## HIRED AUTO LIABILITY

Coverage L is extended to apply to **bodily injury** or **property damage** arising out of the use of a **hired auto** by **you** or **your** employees in the course of **your** business.

### DEFINITIONS

With respect to the coverage provided by this endorsement, the definition of **insured** is amended to include:

1. **Insured** — This means:

   a. **you;**

   b. any other person using a **hired auto** with **your** permission;

   c. with respect to a **non-owned auto, your** partners or **your** executive officers, but only while the **non-owned auto** is used in **your** business; and

   d. any other person or organization, but only with respect to their liability because of acts or omissions of an **insured** under a., b. and c. above.

2. None of the following is an **insured:**

   a. any person engaged in the business of his or her employer with respect to **bodily injury** to any fellow employee of such person injured in the course of employment;

   b. any partner or executive officer with respect to an **auto** owned by such partner or officer or a member of his or her household;

   c. any person while employed in or otherwise engaged in duties in connection with an **auto business,** other than an **auto business** operated by **you;** and

d. the owner or lessee (of whom **you** are a sublessee) of a **hired auto** or the owner of a **non-owned auto** or any agent or employee of any such owner or lessee.

The following definitions are added:

1. **Auto Business** — This means the business or occupation of selling, repairing, servicing, storing or parking automobiles.

2. **Hired Auto** — This means an **auto** you lease, hire or borrow on an occasional or infrequent basis. It does not include an **auto** you lease, hire or borrow from:

   a. any of **your** employees or members of their households;

   b. any of **your** partners or executive officers; or

   c. any entity which requires **you** to provide **auto** insurance.

3. **Non-Owned Auto** — This means any **auto** you do not own, lease, hire or borrow which is used in connection with **your** business. If **you** are a partnership, a **non-owned auto** does not include any **auto** owned by any partner.

### EXCLUSIONS APPLICABLE TO ALL COVERAGES

Exclusion 6.b. does not apply to a **hired auto.**

Exclusion 8. does not apply to **bodily injury** arising out of and in the course of domestic employment by the **insured** unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

### ADDITIONAL EXCLUSIONS THAT APPLY TO PROPERTY DAMAGE LIABILITY

The following exclusion is added:

11.   **We** do not pay for **property damage** to property owned or being transported by, or rented or leased to the **insured.**

GL-122-A (12/97)

**AAIS**

**GL-202**
**(Ed. 1-87)**

> This endorsement changes the Commercial
> Liability Coverages provided by this policy.
> **- PLEASE READ THIS CAREFULLY -**

# EXCLUSION - ATHLETIC OR SPORTS PARTICIPANTS

(The information required below may be shown on a separate schedule or supplemental Declarations.)

| SCHEDULE |
|---|
| Description of Operations: |
| **SEE DECLARATIONS PAGE** |

The Commercial Liability Coverage of this policy is amended as follows:

## EXCLUSIONS THAT APPLY TO ALL COVERAGES

The Exclusions That Apply To All Coverages are amended to include:
**We** do not pay for **bodily injury** to any person while practicing for or participating in any sports or athletic contest or exhibition that **you** sponsor with respect to any operations shown in the Schedule.

GL-202

**Copyright 1987 AAIS**

# MAXIMIZER
# COVERAGE ENDORSEMENT

WHAT **"We"** COVER:

In addition to any coverage shown on:

1. the Declarations Page,
2. the Supplemental Declarations Page,
3. the General Policy Provisions, or
4. any other coverage attached to **"your"** policy.

For an additional premium, **"we"** provide the following coverages or extensions of coverage subject to the terms contained in the policy. These added coverages apply only as excess over other coverage contained in **"your"** policy, unless otherwise specified.

| | |
|---|---|
| $    25,000. | ACCOUNTS RECEIVABLE |
| $      5,000. | ADDITIONAL DEBRIS REMOVAL |
| $      2,000. | ADDITIONAL EXPENSE |
| $      2,000. | BUSINESS CREDIT CARD, FORGERY, AND COUNTERFEIT MONEY |
| $      5,000. | BUSINESS PROPERTY AT NEWLY ACQUIRED LOCATIONS |
| $      2,000. | BUSINESS PROPERTY OF OTHERS |
| $      2,500. | COMPUTER COVERAGE |
| $      5,000 | CREDIT CARD RECEIPTS COVERAGE |
| $      5,000. | DEMOLITION COVERAGE |
| $      5,000. | EMPLOYEE DISHONESTY |
| $      2,000. | EXTERIOR SIGNS |
| $      1,000. | FIRE PROTECTIVE DEVICES RECHARGE |
| $  100,000. | FIRE LEGAL LIABILITY |
| $      1,000. | GLASS COVERAGE |
| $         500. | LOCK REPLACEMENT |
| $  100,000. | LOSS OF EARNINGS |
| $      5,000. | MONEY AND SECURITIES |
| $      2,000. | PERSONAL EFFECTS |
| $      2,000. | PROPERTY IN TRANSIT |
| $      5,000. | REFRIGERATED FOOD PRODUCTS |
| $      2,000. | SIGNS AWAY FROM THE PREMISES |
| $      2,000. | TREES, PLANTS, AND SHRUBS |
| $      5,000. | UTILITY INTERRUPTION |
| $    25,000. | VALUABLE PAPERS AND RECORDS |

# PRINCIPAL COVERAGES

## ACCOUNTS RECEIVABLE

**What "We"Pay For:**

**"We"** pay up to $25,000 for loss or damage to Accounts Receivable on the described premises.

**What "We" Do Not Pay For:**

1. loss due to any fraudulent, dishonest or criminal act by any **"insured"**, a partner, or an officer, director or trustee, while working or otherwise, and whether acting alone or in collusion with others;

2. loss due to bookkeeping, accounting or billing errors or omissions;

3. loss, the proof of which as to factual existence, is dependent upon an audit of records or an inventory computation. This shall not prevent the use of such procedures in support of a claim for loss which the **"insured"** can prove, through evidence wholly apart from an audit of records or an inventory, is due solely to a risk of loss of records of accounts receivable but not otherwise excluded under this policy;

4. loss due to alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of **"money"**, **"securities"** or other property but only to the extent of such wrongful giving, taking obtaining or withholding;

5. loss due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning;

6. loss due to nuclear reaction, nuclear radiation or radioactive contamination, or any other act or condition incident to them; or

7. loss caused by or resulting from:

   a. hostile or warlike action in time of peace or war, including any action in hindering, combating or defending against an actual, impending or expected attack by:

      1) any government or sovereign power, or by any authority maintaining or using military, naval or air forces;
      2) military, naval or air forces; or
      3) an agent of any such government, power, authority or forces;

   b. any weapon of war employing atomic fission or radioactive force whether in time of peace or war; or
   c. insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

## ADDITIONAL DEBRIS REMOVAL

**What "We" Pay For:**

**"We"** pay up to $5,000, as an additional amount, only when the sum of necessary expense of removal of the covered debris and the covered property loss exceeds the amount of insurance applicable on **"your"** policy.

Case ID: 191003548

## ADDITIONAL EXPENSE

### What "We" Pay For:

**"We"** pay up to $2,000 for additional expense which **"you"** must incur to continue business as usual had no damage occurred.

**"You"** must do everything reasonable to reduce the amount of loss. **"You"** must do everything reasonable to resume operations with the same quality of service which existed immediately before the loss; and **"you"** must resume partial or complete operation of the property making use of merchandise, stock or other property at **"your"** other locations.

## BUSINESS CREDIT CARD, FORGERY AND COUNTERFEIT MONEY

### What "We" Pay For:

**"We"** pay up to $2,000 for loss when **"you"**.

1. become legally obligated to pay for the unauthorized use of credit cards issued or registered in **"your"** name;
2. suffer a loss through forgery or alteration of checks, drafts, certificates of deposit and notes including negotiable orders of withdrawal drawn or issued by **"you"**, or
3. accept in good faith, counterfeit United States or Canadian paper currency.

### What "We" Do Not Pay For:

1. any loss sustained as a result of **"your"** failure to comply with all of the requirements of the credit card;
2. any loss resulting from **"your"** dishonesty;
3. any loss resulting from use of the credit card by anyone with **"your"** permission; or
4. any loss involving a bank debit card or similar device used to deposit, withdraw or transfer funds.

## BUSINESS PROPERTY AT NEWLY ACQUIRED LOCATIONS

### What "We" Pay For:

**"We"** pay up to $5,000 for business personal property at newly acquired locations.

### What "We" Do Not Pay For:

This coverage ceases:

1. on the date more specific insurance takes effect;
2. 30 days from the date of the acquisition of the newly acquired business property;
3. on the date that the value of such property is reported to us; or
4. on the date this coverage is terminated;

whichever occurs first.

## BUSINESS PROPERTY OF OTHERS

### What "We" Pay For:

**"We"** pay up to $2,000 for loss to business personal property of others in **"your"** care, custody and control while on the insured premises.

Case ID: 191003548

## COMPUTER COVERAGE

**What "We" Pay For:**

**"We"** cover direct physical loss to **"your" "hardware"** and **"software"** up to an amount of $2,500 which is caused by a covered peril while at a business address shown on the Declarations Page. This includes similar property of others that is in **"your"** care, custody, or control.

### DEFINITIONS

**"Hardware"** means a network of electronic machine components (microprocessors) capable of accepting instructions and information, processing the information according to the instructions, and producing desired results.

**"Hardware"** includes, but is not limited to:
a. mainframe and mid-range computers and servers;
b. personal computers and workstations;
c. laptops, hand-held computers, notebook PCs, and other portable computer devices and accessories, such as multimedia projectors; and
d. peripheral data processing equipment, such as printers, keyboards, monitors, and modems.

**"Software"** means **"media"**, **"data records"**, **"programs"** and **"applications"** and **"proprietary programs".**

## CREDIT CARDS RECEIPTS COVERAGE

Coverage applies, up to $5,000, at each described location, when as a direct result of a covered loss **"you"** are unable to collect sums due from **"your"** customers because of loss of credit card evidences of sale.

Any loss under this Extension would be calculated as follows:

A. The amount of credit card sales as compared to total sales, as a percentage, will be calculated over the  past period of operation up to one year.

B. This percentage will be applied to the sales for the month ending at the time of loss.

C. If this month sales are unknown, the most recent month where sales are known will be used.

D. From this figure will be deducted those credit card sales with evidences of sale not damaged or destroyed.

## DEMOLITION COVERAGE

**What "We" Pay For:**

**"We"** pay up to $5,000 for the costs incurred in demolishing any undamaged portion of the building(s) covered under this policy. The order for demolition must rise from enforcement of a state or municipal law or ordinance regulating the construction or repair of buildings and it must be in force at the time of loss necessitating such demolition

## EMPLOYEE DISHONESTY

**What "We" Pay For:**

**"We"** pay up to $5,000 for loss of **"money"**, **"securities"** and other business property by any fraudulent or dishonest act committed by any of **"your" "employees"**,  whether acting alone or in collusion with others.

Case ID: 191003548

**EMPLOYEE DISHONESTY continued**

**What "We" Do Not Pay For:**

This endorsement does not apply:

    1.  to loss due to any fraudulent, dishonest or criminal act by **"you"**, or by any of **"your"** partners, officers, directors, trustees or joint venturers, whether acting alone or in collusion with others;

    2.  to loss, the proof of which, either as to its factual existence or its amount, is dependent upon an inventory computation or profit and loss computation. However, this exclusion does not apply to loss which **"you"** can prove through evidence wholly apart from such computations; or

    3.  to any mysterious or unexplained disappearance or shortage of property.

The loss must be discovered not later than one year from the date on which the coverage terminates.

Employee dishonesty coverage shall be canceled as to any **"employee"** immediately on discovery by the **"insured"**, or by any partner or officer of the company not in collusion with such **"employee"** of any fraudulent or dishonest act on the part of such **"employee"**.

**"Our"** payment of any loss under this agreement shall not reduce the amounts of insurance of **"your"** policy.

**DEFINITIONS** - The following definitions apply to this policy for **Employee Dishonesty**;

    **"Money"** means currency, coins, bank notes and bullion; and travelers checks, register checks and **"money"** orders held for sale to the public.

    **"Securities"** means all negotiable and non-negotiable instruments or contracts representing either **"money"** or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include **"money"**.

    **"Employee"** means a person who is engaged in a service usual to **"your"** business operations and to whom **"you"** pay salary, wages or commission. **"You"** have the exclusive right to direct this person in the performance of his/her service. This definition excludes any broker, factor, commission merchant, consignee, contractor or other agent or representative.

## EXTERIOR SIGNS

**What "We" Pay For:**

**"We"** pay up to $2,000 for the repair or replacement of any physically damaged or destroyed exterior signs located at the business address shown on the Declarations Page.

## FIRE PROTECTIVE DEVICES

**"You"** may extend the insurance provided by this Coverage Form to pay for the cost to recharge or refill any fire protective equipment when discharged:

    1.  To prevent or control a covered loss;
    2.  Accidentally; or
    3.  As a result of malfunction of the equipment.

The most **"we"** will pay under this Extension is $1,000.

Case ID: 191003548

## FIRE LEGAL LIABILITY

Coverage O (Fire Legal Liability) is extended to a limit of $100,000.

## GLASS COVERAGE

**"We"** provide up to $1,000 per occurrence for breakage of building glass from loss caused by **"Specified Perils"**. This applies to buildings **"you"** own or buildings in **"your"** care, custody and control as described on the declarations.

**"Specified perils"** means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm, all except as excluded or limited.

## LOCK REPLACEMENT COVERAGE

This policy may be extended up to $500 for replacement of locks necessitated by theft of keys. **"We"** do not cover unexplained or mysterious disappearance of keys.

## LOSS OF EARNINGS

Coverage C - Loss of Income is extended to a limit of $100,000.

## MONEY AND SECURITIES

**What "We" Pay For:**

**"We"** pay up to $5,000 for the loss of **"money"** and **"securities"** because of the actual destruction, disappearance or a dishonest act. This coverage applies if loss occurs:

1. within **"your"** place of business at the business address shown on the Declarations Page;
2. within any banking premises or similar place of safe deposit;
3. outside **"your"** place of business (but within the policy territory) while in the possession of any person whom **"you"** have authorized to have the care and custody of **"money"** and **"securities"** away from **"your"** place of business; and

The amount of $5,000 shall be the total limit of insurance on all loss of **"money"** and **"securities"** arising out of any one event. All loss connected with an actual or attempted dishonest act, or series of related acts, whether committed by one or more persons, shall be judged to arise out of one event.

**What "We" Do Not Pay For:**

This coverage for loss of **"money"** and **"securities"** does not apply:

1. to loss due to any fraudulent, dishonest or criminal act by **"you"**, by any of **"your"** **"employees"**, partners, officers, directors, trustees, joint venturers or authorized representatives, whether acting alone or in collusion with others;
2. to loss due to giving or surrendering of **"money"** and **"securities"** in any exchange or purchase;
3. to loss of **"money"** contained in coin-operated amusement devices or vending machines, unless the device or machine has an instrument that records the amount of **"money"** deposited; or
4. to loss due to accounting or arithmetical errors or omissions.

DEFINITIONS - The following definitions apply to this policy for **Money and Securities**;

**"Money"** means currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public.

Case ID: 191003548

**"Securities"** means all negotiable and non-negotiable instruments or contracts representing either **"money"** or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include **"money"**.

**"Employee"** means a person who is engaged in a service usual to **"your"** business operations and to whom **"you"** pay salary, wages or commission. **"You"** have the exclusive right to direct this person in the performance of his/her service. This definition excludes any broker, factor, commission merchant, consignee, contractor or other agent or representative.

## PERSONAL EFFECTS

### What "We"Pay For:

**"We"** pay up to $2,000 for loss or damage to **"your"** personal effects and household furniture and at **"your"** option, personal effects of officers, partners or **"employees"** which are not usual and incidental to **"your"** business for an amount not exceeding $250 for any one person or $2,000 in any one occurrence. This coverage does not include loss by theft.

## PROPERTY IN TRANSIT

### What "We" Pay For:

**"We"** pay up to $2,000 for loss or damage to **"your"** business property in transit aboard a conveyance of a common carrier. Loss will be adjusted at the amount of invoice, including prepaid or advance freight. In the absence of an invoice, the actual cash value of the business property at the point of shipment will be used.

## REFRIGERATED FOOD PRODUCTS

### What "We" Pay For:

**"We"** pay up to $5,000 for direct damage from spoilage to the contents of a freezer or refrigeration unit on the insured premises and owned by **"you"** caused by or resulting from:

1. Temperature change due to:

   a. mechanical breakdown or failure of the refrigeration system;
   b. burning out of electrical motors;
   c. blowing of fuses or circuit breakers;
   d. the breakdown or malfunction of the equipment or apparatus connecting or controlling refrigeration systems, electrical motors or electric power; or
   e. complete or partial lack of power to operate the refrigeration system originating at the insured premises;
   d. complete or partial lack of power to operate the refrigeration system originating away from the insured premises wherein the interruption is a continuous interruption for a period that exceeds 24 hours.

2. Contamination by refrigerant.

3. the reasonable expense **"you"** incur to reduce loss or damage covered under this endorsement to the extent that such loss or damage is reduced. However, the total expenses recoverable shall not increase the amount of insurance applicable to the covered property; and

4. the reasonable expenses **"you"** incur to clean up and dispose of spoiled property for which coverage is provided under this endorsement. The total expenses recoverable shall not increase the amount of insurance applicable to the covered property.

Case ID: 191003548

## REFRIGERATED FOOD PRODUCTS continued

**What "We" Do Not Pay For:**

**"We"** do not pay for loss or damage due to:

1. explosion, rupture or bursting of:
   a. water pipes;
   b. steam boilers, steam pipes, steam turbines or steam engines;

2. the disconnecting of any refrigeration units from the source of electrical power or the termination of electrical power caused by throwing off of any switch or other device (on premises) usual to the shutting off of electrical current or electrical power;

3. the leaking or escape of refrigerant gas or gases from any cause including the rupture or bursting of refrigerant gas pipes or lines;

4. the breaking of any glass that is a permanent part of any refrigerating unit;

5. insufficient fuel or complete lack of fuel used in the normal operation of the stationary heating plant;

6. gradual deterioration, inherent vice, natural spoilage or any processing operation; or

7. the intentional decision or inability of any electrical utility company or other source of electrical power to provide sufficient power due to lack of fuel or governmental order or lack of generating capacity to meet demand.

8. a complete or partial lack of power originating 500 feet or more from the insured premises which fails to yield enough power to operate the refrigeration system.

**DEFINITIONS -** The following definitions apply to this policy for refrigerated food products;

**"Change of Temperature"** as stated in this endorsement covers only direct damage to stock or merchandise and does not apply to any loss due to interruption of business.

**"Mechanical Breakdown"** is defined as being the actual breaking, parting, or separating of any mechanical part(s) of the refrigeration unit (other than gas pipes or lines or the breaking of any glass as is specifically excluded) or the "burning out" of any electrical motor serving such unit, when such breaking or burning out shall result in the complete stopping of the mechanical action of said refrigerant equipment and which shall then require replacement of damaged part(s) to become functional. Faulty operation or malfunction of equipment which results in temperature changes but does not cause the complete stopping of the mechanical action and does not require the replacement of broken parts shall not be construed as **"mechanical breakdown"** and there shall be no liability under this endorsement for spoilage resulting from such malfunction.

## SIGNS AWAY FROM THE PREMISES

**What "We" Pay For:**

**"We"** pay up to $2,000 for repair or replacement of any physically damaged or destroyed sign located elsewhere in the coverage territory other than the business address shown on the Declarations Page.

Case ID: 191003548

## TREES, PLANTS AND SHRUBS

**What "We" Pay For:**

**"We"** pay up to $2,000 for loss or damage to trees, plants and shrubs on the insured premises caused by a specified cause of loss. The specified causes of loss are fire, lightning, explosion, riot, civil commotion, aircraft, vehicles not owned or operated by an **"insured"** an **"employee"** or any occupant of the insured premises and vandalism.

**What "We" Do Not Pay For:**

1. **"We"** do not pay for loss or damage to trees, plants and shrubs that are grown for business purposes; and

2. **"We"** do not pay more than $250 for any one tree, plant or shrub including the cost of removing the debris of the covered item.

# UTILITY INTERRUPTION PROPERTY DAMAGE

**SCHEDULE**
(The information required below may be shown on a separate schedule or supplemental declarations.)

| Prem. No. | Bldg. No. | Property Covered | Perils Part | Utility Services | | | |
|---|---|---|---|---|---|---|---|
| | | | | Water Supply | Communi-cations Supply | Electricity, Steam, or Gas Supply | Including Overhead Transmission Lines |
| | | As shown on declaration sheet Automatic Limit Available $5,000 per location | | X | | X | |

## PROPERTY COVERED

**"We"** cover loss up to $5,000 to covered property shown on the schedule above caused by the interruption of a utility service to the described premises. The interruption must result from direct physical loss or damage caused by a covered peril to the utilities (of Water Supply, Electricity, Steam, or Gas Supply) not on the described premises.

This does not include overhead transmission lines unless indicated by an "X" on the schedule above.

## PERILS COVERED

See the applicable Perils Part shown on the schedule above.

## VALUABLE PAPERS AND RECORDS

**What "We" Pay For:**

**"We"** pay up to $25,000 for loss or damage to **Valuable Papers and Records** on the described **premises**.

**What "We" Do Not Pay For:**

1.  loss due to any fraudulent, dishonest or criminal act by **"you"**, a partner, an officer, director or trustee;
2.  loss resulting from errors or omissions in processing or copying;
3.  loss due to wear and tear;
4.  loss to property which cannot be replaced with other of like kind or quality;
5.  loss due to electrical or magnetic injury, disturbance or erasure of electronic recordings, except by lightning;
6.  loss to property held as samples or for sale or for delivery after sale; and
7.  loss of **"money"** or **"securities".**

**DEFINITIONS -**   The following definitions apply to this policy for **"Valuable Papers and Records"**;

**"Valuable Papers and Records"** means written, printed or otherwise inscribed documents and records, including books, map, films, drawings, abstracts, deeds, mortgages and manuscripts.

**"Premises"** means the interior portion of the building occupied by **"you"** for business purposes.

**"Money"** means currency, coins, bank notes and bullion, travelers checks, register checks and money orders held for sale to the public.

# UTICA FIRST INSURANCE COMPANY

P.O. Box 851, Utica, NY  13503-0851

## PROTECTIVE SAFEGUARD ENDORSEMENT

### PROTECTIVE SAFEGUARD LIST

1. Automatic Extinguishing System
2. Hood and Duct System

## AGREEMENT

It is hereby understood and agreed that **"we"** have issued the policy to which this endorsement is attached only because of **"our"** reliance on certain protective safeguard conditions stated below.  **"We"** are relying upon the following protective safeguards and that if said safeguards were not correct **"we"** would not issue a policy.

## DEFINTIONS

**"Automatic Extinguishing System"'** means any system installed over cooking areas to extinguish or prevent spread of a fire.

**"Hood and Duct System"** means any kitchen exhaust hoods, grease ducts, baffles, fans, or any other accessories installed or connected thereto; to remediate kitchen exhaust.

## CONDITIONS

The following condition is added:

**"You"** are required to maintain in complete working order the protective safeguards shown above if present at an insured location.

## EXCLUSIONS

**"We"** do not pay for loss or damage caused by fire, if prior to the fire, **"you"**

1. had knowledge of any suspension or impairment in any protective safeguard shown above, or

2. failed to maintain in complete working order any protective safeguard shown above.

UA-504B 02 17

Contains Copyrighted Material, American Association of Insurance Services, Inc., 2009

# ENDORSEMENT
## ATTACHED TO AND FORMING PART OF

| ENDORSEMENT DATE EFFECTIVE AS OF | POLICY NUMBER | ENDORSEMENT NO. |
|---|---|---|
| 09/12/17 | BOP 4433869 02 | |
| NAMED INSURED<br>THE LITTLE LION<br>CPJD HOLDING COMPANY DBA | ADDITIONAL PREMIUM<br>$ NIL | RETURN PREMIUM<br>$ NIL |

### PUNITIVE DAMAGES EXCLUSION

It is hereby understood and agreed that the Company's

obligation to pay for Bodily Injury shall not include any damages

assessed for punitive and/or exemplary damages.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

COUNTERSIGNED BY_____
<br>Authorized Representative

UA-505
(Ed. 1-91)

Case ID: 191003548

# ENDORSEMENT
## ATTACHED TO AND FORMING PART OF ————————

| ENDORSEMENT DATE EFFECTIVE AS OF 09/12/17 | POLICY NUMBER BOP 4433869 02 | ENDORSEMENT NO. |
|---|---|---|
| NAMED INSURED THE LITTLE LION CPJD HOLDING COMPANY DBA | ADDITIONAL PREMIUM $ NIL | RETURN PREMIUM $ NIL |

### OTHER INSURANCE ENDORSEMENT

It is hereby understood and agreed if at the time of loss or damage, there is any other Insurance which affords coverage similar to the coverage afforded hereunder, then the Insurance afforded hereunder shall apply only as excess over any other valid or collectible Insurance. In no event shall the coverage afforded hereunder apply as contributing Insurance.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Countersigned by_____
<span>Authorized Representative</span>

UA-508
(Ed. 1/91)



## CYBER LIABILITY INSURANCE
### (Claims-Made and Reported Coverage)

POLICY NUMBER:  BOP 4433869 02

EFFECTIVE DATE FOR THIS ENDORSEMENT:   11/13/17

RETROACTIVE DATE:  11/13/16

The Cyber Liability limits of insurance are specified in the Schedule of Limits ("the Schedule") shown below. Such limits are in addition to, and will not reduce, the limits of liability provided elsewhere under the Policy.  Any **defense costs** paid under this Endorsement will reduce the available limits of insurance and may exhaust them completely.

### SCHEDULE OF LIMITS

| Coverage | Limits |
|---|---|
| Multimedia Liability Coverage | $100,000 each **claim** |
| Security and Privacy Liability Coverage | $100,000 each **claim** |
| Privacy Regulatory Defense and Penalties Coverage | $100,000 each **claim** |
| PCI DDS Assessment Coverage | $100,000 each **claim** |
| Privacy Breach Response Costs, Notification Expenses and Customer Support and Credit Monitoring Expenses Coverage | $100,000 each **claim** |
| Network Asset Protection Coverage | $100,000 each **claim** |
| Cyber Extortion Coverage | $100,000 each **claim** |
| Cyber Terrorism Coverage | $100,000 each **claim** |
| BrandGuard Coverage | $100,000 each **claim** |
| Business Owner ID Theft Recoverage Coverage | $100,000 each **claim** |
| Aggregate Limit | $100,000 |

Information to complete this Schedule, if not shown above, will be shown in the Cyber Liability Endorsement Supplemental Declarations.

This Endorsement ("Endorsement") amends your policy to provide Cyber Liability insurance on a Claims-Made and Reported basis. Various provisions in this Endorsement restrict coverage.  Read the entire Endorsement carefully to determine **your** rights and duties and what is and is not covered. The terms, conditions, exclusions, and limits of insurance set forth in this Endorsement apply only to the coverage provided by this Endorsement.

All words and phrases in this Endorsement that appear in bold print have the meanings set forth in Section V of this Endorsement.  To the extent any words or phrases used in this Endorsement are defined elsewhere in the Policy, such definitions provided elsewhere do not apply to give meaning to the words or phrases used in this Endorsement.

Case ID: 191003548

## SECTION I - CYBER LIABILITY COVERAGE AGREEMENTS

In consideration of the premium paid and subject to all terms, conditions, definitions, exclusions and other provisions of this Endorsement, the Company agrees as follows:

A.      MULTIMEDIA LIABILITY COVERAGE

Subject to the limits shown in the Schedule, the Company will pay **damages** which an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **multimedia peril(s)**, provided that:

(1)     Such **claim** is first made against the **insured** during the **endorsement period**;
(2)     The **insured** reports such **claim** in writing to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
(3)     The **multimedia peril(s)** takes place or first commences on or after the **retroactive date**.

B.      SECURITY AND PRIVACY LIABILITY COVERAGE

Subject to the limits shown in the Schedule, the Company will pay **damages** which an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **security and privacy wrongful act**, provided that:

(1)     Such **claim** is first made against the **insured** during the **endorsement period**;
(2)     The **insured** reports such **claim** in writing to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
(3)     The **security and privacy wrongful act** takes place or first commences on or after the **retroactive date**.

C.      PRIVACY REGULATORY DEFENSE AND PENALTIES COVERAGE

Subject to the limits shown in the Schedule, the Company will pay **regulatory fines and penalties** and/or any **regulatory compensatory award** which an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **security breach** or **privacy breach**, provided that:

(1)     Such **claim** is first made against the **insured** during the **endorsement period**;
(2)     The **insured** reports such **claim** in writing to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and
(3)     The **security breach** or **privacy breach** takes place or first commences on or after the **retroactive date**.

D.  PCI DSS ASSESSMENT COVERAGE

Subject to the limits shown in the Schedule, the Company will pay **PCI DSS assessments** which an **insured** becomes legally obligated to pay and **defense costs** resulting from a **claim** for an actual or alleged **security breach** or **privacy breach**, provided that:

(1)     Such **claim** is first made against the **insured** during the **endorsement period**;
(2)     The **insured** reports the **claim** in writing to the Company no later than sixty (60) days after the **claim** is first made against the **insured**; and

(3)    The **security breach** or **privacy breach** takes places or first commences on or after the **retroactive date**.

E.    PRIVACY BREACH RESPONSE COSTS, NOTIFICATION EXPENSES, AND CUSTOMER SUPPORT AND CREDIT MONITORING EXPENSES COVERAGE

Subject to the limits shown in the Schedule, the Company will pay reasonable **privacy breach response costs**, **notification expenses**, and/or **customer support and credit monitoring expenses** which **you** incur during the **endorsement period** as a direct result of an **adverse media report**, **security breach** or **privacy breach**, provided that:

(1)    The **adverse media report**, **security breach** or **privacy breach** takes place or first commences on or after the **retroactive date**; and

(2)    **You** report the **adverse media report**, **security breach** or **privacy breach** in writing to the Company during the **endorsement period**, but no later than 60 days from the date an **insured** first discovers the **adverse media report**, **security breach** or **privacy breach**.

F.    NETWORK ASSET PROTECTION COVERAGE

(1)    Loss of Digital Assets

Subject to the limits shown in the Schedule, the Company will reimburse **you** for **digital assets loss** and/or **special expenses** which **you** incur during the **endorsement period** as a direct result of damage, alteration, corruption, distortion, theft, misuse, or destruction of **digital assets**, provided that:

(a)    Such damage, alteration, corruption, distortion, theft, misuse, or destruction of **digital assets** is directly caused by a **covered cause of loss**;

(b)    The **covered cause of loss** takes place or first commences on or after the **retroactive date**;

(c)    **You** report the **covered cause of loss** in writing to the Company during the **endorsement period**, but no later than 60 days from the date an **insured** first discovers the **covered cause of loss**; and

(d)    **You** provide clear evidence that the **digital assets loss** and/or **special expenses** directly resulted from the **covered cause of loss**.

The Company will pay **digital assets loss** and/or **special expenses** for a period of up to twelve (12) months following the discovery of the damage, alteration, corruption, distortion, theft, misuse, or destruction of **digital assets**.

(2)    Non-Physical Business Interruption and Extra Expense

Subject to the limits shown in the Schedule, the Company will reimburse **you** for **income loss**, **interruption expenses** and/or **special expenses** which **you** incur during the **period of restoration**, but after the **waiting period**, as a direct result of a total or partial interruption, degradation in service or failure of an **insured computer system**, provided that:

(a)    Such total or partial interruption, degradation in service or failure of the **insured computer system** is directly caused by a **covered cause of loss**;

(b)    The **covered cause of loss** takes place or first commences on or after the **retroactive date**;

Case ID: 191003548

(c) **You** report the **covered cause of loss** in writing to the Company during the **endorsement period**, but no later than 60 days from the date an **insured** first discovers the **covered cause of loss**; and

(d) **You** provide clear evidence that the **income loss, interruption expenses** and/or **special expenses** directly resulted from the **covered cause of loss**.

G.    CYBER EXTORTION COVERAGE

Subject to the limits shown in the Schedule, the Company will reimburse **you** for **cyber extortion expenses** and/or **cyber extortion monies** that **you** pay as a direct result of a **cyber extortion threat**, including a demand for **cyber extortion monies**, provided that:

(1)    Such **cyber extortion threat** is first made against an **insured** on or after the **retroactive date**;

(2)    **You** provide clear evidence that the **cyber extortion expenses** and/or **cyber extortion monies**     directly resulted from the **cyber extortion threat**; and

(3)    **You** report the **cyber extortion threat** in writing to the Company during the **endorsement period**, but no later than 60 days from the date the **cyber extortion threat** is made against an **insured**.

**Cyber extortion expenses** and/or **cyber extortion monies** shall not be paid without the Company's prior consultation and written authorization. **You** must make every reasonable effort to notify local law enforcement authorities and the Federal Bureau of Investigation, or similar equivalent foreign agency, before surrendering any **cyber extortion monies** in response to a **cyber extortion threat**.

H.   CYBER TERRORISM COVERAGE

Subject to the limits shown in the Schedule, the Company will reimburse **you** for **income loss, interruption expenses,** and/or **special expenses** which **you** incur during the **period of restoration**, but after the **waiting period**, as a direct result of a total or partial interruption, degradation in service, or failure of an **insured computer system**, provided that:

(1)    Such total or partial interruption, degradation in service, or failure of the **insured computer system** is directly caused by an **act of cyber terrorism**;

(2)    The **act of cyber terrorism** takes place or first commences on or after the **retroactive date**;

(3)    **You** report the **act of cyber terrorism** in writing to the Company during the **endorsement period**, but no later than 60 days from the date an **insured** first discovers the **act of cyber terrorism**; and

(4)    **You** provide clear evidence that the **income loss, interruption expenses** and/or **special expenses** directly resulted from the **act of cyber terrorism**.

I.   BRANDGUARD COVERAGE

Subject to the limits shown in the Schedule, the Company will reimburse **you** for **your** provable and ascertainable **brand loss**, which you sustain during the **period of indemnity**, but after the **waiting period**, as a direct result of an **adverse media report** or **notification**, provided that:

(1)    The **adverse media report** or **notification** results from a **privacy breach** or **security breach** that takes place or first commences on or after the **retroactive date**;

(2)    **You** report the **brand loss** in writing to the Company during the **endorsement period**, but no later than 60 days from the date **you** first discover the actual or potential **brand loss**; and

(3)    **You** provide clear evidence that the **brand loss** directly resulted from the **adverse media report** or **notification**.

Case ID: 191003548

J.     BUSINESS OWNER ID THEFT RECOVERY COVERAGE

Subject to the limits shown in the Schedule, the Company will reimburse **your key employees** for reasonable and necessary **identity theft expenses** incurred as a direct result of **identity theft**, provided that:

(1)   The **identity theft** takes place or first commences on or after the **retroactive date**;
(2)   **You** report the **identity theft** to law enforcement and obtain a police report; and
(3)   **You** first discover the **identity theft** during the **endorsement period** and report the **identity theft** in writing to the Company no later than 60 days from the date **you** first discover the **identity theft**.

## SECTION II - DEFENSE, INVESTIGATION, AND SETTLEMENT

The Company will have the right and duty to defend any **claim** under Coverage Agreement A, B, C, or D, even if the allegations of the **claim** are groundless, false or fraudulent. The Company has the right to appoint counsel to defend any such **claim**.

The Company may investigate or settle any **claim** at its sole discretion.  The applicable limits of insurance will be reduced and may be completely exhausted by payment of **defense costs**.  The Company will not be obligated to pay or defend any **claim** after the applicable limit of the Company's liability hereunder has been exhausted.

No **insured** will incur any **defense costs** or other expenses, or settle any **claim**, assume any contractual obligation, admit liability, voluntarily make any payment, or otherwise consent to any settlement or judgment with respect to any **claim** without the Company's prior written consent, which will not be unreasonably withheld.  The Company will not be liable for any **defense costs** or other expenses, settlement or judgment to which the Company has not consented.

## SECTION III - EXCLUSIONS

The insurance provided under this Endorsement does not apply to:

A.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, **adverse media report** or **identity theft**:

(1)   Which was the subject of written notice given to us or to any other insurer prior to **your** initial effective date of Cyber Liability coverage;
(2)   Which was the subject of any prior and/or pending written demand made against an **insured**, or a civil, administrative or arbitration proceeding commenced against an **insured**, prior to **your** initial effective date of Cyber Liability coverage, or that involved the same or substantially the same fact, circumstance, or situation underlying or alleged in such prior demand or proceeding;
(3)   Which an **insured** had knowledge of prior to **your** initial effective date of Cyber Liability coverage.

B.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste. For purposes of this exclusion, "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products and waste, and any electric, magnetic or electromagnetic field of any frequency.  "Waste" includes, but is not limited to, material that is or is to be recycled, reconditioned or reclaimed.

C.   Any **claim** for liability assumed by an **insured** under any oral or written contract or agreement, except where such liability would apply apart from such contract or agreement and is otherwise covered by this Endorsement. With respect to any **multimedia peril**, **security breach** or **privacy breach**, this exclusion does not apply to any **claim** alleging liability **assumed under contract**.

D.   Any **claim** for breach of any express, implied, actual or constructive contract, warranty, guarantee, or promise, except where such liability would apply apart from such contract, warranty, guarantee or promise and is otherwise covered by this Endorsement.  This exclusion does not apply to any **claim** alleging breach of **your** privacy policy or liability **assumed by contract**.

E.   Any **claim** which is covered under any other coverage section of the Policy to which this endorsement attaches.

F.   Any **claim** for violations of the False Claims Act or any similar federal or state law, rule, or regulation concerning billing errors or fraudulent billing practices or abuse.

G.   Any **claim** for infringement of any patent or the misappropriation, theft, copying, display, or publication of any trade secret.

H.   Any **claim** for unfair competition, price fixing, deceptive trade practices, restraint of trade, or violation of any anti-trust laws.

I.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

   (1)   Any employment or employment-related matters, including, but not limited to, employer-Employee relations, policies, acts or omissions;
   (2)   Any actual or alleged refusal to employ any person or any other actual or alleged misconduct with respect to employees; or
   (3)   Any actual or alleged obligations of the **insured** under any workers' compensation, unemployment insurance, social security, disability benefits or other similar law.

   This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B, which is brought by **your** past, present or future employee alleging a **security and privacy wrongful act**.

J.   Any **claim** for **bodily injury** or **property damage**.

K.   Any **claim** for harassment or discrimination because of, or relating to, race, creed, color, age, sex, sexual orientation or preference, national origin, religion, handicap, disability, political affiliation, marital status, or any other basis prohibited by federal, state or local law.

L.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

   (1)   Satellite failures;
   (2)   Electrical or mechanical failures and/or interruption including, but not limited to, electrical disturbance, spike, brownout, or blackout; or
   (3)   Outages to gas, water, telephone, cable, telecommunications or other infrastructure, unless such infrastructure is under **your** direct operational control and such **claim** is otherwise covered under Coverage Agreement F or Coverage Agreement H.

M.   Any **claim** for violation of any of United States of America's economic or trade sanctions, including, but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

N.    Any **criminal proceeding**.

O.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

    (1)    Any willful, deliberately dishonest, malicious, or fraudulent act or omission;
    (2)    Any intentional violation of the law or of **your** privacy policy; or
    (3)    The gaining in fact of any profit, remuneration or financial advantage to which an **insured** was not legally entitled,

if committed by any **insured**, whether acting alone or in collusion with other persons. Notwithstanding the foregoing, the insurance afforded by this Endorsement will apply to **defense costs** incurred in defending any such **claim** until such time as there is a judgment or other final adjudication adverse to the **insured** establishing such willful, dishonest, fraudulent, or malicious conduct.  The Company will have the right to recover **defense costs** incurred in defending such **claim** from those parties found to have committed such willful, dishonest, fraudulent, or malicious conduct.

This exclusion does not apply to:

    (1)    Any **insured** that did not commit, participate in, or have knowledge of any willful, dishonest, fraudulent, or malicious conduct described in this exclusion; or
    (2)    A **claim** resulting from sabotage by your **employee**.

P.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

    (1)    Any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of cyber terrorism, adverse media report** or **identity theft** that took place or first commenced prior to the **retroactive date**; or
    (2)    Any actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of cyber terrorism, adverse media report** or **identity theft** that took place on or after the **retroactive date**, which, together with an actual or alleged **multimedia peril, security and privacy wrongful act, security breach, privacy breach, covered cause of loss, cyber extortion threat, act of cyber terrorism, adverse media report** or **identity theft** that took place prior to the **retroactive date**, would constitute related **multimedia perils, security and privacy wrongful acts, security breaches, privacy breaches, covered causes of loss, cyber extortion threats, acts of cyber terrorism, adverse media reports** or **identity thefts**.

For purposes of this exclusion, **multimedia perils, security and privacy wrongful acts, security breaches, privacy breaches, covered causes of loss, cyber extortion threats, acts of cyber terrorism, adverse media reports** or **identity thefts** will be deemed related if we determine that they are logically or causally connected by any common fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

Q.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any business, joint venture or enterprise not named on the Cyber Liability Declarations.

R.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any conduct, act, error or omission of any individual serving in any capacity other than as **your** officer, director, partner, stockholder, trustee or employee.

S.    Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving an **insured's** insolvency or bankruptcy, the insolvency or bankruptcy of any other individual or entity, or

the failure, inability or unwillingness to make payments because of the insolvency, liquidation, or bankruptcy of any individual or entity.

T.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the wear and tear, drop in performance, progressive deterioration, or aging of **your** electronic equipment or **computer hardware**.

U.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the failure of overhead transmission and distribution lines.

V.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the gradual deterioration of subterranean insulation.

W.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving fire, smoke, explosion, lightning, wind, water, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, force majeure or any other physical event, however caused.

X.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the gradual deterioration or wear and tear of an **insured computer system**.

Y.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the actual or alleged inaccurate, inadequate or incomplete description of the price of goods, products or services.

Z.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving cost guarantees, cost representations, contract price or cost estimates being exceeded.

AA.     Any **claim** brought by or on behalf of:

(1)     Any **insured** against another **insured**;
(2)     Any entity which is owned, in whole or in part, by an **insured**, or any entity directly or indirectly controlled, operated or managed by an **insured**;
(3)     Any entity which is a parent, affiliate or subsidiary of any entity or joint venture in which an **insured** is a partner; or
(4)     Any individual or entity who is a partner of any entity or joint venture in which an **insured** is also a partner.

This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement B, which is brought by **your** past, present or future employee alleging a **security and privacy wrongful act**.

BB.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving unauthorized trading. For purposes of this exclusion, "unauthorized trading" means trading, which at the time of the trade is:

(1) In excess of permitted financial limits; or
(2) Outside of permitted product lines.

CC.     Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

(1)     The actual or alleged purchase or sale of securities, or an offer, or solicitation of an offer, to purchase or sell securities;
(2)     The actual or alleged loss of value of any securities; or
(3)     Any actual or alleged violation of any securities law such as the provisions of the Securities Act

of 1933, the Securities Exchange Act of 1934, the Sarbanes-Oxley Act of 2002 or any regulation promulgated under the foregoing statutes, or any federal, state, local, or foreign laws similar to the foregoing statutes, including "Blue Sky" laws, whether such law is statutory, regulatory or common law.

DD.   Any **claim** for violation of the Organized Crime Control Act of 1970 (commonly known as 'Racketeer Influenced And Corrupt Organizations Act' or 'RICO'), as amended, or any regulation promulgated under the foregoing statutes, or any similar federal, state, local or foreign laws, whether such law is statutory, regulatory or common law.

EE.   Any **claim** which is brought by the Federal Trade Commission, the Federal Communications Commission or any other federal, state or local governmental entity, in such entity's regulatory or official capacity. This exclusion does not apply to an otherwise covered **claim** under Coverage Agreement C.

FF.   Any **claim** alleging:

    (1)   The violation of any pension, healthcare, welfare, profit sharing or mutual or investment plans, funds or trusts; or

    (2)   The violation of any provision of the Employee Retirement Income Security Act of 1974 and its amendments and/or the Pension Protection Act of 2006 and its amendments, or any regulation, ruling or order issued pursuant thereto.

GG.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

    (1)   Strikes or similar labor actions, war, invasion, act of foreign enemy, hostilities or warlike operations (whether declared or not), civil war, mutiny, civil commotion assuming the proportions of or amounting to a popular uprising, military uprising, insurrection, rebellion, revolution, military or usurped power, or any action taken to hinder or defend against these actions;

    (2)   The confiscation, nationalization, requisition or destruction of, or damage to, property by or under the order of any government or public or local authority; or

    (3)   Any action taken in controlling, preventing, suppressing or in any way relating to GG(1) or GG(2) above.

This exclusion does not apply to an **act of cyber terrorism**.

HH.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving **your** commercial decision to cease providing a particular product or service, but only if **you** are contractually obligated to continue providing such products or services.

II.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving:

    (1) Gambling or pornography;

    (2) Prizes, awards or coupons; or

    (3) The sale or provision of prohibited, restricted or regulated items such as alcoholic beverages, tobacco or drugs.

JJ.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the use of programs that are not **operational programs** or **delivered programs**.

KK.   Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving any **insured's** intentional use illegal or unlicensed programs that are in violation of the provisions or laws

referring to software protection.

LL.  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the confiscation, commandeering, requisition, destruction of, or damage to **computer hardware** by order of a government de jure or de facto or by any public authority for whatever reason.

MM.  Any **claim** based upon, arising out of, resulting from, in consequence of, or in any way involving the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment or that affects the value, marketability, condition or use of any property.

NN.  With respect to Coverage Agreement F(1):

(1)  Any amount incurred in restoring, updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;

(2)  Physical damage to the **computer hardware** or **data** center, other than accidental physical damage or destruction of **electronic media** so that stored **digital assets** are no longer machine-readable;

(3)  Contractual penalties or consequential damages;

(4)  Any liability to third parties for whatever reason, including legal costs and expenses of any type;

(5)  Fines or penalties imposed by law;

(6)  The economic or market value of **digital assets**;

(7)  Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;

(8)  Costs to upgrade, redesign, reconfigure or maintain an **insured computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or

(9)  Any losses paid under Coverage Agreement F(2).

OO.  With respect to Coverage Agreement F(2):

(1)  Any loss arising out of updating or replacing **digital assets** to a level beyond that which existed prior to the **covered cause of loss**;

(2)  Contractual penalties or consequential damages;

(3)  Any liability to third parties for whatever reason, including legal costs and expenses of any type;

(4)  Fines or penalties imposed by law;

(5)  Costs or expenses incurred to identify, patch or remediate software program errors or **computer system** vulnerabilities;

(6)  Loss of goodwill and reputational harm;

(7)  Costs to upgrade, redesign, reconfigure or maintain an **insured computer system** to a level of functionality beyond that which existed prior to the **covered cause of loss**; or

(8)  Any losses paid under Coverage Agreement F(1).

PP.  With respect to Coverage Agreement I:

(1)  Any amounts incurred by **you** in an effort to re-establish **your reputation**, including **public relations expenses**;

(2)  Any amounts incurred in any **claim** that is insured by any other insurance, except excess insurance;

(3)  Any amounts incurred in connection with an **adverse media report** that also affects or refers in similar terms to a general security issue, an industry or **your** specific competitors without any specific allegations regarding a **privacy breach** or **security breach** by an **insured**, a **BPO**

(4)     **service provider**, an **outsourced IT service provider**, or by others acting on **your** behalf and for whom **you** are legally responsible;

(5)     Any civil or regulatory liability to third parties for whatever reason, including legal costs and expenses of any type;

(6)     Contractual penalties or consequential damages;

(7)     **Privacy breach response costs, notification expenses** or **customer support and credit monitoring expenses** paid under Coverage Agreement E; or

(8)     Fines or penalties imposed by law or regulation.

## SECTION IV - LIMITS OF LIABILITY

A.      The limit of insurance shown in the Schedule as applicable to "each **claim**" is the most the Company will pay for each **claim** under each Coverage Agreement of this Endorsement, including **defense costs** where applicable, regardless of the number of **insureds** involved or affected, the number of individuals or entities making a **claim**, or the number of **claims** made.

B.      Subject to the provisions respecting "each **claim**", the limit of insurance shown in Schedule as the "Aggregate Limit" is the most the Company will pay for all **claims** made during the **endorsement period** under all Coverage Agreements of this Endorsement combined. The "Aggregate Limit" includes **defense costs**.

C.      If the "Aggregate Limit"" is exhausted, then the Company's obligations under this Endorsement will be deemed completely fulfilled and extinguished.

D.      All **claims** made under any one Coverage Agreement which arise out of the same, related, or continuing acts, facts or circumstances, will be considered a single **claim** without regard to the number of **insureds**, **claims**, or persons or entities making a **claim**, and only one "each **claim**" limit will apply. Such **claim** will be deemed to have been first made on the date the earlier of the related **claims** was first made and will be deemed to have been first reported to the Company on the date the earlier of the related **claims** was first reported to the Company in writing. Appeals and any post-trial proceedings or consolidated proceedings approved by us will be considered to be part of the original **claim**.

E.      In the event that a **claim** is made and applies to more than one Coverage Agreement of this Endorsement, only one "each **claim**" limit will apply. The Company has the sole discretion to allocate amounts paid, if any, against the appropriate limit of liability.

F.      In the event two or more **claims** arising out of the same facts, circumstances, situations, events or transactions are covered under more than one Coverage Agreement of this Endorsement, only one "each **claim**" limit will apply to such **claims**. We have the discretion to allocate **claims** paid, if any, against the appropriate limit of insurance. All such **claims**, whenever first made, shall be considered as reported to the Company during the **endorsement period** in which the first of such **claims** is reported to the Company, and shall be subject to the limits of insurance applicable to that policy.

## SECTION V - DEFINITIONS

When used in this Endorsement:

A.      **Acquiring bank** means a bank or financial institution that accepts credit and/or debit card payments (including credit cards, debits cards, stored value cards and pre-paid cards) for products or services on behalf of a merchant, including processing and crediting those payments to a merchant's account.

B.      **Act of cyber terrorism** means the premeditated use of disruptive activities, or the threat thereof, against computers, computer systems, networks and/or public internet by any person or group(s) of persons,

whether acting alone or on behalf of, or in connection with, any organization(s) or government(s) with the intention to intimidate or cause destruction or harm and/or further social, ideological, religious, political or similar objectives. **Act of cyber terrorism** includes, but is not limited to, the use of information technology to organize and execute large-scale attacks against computer systems, networks and/or public internet, resulting in disabling and/or deleting critical infrastructure, data or information.

C.     **Adverse media report** means any unpredictable report or communication of an actual or potential **security breach** or **privacy breach**, which:

     (1)     Has been publicized through any media channel including, but not limited to, television, **print media**, radio or electronic networks, the **internet**, and/or electronic mail; and

     (2)     Threatens material damage to **your reputation** or **your** brands.

D.     **Assumed under contract** means liability for **damages** resulting from a **multimedia peril, security breach** or **privacy breach** where such liability has been assumed by **you** in the form of a written hold harmless or indemnity agreement, provided that such agreement was executed prior to the date the **multimedia peril, security breach**, or **privacy breach** occurred.

E.     **BPO service provider** means any third party independent contractor that provides business process outsourcing services for **your** benefit under a written contract with **you**, including, but not limited to, call center services, fulfillment services, and logistical support.

F.     **Bodily injury** means physical injury, sickness, disease, pain or death, and if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress sustained by a person at any time.

G.     **Brand loss** means **your** revenue as could have been reasonably projected immediately prior to **notification** or, in the event of an **adverse media report**, immediately prior to the publication of an **adverse media report**, but which has been lost as a direct result of such **notification** or **adverse media report**. **Brand loss** will be determined in accordance with Section VII(C) of this Endorsement.

H.     **Card association** means Visa International, Mastercard, Discover, JCB American Express and any similar credit or debit card association that is a participating organization of the Payment Card Industry Security Standards Council.

I.     **Claim** means:

     (1)     With respect to Coverage Agreement A (Multimedia Liability) and Coverage Agreement B (Security and Privacy Liability):

          (a)    Any written demand for monetary or non-monetary relief made against an **insured**;
          (b)    Any civil proceeding or arbitration proceeding initiated against an **insured**, commenced by the service of a complaint or similar pleading or notice; or
          (c)    Any written request to toll or waive a statute of limitations relating to a potential **claim** against an **insured**, including any appeal therefrom;

         A **claim** under Coverage Agreement A or Coverage Agreement B will be deemed to be first made when an **insured** first receives notice of any of (1)(a) through (1)(c) above.

     (2)     With respect to Coverage Agreement C (Privacy Regulatory Defense and Penalties), a **government investigation** commenced against an **insured** by letter, notice, complaint, or order of investigation. A **claim** under Coverage Agreement C will be deemed to be first made when it is first received by an **insured**.

Case ID: 191003548

(3)     With respect to Coverage Agreement D (PCI DSS Assessment Coverage), any written demand made against an **insured** by an acquiring bank or card association for a **PCI DSS assessment** due to the **insured's** non-compliance with **PCI Data Security Standards**. A **claim** under Coverage Agreement D will be deemed to be first made when such written demand is received by an **insured**.

(4)     With respect to Coverage Agreement E (Privacy Breach Response Costs, Notification Expenses, and Customer Support and Credit Monitoring Expenses), **your** written report to the Company of an **adverse media report**, **security breach,** or **privacy breach**. A **claim** under Coverage Agreement E will be deemed to be first made when such written report is received by the Company.

(5)     With respect to Coverage Agreement F (Network Asset Protection), **your** written report to the Company of a **covered cause of loss**. A **claim** under Coverage Agreement F will be deemed to be first made when such written report is received by the Company.

(6)     With respect to Coverage Agreement G (Cyber Extortion), **your** written report to the Company of a **cyber extortion threat**. A **claim** under Coverage Agreement G will be deemed to be first made when such written report is received by the Company.

(7)     With respect to Coverage Agreement H (Cyber Terrorism), **your** written report to the Company of an **act of cyber terrorism**. A **claim** under Coverage Agreement H will be deemed to be first made when such written report is received by the Company.

(8)     With respect to Coverage Agreement I (BrandGuard), **your** written report to the Company of **brand loss** directly caused by an **adverse media report** or **notification**. A **claim** under Coverage Agreement I will be deemed to be first made when such written report is received by the Company.

(9)     With respect to Coverage Agreement J (Business Owner ID Theft Recovery Coverage), **your** written report to the Company of **identity theft**. A **claim** under Coverage Agreement J will be deemed to be first made when such written demand received by the Company.

J.     **Computer hardware** means the physical components of any computer system including CPUs, memory, storage devices, storage media, and input/output devices and other peripheral devices and components, including, but not limited to, cable, connectors, fiber optics, wire, power supply units, keyboards, display monitors, and audio speakers.

K.     **Computer program** means an organized set of instructions that, when executed, causes a computer to behave in a predetermined manner. **Computer program** includes, but is not limited to, communications, networking, operating system, and related **computer programs** used to create, maintain, process, retrieve, store, and/or transmit electronic **data**.

L.     **Computer system** means interconnected electronic, wireless, web, or similar systems (including all **computer hardware** and software) used to process and store **data** or information in an analogue, digital, electronic, or wireless format including, but not limited to, **computer programs**, electronic **data**, operating systems, **firmware**, servers, media libraries, associated input and output devices, mobile devices, networking equipment, websites, extranets, off line storage facilities (to the extent that they hold electronic **data**), and electronic backup equipment.

M.     **Computer virus** means a program that possesses the ability to create replicas of itself (commonly known as "auto-reproduction" program) within other programs or operating system areas or which is capable of spreading copies of itself wholly or partly to other **computer systems**.

Case ID: 191003548

N. **Covered cause of loss** means, and is limited to, the following:

    (1) Accidental Damage or Destruction

        (a)    Accidental physical damage or destruction of **electronic media** so that stored **digital assets** are no longer machine-readable;

        (b)    Accidental damage or destruction of **computer hardware** so that stored **data** is no longer machine-readable;

        (c)    Failure in power supply or under/over voltage only if such power supply is under **your** direct operational control. "Direct operational control" includes back-up generators;

        (d)    **Programming error** of **delivered programs**; or

        (e)    Electrostatic build-up and static electricity.

    (2) Administrative or Operational Mistakes

        An accidental, unintentional, or negligent act, error or omission by **your** employee, a **BPO service provider,** or **outsourced IT service provider** in:

        (a)    The entry or modification of **your** electronic **data**, which causes damage to such **data**;

        (b)    The creation, handling, development, modification, or maintenance of **digital assets**; or

        (c)    The ongoing operation or maintenance of an **insured computer system** excluding the design, architecture, or configuration of an **insured computer system**.

    (3) Computer Crime and Computer Attacks

        An act, mistake or negligent error or omission in the operation of an **insured computer system** or in the handling of **digital assets** by **your** employee, a **BPO service provider,** or **outsourced IT service provider**, which fails to prevent or hinder any of the following attacks on an **insured computer system:**

        (a) A **denial of service attack;**

        (b) **Malicious code;**

        (c) **Unauthorized access;** or

        (d) **Unauthorized use**.

O.    **Criminal proceeding** means any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment and/or criminal fine.

P.    **Customer support and credit monitoring expenses** means those reasonable and necessary expenses which **you** incur, with the Company's prior written consent, for the provision of customer support activity in the event of a **privacy breach**, including the provision of credit file monitoring services and identity theft education and assistance for up to a period of twelve (12) months from the date of enrollment in such services.

Q.    **Cyber extortion expenses** means all reasonable and necessary costs and expenses which **you** incur, with the Company's prior written consent, as a direct result of a **cyber extortion threat**, other than **cyber extortion monies**.

R.    **Cyber extortion monies** means any funds or property which **you** pay, with the Company's prior written consent, to a person(s) or entity(ies) reasonably believed to be responsible for a **cyber extortion threat** insured under Coverage Agreement G, for the purpose of terminating such **cyber extortion threat**.

S.  **Cyber extortion threat** means a credible threat or series of related credible threats, including, but not limited to, a demand for **cyber extortion monies**, directed at **you** to:

  (1)  Release, divulge, disseminate, destroy or use the confidential information of a third party taken from **you** as a result of **unauthorized access** to, or **unauthorized use** of, an **insured computer system**;
  (2)  Introduce **malicious code** into an **insured computer system**;
  (3)  Corrupt, damage or destroy an **insured computer system**;
  (4)  Restrict or hinder access to an **insured computer system**, including, but not limited to the threat of a **denial of service attack**; or
  (5)  Electronically communicate with **your** customers and falsely claim to be **you** or to be acting under **your** direction in order to falsely obtain personal confidential information of **your** customers (also known as "pharming," "phishing," or other types of false communications).

T.  **Damages** means the amount of money which an **insured** is legally obligated to pay as a result of a covered **claim** under Coverage Agreement A or Coverage Agreement B, including judgments and any prejudgment or post-judgment interest awarded against the **insured** on that part of any judgment paid or to be paid by the Company, legal fees and costs awarded against an **insured** pursuant to such judgments, and settlements negotiated with the Company's consent.
**Damages** does not include:

  (1)  Taxes;
  (2)  Any amount for which an **insured** is absolved from legal responsibility to make payment to a third party;
  (3)  Amounts owed under contract;
  (4)  **Your** future profits or royalties or any return, withdrawal, restitution or reduction of **your** professional fees, profits or other charges;
  (5)  Punitive, liquidated or exemplary damages or the multiplied portion of multiplied damages;
  (6)  Fines, sanctions or penalties;
  (7)  Any matters that are deemed uninsurable under applicable law;
  (8)  The costs to comply with orders granting injunctive or non-monetary relief, including specific performance or any agreement to provide such relief;
  (9)  Disgorgement of any remuneration or financial advantage to which **you** were not legally entitled; or
  (10) Settlements negotiated without the Company's consent.

U.  **Data** means any and all machine-readable information, including, but not limited to, ready-for-use programs, applications, account information, personal information, health and medical information, or electronic information subject to back-up procedures, irrespective of the way it is used and rendered.

V.  **Defense costs** means reasonable and necessary legal fees, costs and expenses incurred with the Company's consent in the investigation, defense and appeal of any covered **claim** under Coverage Agreement A, Coverage Agreement B, Coverage Agreement C, or Coverage Agreement D.  **Defense costs** does not include any wages, salaries, fees, overhead or other charges incurred by, or paid to, any **insured** for any time spent in cooperating in the defense and investigation of any **claim** or potential **claim** under this Endorsement.

W.  **Delivered programs** means programs, applications, and software where the development stage has been finalized, having passed all test-runs, and been proven successful in a live environment.

X.  **Denial of service attack** means an event caused by unauthorized or unexpected interference or a malicious attack intended by the perpetrator to overwhelm the capacity of a **computer system**

by sending an excessive volume of electronic **data** to such **computer system** in order to prevent authorized access to such **computer system**.

Y.  **Digital assets** means **data** and **computer programs** that exist in an **insured computer system**. **Digital assets** do not include **computer hardware**.

Z.  **Digital assets loss** means reasonable and necessary expenses and costs which **you** incur to replace, recreate, or restore **digital assets** to the same state and with the same contents immediately before it was damaged, destroyed, altered, misused, or stolen, including expenses for materials and machine time. **Digital assets loss** also includes amounts representing employee work time to replace, recreate, or restore **digital assets**, which shall be determined on a predefined billable hours or per hour basis as based upon **your** schedule of employee billable hours.

AA.  **Electronic media** means floppy disks, CD ROM's, hard drives, magnetic tapes, magnetic discs, or any other media on which electronic data is recorded or stored.

BB.  **Endorsement period** means the period of coverage commencing on the effective date specified on this Endorsement and ending on the earlier of the termination, expiration or cancellation date of the policy to which this Endorsement attaches. **Endorsement period** does not include any extended reporting period.

CC.  **Firmware** means the fixed programs that internally control basic low-level operations in a device.

DD.  **Government investigation** means a formal investigation instituted against an **insured** by any federal, state or local government agency or authority, the subject matter of which is a **security breach** or **privacy breach**.

EE.  **Identity theft** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **key employee** or spouse of any **key employee**, with the intent to commit, or aid or abet another to commit, any unlawful activity that constitutes a violation of federal, state or local law.

FF.  **Identity theft expenses** means, and is limited to, any of the following incurred by **your key employee** or by a spouse of **your key employee** as a result of **identity theft**:

(1) The cost of notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors;
(2) The cost of certified mail to law enforcement agencies, credit agencies, financial   institutions or similar credit grantors;
(3) Loan application fees for reapplying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;
(4) The cost of credit monitoring services and the cost of obtaining credit reports for up to 12 months from the date of **identity theft**; and
(5) The cost of case management services for up to 12 months from the date of **identity theft**.

GG.  **Income loss** means financial loss **you** sustain, as determined in accordance with the provisions of Coverage Agreement F(2) or Coverage Agreement H.

HH.  **Insured** means the **named insured** and current executive officers, partners, directors, stockholders, trustees, or employees of the **named insured**, but only while such individuals are acting within the scope of their duties on behalf of the **named insured**.

II.  **Insured computer system** means:

(1)    A **computer system** operated by and either owned by, or leased to, **you**;

(2)    With respect to Coverage Agreement B only, a **computer system** operated by a **BPO service provider** or **outsourced IT service provider** and used for the sole purpose of providing hosted computer application services to **you** or for processing, maintaining, hosting, or storing **your** electronic **data**, pursuant to a written contract with **you** for such services.

JJ.    **Internet** means the worldwide public network of computers which enables the transmission of electronic **data** between different users, including a private communications network existing within a shared or public network platform.

KK.    **Interruption expenses** means those expenses, excluding **special expenses**, which **you** incur in accordance with the provisions of Coverage Agreement F(2) or Coverage Agreement H, to:

(1)    Avoid or minimize the suspension of **your** business as a result of a total or partial interruption, degradation in service, or failure of an **insured computer system** caused directly by a **covered cause of loss** or an **act of cyber terrorism**, which **you** would not have incurred had no **covered cause of loss** or **act of cyber terrorism** occurred, including, but not limited to, the use of rented/leased external equipment, substitution of other work or production procedures, use of third party services, or additional staff expenditures or labor costs; and

(2)    Minimize or avoid a **covered cause of loss** or **act of cyber terrorism** and continue **your** business.

The amount of **interruption expenses** recoverable under paragraph (1) above shall in no case exceed the amount by which the covered **income loss** is reduced by such incurred expenses.

LL.    **Key employees** means **your** current directors, officers, or any natural person that possesses the exclusive right to hold, use, benefit from, enjoy, convey, transfer and otherwise dispose of **your** assets or properties

MM.    **Malicious code** means software intentionally designed to insert itself and damage a **computer system** without the owner's informed consent by a variety of forms including, but not limited to, virus, worm, Trojan horses, spyware, dishonest adware, and crimeware.

NN.    **Multimedia peril** means the release or display of any **electronic media** on **your internet** site or **print media** for which **you** are solely responsible, which directly results in any of the following:

(1)    Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement, or trade libel,

(2)    Invasion, infringement or interference with an individual's right of privacy including false light, intrusion upon seclusion, commercial misappropriation of name, person, or likeness, and public disclosure of private facts;

(3)    Plagiarism, piracy, or misappropriation of ideas under an implied contract;

(4)    Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or

(5)    Domain name infringement or improper deep-linking or framing.

OO.    **Named insured** means the person or organization listed as such on the Cyber Liability Declarations.

PP.    **Notification** means **notification** to individuals in the event of a **security breach** or a **privacy breach**.

QQ.   **Notification expenses** means those reasonable and necessary expenses which **you** incur, with the Company's prior written consent, to notify affected individuals in the event of a **security breach** or **privacy breach**. **Notification expenses** include, but is not limited to:

   (1) Legal expenses;
   (2) Computer forensic and investigation fees;
   (3) Public relations expenses;
   (4) Postage expenses; and
   (5) Related advertising expenses.

RR.   **Operational programs** means programs and software which are ready for operational use, having been fully developed, tested, and accepted by **you**.

SS.   **Outsourced IT service provider** means a third party independent contractor that provides information technology services for **your** benefit under a written contract with **you**. **Outsourced IT service provider** services includes, but is not limited to, hosting, security management, co-location, and **data storage**.

TT.   **PCI Data Security Standards** (known as "PCI DSS") means the published data security standards in effect now, or as hereafter amended, which all merchants and processors must follow when storing, processing and transmitting cardholder data.

UU.   **PCI DSS assessment** means a monetary fine or penalty assessed against an **insured** by an **acquiring bank** or **card association** as a result of a **security breach** or **privacy breach**.

VV.   **Period of indemnity** means the period commencing with the earlier of the date of **notification** or the first publication of an **adverse media report** (whichever applies), and ending on the earlier of: (1) the date that gross revenues are restored to the level they had been prior to **notification** or the first **adverse media report** (whichever applies); or (2) One hundred and eighty (180) consecutive days after the notice of **claim** under Coverage Agreement I is received by the Company.

WW.   **Period of restoration** means the period of time that commences on the date when the interruption, degradation, or failure of an **insured computer system** began and ends on the earlier of:

   (1)   The date when the **insured computer system** is restored or could have been repaired or restored to the same condition, functionality, and level of service that existed prior to the **covered cause of loss** or the **act of cyber terrorism** with reasonable diligence, plus up to thirty (30) additional consecutive days after the restoration of the **insured computer system** to allow for restoration of **your** business; or

   (2)   One hundred and twenty (120) consecutive days after the notice of **covered cause of loss** or **act of cyber terrorism** is received by the Company.

XX.   **Print media** means newspapers, newsletters, magazines, books, and literary works in any form, brochures or other types of publications, and advertising materials, including packaging, photographs, and digital images.

YY.   **Privacy breach** means any of the below, whether actual or alleged, but only if committed or allegedly committed by **you** or by others acting on **your** behalf for whom **you** are legally responsible, including **BPO service providers** and **outsourced IT service providers**:

   (1) A common law breach of confidentiality, infringement, or violation of any right to privacy, including, but not limited to, a breach of **your** privacy policy, false light, intrusion upon a person's seclusion, commercial misappropriation of name, person, or likeness, or public

disclosure of a person's private information; or

(2)  Any breach of privacy regulations, as they currently exist and as amended, associated with the confidentiality, access, control, and use of personally identifiable, non-public information, including, but not limited to:

(a)  Health Insurance Portability and Accountability Act of 1996 (Public Law 104- 191), known as HIPAA, and related state medical privacy laws;

(b)  Gramm-Leach-Bliley Act of 1999 (G-L-B), also known as the Financial Services Modernization Act of 1999;

(c)  State and federal statutes and regulations regarding the security and privacy of consumer information;

(d)  Governmental privacy protection regulations or laws associated with the control and use of personal information;

(e)  Privacy provisions of consumer protection laws, including the Federal Fair Credit Reporting Act (FCRA) and similar state laws;

(f)  Title XIII, the Health Information Technology for Economic and Clinical Health Act ("HITECH"), of the American Recovery and Reinvestment Act of 2009 ("ARRA").

A series of continuing **privacy breaches** or related or repeated **privacy breaches** will be considered a single **privacy breach** and will be deemed to have occurred when the first of such **privacy breaches** occurred.

ZZ.  **Privacy breach response costs** means those reasonable and necessary fees and expenses which **you** incur, with the Company's prior written consent, for the employment of a public relations consultant prior to or following the publication of an **adverse media report**, if **you** reasonably consider such action is necessary in order to avert or mitigate any material damage to **your reputation** or brands, which results or reasonably will result from the **adverse media report**.

AAA.  **Programming error** means an error which occurs during the development or encoding of a computer program, software, or application, which would, when in operation, result in a malfunction or incorrect operation of a **computer system**.

BBB.  **Property damage** means injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured. **Data** is not considered tangible property.

CCC.  **Public relations expenses** means reasonable and necessary expenses incurred by **you** to re-establish **your reputation** which was damaged as a direct result of an **adverse media report**.

DDD.  **Regulatory compensatory award** means a sum of money which an **insured** is legally obligated to pay as an award or fund for affected individuals, including a regulatory agency's monetary award to a third party, due to an adverse judgment or settlement arising out of a **government investigation**. **Regulatory compensatory award** does not include a criminal penalty or fine issued by a regulatory agency of any kind, including federal, state, or local governmental agencies.

EEE.  **Regulatory fines and penalties** means any civil fines and penalties imposed against an **insured** as a result of a **government investigation**.

FFF.  **Reputation** means the estimation of trust that patients, customers or clients have in doing business with **you** or in purchasing **your** products or services.

GGG.  **Retroactive date** means the date specified as such on this Endorsement, on or after which any **multimedia peril**, **security and privacy wrongful act**, **security breach**, **privacy breach**, **covered**

cause of loss, **cyber extortion threat, act of cyber terrorism, adverse media report** or **identity theft** must have taken place in order to be considered for coverage under this Endorsement.

HHH. **Security and privacy wrongful act** means any of the following acts, whether actual or alleged, but only if committed or allegedly committed by an **insured**:

    (1)    Failure to prevent or hinder **a security breach** that in turn results in:

        (a)    The alteration, copying, corruption, destruction, deletion, or damage to electronic **data** stored on an **insured computer system**;

        (b)    Theft, loss or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in **your** care, custody or control;

        (c)    Theft, loss, or unauthorized disclosure of electronic and non-electronic confidential commercial, corporate, personally identifiable, or private information that is in the care, custody or control of a **BPO service provider** or **outsourced IT service provider** that is holding, processing, or transferring such information on **your** behalf; provided, however, that the theft, loss or unauthorized disclosure occurs while **your** written contract with such **BPO service provider** or **outsourced IT service provider** is in effect; or

        (d)    **Unauthorized use** of, or **unauthorized access** to, a **computer system** other than an **insured computer system**.

    (2)    Failure to timely disclose a **security breach** affecting personally identifiable, nonpublic information or the failure to dispose of personally identifiable, nonpublic information within the required time period, in violation of privacy regulations in effect now or in the future;

    (3)    Failure to prevent the transmission of **malicious code** or **computer virus** from an **insured computer system** to the **computer system** of a third party;

    (4)    A **privacy breach**;

    (5)    Failure to prevent or hinder participation by an **insured computer system** in a **denial of service attack** directed against **internet** sites or the **computer system** of any third party; or

    (6)    Loss of employee information.

III. **Security breach** means:

    (1)    **Unauthorized access** to, or **unauthorized use** of, an **insured computer system**, including **unauthorized access** or **unauthorized use** resulting from the theft of a password from an **insured computer system** or from any **insured**;

    (2)    A **denial of service attack** against an **insured computer system**; or

    (3)    Infection of an **insured computer system** by **malicious code** or the transmission of **malicious code** from an **insured computer system**,

whether any of the foregoing is a specifically targeted attack or a generally distributed attack. A series of continuing **security breaches**, related or repeated **security breaches**, or multiple **security breaches** resulting from a continuing failure of computer security will be considered a single **security breach** and will be deemed to have occurred when the first of such **security breaches** occurred.

JJJ. **Special expenses** means reasonable and necessary costs and expenses which **you** incur to:

    (1)    Prevent, preserve, minimize, or mitigate any further damage to **digital assets**, including the reasonable and necessary fees and expenses of specialists, outside consultants, or forensic experts **you** retain;

    (2)    Preserve critical evidence of any criminal or malicious wrongdoing;

      (3)     Purchase replacement licenses for **computer programs** because the copy protection system and/or access control software was damaged or destroyed by a **covered cause of loss** or an **act of cyber terrorism**; or

      (4)     Notify customers of a total or partial interruption, degradation in service, or failure of an **insured computer system** resulting from a **covered cause of loss** or an **act of cyber terrorism**.

KKK.  **Unauthorized access** means the gaining of access to a **computer system** by an unauthorized person or persons.

LLL.  **Unauthorized use** means the use of a **computer system** by unauthorized persons or authorized persons in an unauthorized manner.

MMM. **Waiting period** means:

      (1)     With respect to Coverage Agreement F(2) and Coverage Agreement H, the 8 hour period which must elapse before **income loss, interruption expenses** and/or **special expenses** may be payable. The **waiting period** applies to each **period of restoration**.

      (2)     With respect to Coverage Agreement I, the two week period which must elapse after **notification**, or in the event of an **adverse media report**, after publication of the first **adverse media report**, before **brand loss** may be payable. The **waiting period** applies to each **period of indemnity**.

NNN.  **You** and **your** mean the **named insured**.

**SECTION VI - NOTICE PROVISIONS**

A.    NOTICE OF A CLAIM

      (1)     As a condition precedent to coverage under Coverage Agreement A, B, C or D, the **insured** must give the Company written notice of any **claim** made against the **insured** no later than sixty (60) days after the **claim** is first made against the **insured**.

      (2)     As a condition precedent to coverage under Coverage Agreement E, F, G, H, I or J, **you** must give the Company written notice of **your claim** during the **endorsement period**, but no later than 60 days from the date any **insured** first discovers the event or incident giving rise to such **claim**.

      (3)     **You** must provide the Company with copies of all documentation comprising the **claim** as well as any authorization, cooperation, or assistance as the Company may require.

      (4)     The Company will not be obligated to pay any amounts incurred prior to notice of a **claim** to the Company or amounts incurred without the Company's prior written consent.

B.    NOTICE OF A POTENTIAL CLAIM

If, during the **endorsement period**, any **insured** first becomes aware of any facts or circumstances which could give rise to a **claim** covered under this Endorsement, and if the **insured** provides the Company with written notice during the **endorsement period** of:

(1) The details regarding such facts or circumstances;
(2) The nature of the loss incurred;
(3) The identity of the potential claimant(s) involved;
(4) The manner in which the **insured** first became aware of the facts or circumstances; and

(5) The consequences which have resulted or may result,

then any **claim** subsequently made arising out of such reported facts or circumstances will be deemed to be a **claim** first made on the date notice complying with the foregoing requirements was first received by the Company.

## SECTION VII - LOSS DETERMINATION

A.  LOSS OF DIGITAL ASSETS

For any and all coverage provided under Coverage Agreement F(1), **digital assets loss** will be determined as follows:

(1)  If the impacted **digital asset** was purchased from a third party, the Company will pay only the lesser of the original purchase price of the **digital asset** or the reasonable and necessary **digital assets loss**.

(2)  If it is determined that the **digital assets** cannot be replaced, restored or recreated, then the Company will only reimburse the actual and necessary **digital assets loss** incurred up to such determination.

B.  NON-PHYSICAL BUSINESS INTERRUPTION AND EXTRA EXPENSE AND CYBER TERRORISM

For any and all coverage provided under Coverage Agreement F(2) or Coverage Agreement H, **income loss** will be determined as the reduction of **your** income during the **period of restoration**, which is:

(1)  **Your** net income (net profit or loss before income taxes) that would have been reasonably projected, but which has been lost directly as a result of a total or partial interruption, degradation in service or failure of an **insured computer system** caused directly by a **covered cause of loss** or an **act of cyber terrorism**, whichever applies. The revenue projection will take into account the prior experience of **your** business preceding the date of the **covered cause of loss** or the **act of cyber terrorism** and the probable experience had no **covered cause of loss** or **act of cyber terrorism** occurred. Revenues include the amount of money paid or payable to **you** for goods, products or services sold, delivered or rendered in the normal course of **your** business. Revenue projection will be reduced by the extent to which **you** use substitute methods, facilities or personnel to maintain **your** revenue stream. The Company will take into consideration **your** documentation of the trends in **your** business and variations in, or other circumstances affecting, **your** business before or after the **covered cause of loss** or the **act of cyber terrorism**, which would have affected **your** business had no **covered cause of loss** or **act of cyber terrorism** occurred; and

(2)  Any fixed operating expenses (including ordinary payroll) incurred, but only to the extent that such operating expenses must continue during the **period of restoration**.

C.  BRANDGUARD

For any and all coverage provided under Coverage Agreement I, **brand loss** will be determined as follows:

The revenue projection required to calculate **brand loss** will take into account the prior experience of **your** business preceding the date of the **adverse media report** or **notification**, whichever applies, and the probable experience had no **adverse media report** been published or **notification** occurred. Revenues include the amount of money paid or payable to **you** for goods, products or services sold, delivered or rendered in the normal course of **your** business. Revenue projection will be reduced by the

extent to which **you** use substitute methods, facilities, or personnel to maintain its revenue stream. The Company will take into consideration **your** documentation of the trends in **your** business and variations in, or other circumstances affecting, **your** business before or after the **adverse media report** or **notification**, which would have affected **your** business had no **adverse media report** been published or **notification** occurred. Any fixed operating expenses (including ordinary payroll) incurred will be considered in calculating **brand loss**, but only to the extent that such operating expenses must continue during the **period of indemnity**.

## SECTION VIII - EXTENDED REPORTING PERIOD

A.   AUTOMATIC EXTENDED REPORTING PERIOD

In the event of non-renewal or termination of this Policy for any reason other than non-payment of premium, the Company will provide an Automatic Extended Reporting Period of sixty (60) days in which **claims** otherwise covered by this Endorsement may be reported.  Such Automatic Extended Reporting Period will commence immediately upon termination or expiration of this Policy and will apply to:

(1)   A **claim** under Coverage Agreement A, B, C, or D which:

   (a)   Arises out of an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach** or **privacy breach**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

   (b)   Is first made against an **insured** during the Automatic Extended Reporting Period; and

   (c)   Is reported in writing to the Company during the Automatic Extended Reporting Period.

(2)   A **claim** under Coverage Agreement E, F, G, H, I or J which:

   (a)   Arises out of an **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **identity theft**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

   (b)   Is reported in writing to the Company during the Automatic Extended Reporting Period.

B.   SUPPLEMENTAL EXTENDED REPORTING PERIOD

(1)   **You** shall have the option, upon payment of the required additional premium, to purchase a Supplemental Extended Reporting Period following the effective date of non-renewal or termination of coverage. Within thirty (30) days of the effective date of non-renewal or termination of coverage, the Company will provide **you** with written notice of the option to purchase the Supplemental Extended Reporting Period. Such written notice will be mailed or delivered to **you** at the address listed on the Policy Declarations Page and will contain the duration of, and premium for, the Supplemental Extended Reporting Period.  The Supplemental Extended Reporting Period will extend the time during which **claims** otherwise covered by this Endorsement may be made and reported.  If the Supplemental Extended Reporting Period is purchased, the Automatic Extended Reporting Period will be included within the Supplemental Extended Reporting Period. Such Supplemental Extended Reporting Period will apply only to:

   (a)   A **claim** under Coverage Agreement A, B, C, or D which:

      (i)   Arises out of an actual or alleged **multimedia peril**, **security and privacy wrongful act**, **security breach** or **privacy breach**, whichever applies, that

Case ID: 191003548

takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

(ii)   Is first made against an **insured** during the Supplemental Extended Reporting Period; and

(iii)   Is reported in writing to the Company no later than 60 days after the **claim** is first made against an **insured**.

(b)   A **claim** under Coverage Agreement E, F, G, H, I or J which:

(i)   Arises out of an **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **identity theft**, whichever applies, that takes place or first commences on or after the **retroactive date**, but prior to the expiration or termination of the Policy; and

(ii)   Is reported in writing to the Company during the Supplemental Extended Reporting Period, but no later than 60 days from the date any **insured** discovers the **adverse media report**, **security breach**, **privacy breach**, **covered cause of loss**, **cyber extortion threat**, **act of cyber terrorism**, or **identity theft**, whichever applies.

(2)   The right to purchase the Supplemental Extended Reporting Period shall terminate unless written notice of such election, together with full payment of the required additional premium due, is received by us no later than the later of:

(a)   sixty (60) days after the effective date of non-renewal or termination of this Policy; or

(b)   thirty (30) days after the date of the Company's notice to **you** of the availability of, and premium for, the Supplemental Extended Reporting Period.

(3)   The additional premium for the Supplemental Extended Reporting Period shall be a percentage of the rates for such coverage in effect on the date the Policy was issued or last renewed.

(4)   If **you** do not elect to purchase a Supplemental Extended Reporting Period, then coverage under this Endorsement will terminate at the end of the Automatic Extended Reporting Period. If **you** elect to purchase a Supplemental Extended Reporting Period, coverage will terminate at the end of the Supplemental Extended Reporting Period.

(5)   Once in effect, the Supplemental Extended Reporting Period may not be canceled, and the entire premium will be deemed fully earned. We will not be liable to return any portion of the premium to **you** for such Supplemental Extended Reporting Period. If **you** have not paid the required additional premium for the Supplemental Extended Reporting Period when due, then such Supplemental Extended Reporting Period shall be void.

C.   All terms and conditions of this Endorsement, including the limits of insurance, will continue to apply during any extended reporting period.

D.   The existence of any extended reporting period will not increase or reinstate the limits of insurance shown in the Schedule.

## SECTION IX - OTHER INSURANCE

The coverage provided by this Endorsement will be excess insurance over any other valid and collectible insurance available, including any self insured retention or deductible portion thereof, whether such insurance is

stated to be primary, pro rata, contributory, excess, contingent or otherwise, unless such insurance specifically applies as excess insurance over the insurance provided under this Endorsement.

## SECTION X - ARBITRATION

Notwithstanding any other provision of this Endorsement or the Policy, any irreconcilable dispute between the Company and an **insured** may be submitted to arbitration. The **insured** and the Company must mutually agree to arbitration and the arbitration procedure. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator has the power to decide any dispute between the Company and the **insured** concerning the application or interpretation of this Endorsement. However, the arbitrator shall have no power to change or add to the provisions of this Endorsement. The **insured** and the Company will share equally in the cost of arbitration.



**UTICA FIRST**
INSURANCE COMPANY

# CYBER LIABILITY INSURANCE
## SUPPLEMENTAL DECLARATIONS
### (Claims-Made and Reported Coverage)

## NOTICE TO POLICYHOLDERS REGARDING DEFENSE WITHIN LIMITS

**DEFENSE COSTS PAID UNDER YOUR CYBER LIABILITY INSURANCE WILL BE INCLUDED WITHIN, AND MAY COMPLETELY EXHAUST, THE LIMTIS OF LIAIBILITY SHOWN BELOW.**

**Named Insured:**

**Cyber Liability Coverage Period:**

From  11/13/17  to   11/13/18  , both days at 12:01 a.m. local standard time at your mailing address shown on the Declarations Page of this policy.

**Retroactive Date:** 11/13/16

**Cyber Liability Limits:**

The Cyber Liability limits of insurance are shown below. Such limits are in addition to, and will not erode, the limits of liability provided elsewhere under your Policy.

| Coverage | Limits | |
|---|---|---|
| Multimedia Liability Coverage | $100,000 | Each **claim** |
| Security and Privacy Liability Coverage | $100,000 | Each **claim** |
| Privacy Regulatory Defense and Penalties Coverage | $100,000 | Each **claim** |
| PCI DDS Assessment Coverage | $100,000 | Each **claim** |
| Privacy Breach Response Costs, Notification Expenses and Customer Support and Credit Monitoring Expenses Coverage | $100,000 | Each **claim** |
| Network Asset Protection Coverage | $100,000 | Each **claim** |
| Cyber Extortion Coverage | $100,000 | Each **claim** |
| Cyber Terrorism Coverage | $100,000 | Each **claim** |
| BrandGuard Coverage | $100,000 | Each **claim** |
| Business Owner ID Theft Recoverage Coverage | $100,000 | Each **claim** |
| Aggregate Limit | $100,000 | |

Case ID: 191003548

 **UTICA FIRST**
INSURANCE COMPANY

**WAREXCL Ed. 0105**

## THE FOLLOWING REVISIONS MODIFY COVERAGE AS PRESCRIBED IN YOUR BP-100 OR BP-200 COVERAGE FORM

*If your underlying policy form is:*
*BP-100 (Ed. 1-87) the following exclusion replaces Exclusion f. on Pg. 9 under 'PERILS NOT COVERED AND EXCLUSIONS'.*
*BP-200 (Ed. 1-87) the following exclusion replaces Exclusion #6 on Pg. 8 under 'PERILS NOT COVERED EXCLUSIONS AND LIMITATIONS'.*
*BP-100 Ed 1.0 the following exclusion replaces Exclusion #6 on Pg. 12 under 'PERILS EXCLUDED'.*
*BP-200 Ed 2.0 the following exclusion replaces Exclusion #7 on Pg. 12 under 'PERILS EXCLUDED'.*

**War And Military Action** - "We" do not pay for loss or damage caused directly or indirectly by the following:

    a.  war, including undeclared or civil war; or

    b.  warlike action by a military force, including action hindering or defending against actual or expected attack, by any government sovereign, or other authority using military personnel or other agents; or

    c.  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

    Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

With respect to any action that comes within the "terms" of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

---

*If your underlying policy form is:*
*BP-100 (Ed. 1-87) the following exclusion replaces Exclusion #11. on Pg. 19 under 'EXCLUSIONS THAT APPLY TO ALL COVERAGES'.*
*BP-200 (Ed. 1-87) the following exclusion replaces Exclusion #11 on Pg. 20 under 'EXCLUSIONS THAT APPLY TO ALL COVERAGES'.*
*BP-100 Ed 1.0 the following exclusion replaces Exclusion #7 on Pg. 33 under 'EXCLUSIONS - EXCLUSIONS THAT APPLY TO BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, AND/OR ADVERTISING INJURY'.*
*BP-200 Ed 2.0 the following exclusion replaces Exclusion #7 on Pg. 34 under 'EXCLUSIONS - EXCLUSIONS THAT APPLY TO BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, AND/OR ADVERTISING INJURY'.*

"We" do not pay for "bodily injury" or "property damage" caused directly or indirectly by the following:

    1.  war, including undeclared or civil war; or
    2.  warlike action by a military force, including action that is hindering or defending against actual or expected attack, by any government sovereign, or other authority using military personnel or other agents; or
    3.  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

    Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**UTICA FIRST**
INSURANCE COMPANY
*CONSTITUTED IN OHIO AS*
**UTICA FIRST INSURANCE COMPANY (MUTUAL)**
P.O. Box 851, Utica, NY 13503-0851

# Important Notice About Your Privacy

At Utica First our goal is to professionally and respectfully serve the personal and business insurance needs of our customers. Information that you provide or we collect about you when you apply for insurance or when you file a claim helps us to achieve that goal. You provide us with most of the information about you that we use in evaluating your application and servicing your insurance policy or your claim. This enables us to provide coverage to you at the best price or to service your claim promptly and fairly.

We know that the trust of our customers is our most important asset. This includes the trust that we will keep the information about you secure and treat it **only as permitted by law.** This disclosure and notice tells you about the privacy policy we have adopted and the practices we use in handling the information you furnished to us.

> **We do not disclose any non-public personal information about our customers or former customers to anyone, except as permitted by law.**

**What types of information does Utica First collect about you?**
We collect non-public personal information about you from the following sources:
* Information we receive from you on applications and other forms.
* Information about your transactions with us, our affiliates, or others.
* Information we receive from inspection or audit functions and, if applicable, state motor vehicle records.
* Information we receive from a consumer reporting agency.

**What information do we share with our affiliated companies?**
* We share non-public personal information about our customers or former customers with our affiliated companies only as permitted by law.
* In some cases, this may mean information can be disclosed to our affiliated companies without your authorization.

**What information do we disclose to nonaffiliated third parties?**
* We share non-public personal information about customers or former customers to nonaffiliated third parties only as permitted by law.
* We do not disclose your non-public personal information to nonaffiliated third parties for purposes of marketing the products or services of any third party.
* In some cases, this may mean information can be disclosed to nonaffiliated third parties without your authorization.

**What measures are taken by Utica First to protect your information?**
* We limit access to non-public personal information about you to those employees who need to know that information to provide you with products or to provide you benefits or services under them.
* We maintain physical, electronic, and procedural safeguards that comply with state and federal regulations to guard your non-public personal information.
* We limit the collection and disclosure of non-public information to information necessary and relevant to the conduct of our business.
* We collect information only by legitimate means.

> **You have the right to obtain access to certain items of information we have collected about you, and you have the further right to request correction of information if you feel it is inaccurate.**

> **We would be pleased to tell you more about our policies and procedures for the privacy of your information. Questions or requests about your privacy should be address to:**
> **Privacy Officer, Utica First Insurance Company, P.O. Box 851, Utica, NY 13503-0851**
> **Remember to include your name, address, policy number or claim number, and daytime phone number.**

**IMPORTANT NOTICE**
IN COMPLIANCE WITH THE REQUIREMENTS OF THE FAIR CREDIT REPORTING ACT (PUBLIC LAW 91-508) UTICA FIRST INSURANCE COMPANY ADVISES THAT AS PART OF OUR ROUTINE PROCEDURE IN REVIEWING APPLICATIONS FOR INSURANCE OR RENEWALS OF INSURANCE POLICIES, WE MAY PROCURE A CONSUMER REPORT INCLUDING INFORMATION AS TO THE CONSUMER'S CHARACTER, GENERAL REPUTATION, PERSONAL CHARACTERISTICS OR MODE OF LIVING. IF SUCH INSURANCE IS FOR AN INDIVIDUAL AND IS PRIMARILY FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES, SUCH INFORMATION MAY BE OBTAINED THROUGH PERSONAL INTERVIEWS WITH NEIGHBORS, FRIENDS, OR OTHERS WITH WHOM THE CONSUMER IS ACQUAINTED.
UPON REQUEST TO UTICA FIRST INSURANCE COMPANY AS NOTED ABOVE, WE WILL PROVIDE IN WRITING A COMPLETE AND ACCURATE DISCLOSURE OF THE NATURE AND SCOPE OF THE CONSUMER REPORT REQUESTED OR ADVISE THAT NONE WAS REQUESTED.

PRIV 0401

**AAIS**

CL-208
Ed. 1.0

## AMENDMENT OF CANCELLATION AND NONRENEWAL PROVISIONS

The cancellation and nonrenewal provisions of this policy do not apply to Employee Dishonesty coverage except as follows:

**Cancellation - You** may cancel this policy by returning it to **us** or by giving **us** a written notice and stating at what future time coverage is to cease.

**We** may cancel this policy, or one or more of its parts, by giving **you** a written notice at least 10 days before the cancellation is to take effect.  The notice will state the time the cancellation is to take effect.  The notice will be sent to **your** mailing address last known to **us**.

**Your** return premium, if any, will be calculated according to **our** rules.  It will be refunded to **you** with the cancellation notice or within a reasonable time.  Payment or tender of the unearned premium is not a condition of cancellation.

CL-208
Ed. 1.0

Copyright AAIS

Case ID: 191003548

**AAIS**
**CL-300 Ed 1.0**
**Page 1 of 1**

## AMENDATORY ENDORSEMENT

The reference to words that have special meaning is deleted and replaced by the following:

Refer to Definitions for words and phrases that have special meaning.  These words and phrases are shown in quotation marks or bold type.

CL-300 Ed 1.0

Copyright MCMXCIV, American Association of Insurance Services

## UTICA FIRST INSURANCE COMPANY

GL-890A
Ed 1.0

This endorsement changes the Liability
Coverages provided by this policy

**- PLEASE READ THIS CAREFULLY -**

## ASBESTOS LIABILITY EXCLUSION

The Commercial Liability Coverage is amended as follows:

### EXCLUSIONS THAT APPLY TO ALL COVERAGES

The following are added:

**We** do not pay for:

1. actual or alleged **bodily injury** arising out of the ingestion, inhalation or absorption of asbestos in any form;

2. actual or alleged **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage) arising out of any form of asbestos;

3. any loss, cost or expense arising out of any request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of asbestos; or

4. any loss, cost or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of asbestos.

GL- 890A Ed 1.0

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

## LOSS OF INCOME COVERAGE 72-HOUR WAITING PERIOD
### PROPERTY COVERAGES

## DEFINITIONS

The Definition of "Restoration period" is deleted and replaced by the following:

8.  "Restoration period":

    a.  This means the period of time it should reasonably take to resume "your" normal business activities at the described premises starting:

        1)  for Earnings, 72 hours after the time of loss caused by a covered peril; or
        2)  for Extra Expense, immediately after the time of loss caused by a covered peril, and

        ending on the date the property should be rebuilt, repaired, or replaced. This is not limited by the expiration date of the policy.

    b.  "Restoration period" does not include any increase in time due to the enforcement of any ordinance, law, or decree that regulates or requires:

        1)  the construction, use, repair, or demolition of any property;
        2)  the testing, evaluating, observing, or recording the existence, level, or effects of "pollutants"; or
        3)  the clean up, removal, containment, treatment, detoxification, or neutralization of "pollutants".

## COVERAGE C -- LOSS OF INCOME

Under Supplemental Loss of Income Coverages, Interruption by Civil Authority is deleted and replaced by the following:

2.  **Interruption by Civil Authority** -- "We" extend "your" coverage to include loss while access to the described premises is specifically denied by an order of civil authority. This order must be a result of damage to property other than at the described premises and caused by a covered peril.

    This extension of coverage:

    a.  for Earnings, starts 72 hours after the time the order is issued and will apply for a period of up to three consecutive weeks after the order is issued; and

    b.  for Extra Expense, starts immediately after the order is issued, and will apply for:

        1)  a period of up to three consecutive weeks after the order is issued; or
        2)  until "your" Earnings coverage ends,

        whichever is later.

    This does not increase any "limit" for Coverage C -- Loss of Income shown on the "declarations".

BP 0620 01 99
Copyright, American Association of Insurance Services, 1998


**UTICA FIRST**
INSURANCE COMPANY

This endorsement changes the property coverage
**- PLEASE READ THIS CAREFULLY -**

## SYSTEMS BREAKDOWN COVERAGE FORM

### PERILS COVERED

This coverage applies as excess over any collectable amount provided by this policy and any of its endorsements.

1. When Systems Breakdown Coverage- Included is shown on the **Declarations**, the following are added to Perils Covered of the Property Coverage Section:

    a. Explosion of steam boilers, electric steam generators, steam pipes, steam engines, steam turbines or gas turbines owned or leased by **you** or operated under **your** control;

    b. Bulging, cracking, collapse, burning of boilers and vessels which are built to operate under vacuum or pressure other than weight of contents;

    c. Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires; and

    d. Mechanical breakdown, including rupture or bursting caused by centrifugal force.

2. The perils added to coverage by Paragraph 1 above, shall also apply to equipment that is owned by you, a utility or others that is:

    a. within 500 feet of the premises described on the **Declarations**, or

    b. more than 500 feet from the premises described on the **Declarations**, but is used to solely supply these premises.

    **We** will pay for those losses and expenses that you have coverage for under this policy, that are the direct result of damage to this equipment from a peril added to coverage by Paragraph 1 above.

3. Theft of "computer equipment", including copyrighted software, and "media", is also added to the Perils Covered. "Computer Equipment" means electronic data processing equipment capable of accepting data and processing it. "Media" means all forms of electronic and magnetic tapes and discs, converted data, program or instruction for use in any electronic "computer equipment." **We** do not cover more than $5,000 total in any one occurrence for loss or damage by theft to "computer equipment", copyrighted software or "media".

4. The following exclusions and limitations do not apply to the coverage provided by this endorsement:

    a. BUSINESSOWNERS SPECIAL POLICY - BP-200, if applicable, PERILS NOT COVERED, EXCLUSIONS AND LIMITATIONS: B. 2., B. 10., B. 11., B. 17. and B. 32.

    b. BUSINESSOWNERS STANDARD POLICY- BP-100, if applicable, PERILS NOT COVERED AND EXCLUSIONS: B. 2. a. and B. 2. f.

Case ID: 191003548

AAIS

This endorsement changes the Commercial
Liability Coverages provided by this policy

GL-890
Ed 1.0

- PLEASE READ THIS CAREFULLY -

# LEAD LIABILITY EXCLUSION

The Commercial Liability Coverage is amended as follows:

## EXCLUSIONS THAT APPLY TO ALL COVERAGES

The following are added:

**We** do not pay for:

1. actual or alleged **bodily injury** arising out of the ingestion, inhalation or absorption of lead in any form;

2. actual or alleged **property damage** (or **personal injury** or **advertising injury**, if provided by the Commercial Liability Coverage) arising out of any form of lead;

3. any loss, cost or expense arising out of any request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of lead; or

4. any loss, cost or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead.

GL- 890 Ed 1.0

Copyright MCMXCII, American Association of Insurance Services

AAIS

AAIS

**BP-316**
**(Ed. 1-87)**

> This endorsement changes the Commercial
> Liability Coverages provided by this policy.
> **- PLEASE READ THIS CAREFULLY -**

# PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE

The Commercial Liability Coverage of this policy is amended as follows:

## PRINCIPAL COVERAGES

Coverage L is extended to include the following:
**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **personal injury** and **advertising injury** to which this insurance applies.
The **personal injury** or **advertising injury** must arise out of the conduct of **your** business:
1. within the **coverage territory** and
2. during the policy period.
**Personal injury** means injury (other than **bodily injury**) arising out of one or more of the following offenses:
1. oral or written publication of material:
    a. that slanders or libels a person or organization;
    b. that disparages a person's or organization's goods, **products** or services; or
    c. that violates a person's right of privacy.
2. false arrest, detention, imprisonment or malicious prosecution.
3. wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies.
It does not include advertising, publishing, broadcasting or telecasting done by or for **you**.
**Advertising injury** means injury (other than **bodily injury**) arising out of one or more of the following offenses:
1. oral or written publication of material:
    a. that slanders or libels a person or organization;
    b. that disparages a person's or organization's goods, **products** or services; or
    c. that violates a person's right of privacy.
2. misappropriation of advertising ideas or style of doing business.
3. infringement of copyright, title, slogan, trademark or trade name.

## EXCLUSIONS THAT APPLY TO PERSONAL AND ADVERTISING INJURY

1. **We** do not pay for **personal** or **advertising injury** for which an **insured** has assumed liability under a contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.
2. **We** do not pay for **personal** or **advertising injury** arising out of willful violation of an ordinance, statute or regulation by an **insured** or with the **insured's** consent.
3. **We** do not pay for **personal** or **advertising injury** arising out of oral or written publication of material:
    a. if done by or at the direction of an **insured** who knew it was false; or
    b. whose first publication was prior to the policy period.
4. **We** do not pay for **personal** or **advertising injury** arising out of the conduct of any current or past partnership or joint venture that is not shown on the Declarations as an **insured**
5. **We** do not pay for **advertising injury** arising out of breach of contract, other than misappropriation of advertising ideas under an implied contract.
6. **We** do not pay for **advertising injury** arising out of the failure of goods, **products** or services to conform with advertised quality or performance.
7. **We** do not pay for **advertising injury** arising out of the wrong description of the price of goods, **products** or services.
8. **We** do not pay for **advertising injury** arising from an offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

BP-316

Copyright 1987 AAIS

ML-120
(Ed.4-81)
AAIS

## PENNSYLVANIA

### Insurance Consultation Services Exemption Act - Notice

This company may provide consultation services such as inspections or surveys of your property in accordance with the provisions of the policy. These services may reduce the likelihood of injury, death or loss.

This notice is required to be provided to you by the "Insurance Consultation Services Exemption Act" of Pennsylvania. This act provides that we, our agents, employees, or service contractors are not liable for damages from injury, death or loss occurring as a result of an act or omission by a person in the course of such services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the consultation services and was caused by our negligence or the negligence of our agents, employees or service contractors;

2. To consultation services performed under a written service contract not related to the policy; or

3. If an act or omission by us, our agents, employees or service contractors is determined by law to constitute a crime, actual malice or gross negligence.

**This notice must be attached to all new and renewal policies.**

ML-120
AAIS

Copyright 1981

AAIS

PLEASE READ THIS ENTIRE POLICY CAREFULLY
-- THIS IS A LEGAL CONTRACT --

BP-200
(Ed. 1-87)

# BUSINESSOWNERS SPECIAL POLICY

## TABLE OF CONTENTS

| | Page |
|---|---|
| **Agreement** | 1 |
| **Common Policy Conditions** | 2 |
| **Property Coverage Section** | |
| Definitions | 3 |
| Coverage A — Buildings and Coverage B — Business Personal Property | 3 |
| Coverage A — Buildings | 3 |
| Coverage B — Business Personal Property | 3 |
| Property Not Covered And Exclusions | 3 |
| Supplemental Property Coverages | 4 |
| Coverage C — Loss Of Income | 5 |
| Earnings | 6 |
| Extra Expenses | 6 |
| Exclusions And Limitations | 6 |
| Supplemental Loss Of Income Coverages | 7 |
| Perils Covered | 7 |
| Perils Not Covered, Exclusions and Limitations | 7 |
| What Must Be Done In Case Of Loss | 11 |
| Valuation Of Property Losses | 12 |
| Loss Payment | 13 |
| Other Property Coverage Conditions | 13 |
| **Commercial Liability Coverage Section** | |
| Definitions | 15 |
| Principal Coverages | 17 |
| Coverage L — Bodily Injury/Property Damage | 17 |
| Coverage M — Medical Payments | 17 |
| Coverage N — Products/Completed Work | 17 |
| Coverage O — Fire Legal Liability | 17 |
| Incidental Liability Coverages | 18 |
| Defense Coverage | 19 |
| Exclusions That Apply To All Coverages | 19 |
| Additional Exclusions That Apply To Property Damage Liability | 21 |
| Additional Exclusions That Apply To Medical Payments | 21 |
| What Must Be Done In Case Of Loss | 22 |
| How Much We Pay | 22 |
| Conditions | 23 |
| Nuclear Energy Liability Exclusion | 24 |
| Nuclear Energy Liability Exclusion Definitions | 25 |

Endorsements may also apply. They are identified on the Declarations page.

Refer to the Definitions for words that have special meanings. These words are shown in **"bold type."**

## AGREEMENT

Subject to all the **terms** that apply, and in return for **your** payment of the required premium, we provide the coverages described in this policy during the policy period.

© Copyright 1987 AAIS

Case ID: 191003548

# COMMON POLICY CONDITIONS

This Common Policy Conditions Section contains additional terms that apply to all coverages provided by this policy.

1. **Assignment** — This policy is void if it is assigned without **our** written consent.

2. **Cancellation** — **You** may cancel this policy by returning it to **us** or by giving **us** a written notice and stating at what future time coverage is to cease.

   **We** may cancel this policy, or one or more of its parts, by giving **you** a written notice at least 10 days before the cancellation is to take effect. The notice will state the time that the cancellation is to take effect. The notice will be sent to **your** mailing address last known to **us**.

   **Your** return premium, if any, will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification or Waiver of Policy Terms**—A change or waiver of terms of this policy must be issued by **us** in writing to be valid.

4. **Conformity With Statute** — Terms of this policy, in conflict with the statutes of the state where the premises described are located, are amended to conform to such statutes.

5. **Cooperation** — In case of loss, **you** must cooperate in performing all acts required by this policy.

6. **Examination of Books and Records** — **We** may examine and audit **your** books and records that

relate to this policy during the policy period and within three years after the policy has expired.

7. **Inspections** — **We** have the right, but are not obligated, to inspect **your** property and operations. This inspection may be made by **us** or may be made on **our** behalf. An inspection or its resulting advice or report does not warrant that **your** property or operations are safe, healthful or in compliance with laws, rules or regulations. Inspections or reports are for **our** benefit only.

8. **Liberalization** — If **we** adopt a revision of forms during a policy period which broadens this policy without additional premium, the broadened coverage will automatically apply to this policy. This also applies if **we** adopt the revision within 60 days before this policy is effective.

9. **Misrepresentation, Concealment or Fraud** — This coverage is void if before or after a loss:

   a. any **insured** has concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) the **insured's** interest herein;

   b. there has been fraud or false swearing by any **insured** with regard to a matter that relates to this insurance or the subject thereof.

BP-200        — 2 —        © Copyright 1987 AAIS

Case ID: 191003548

# PROPERTY COVERAGES

This Property Coverage Section contains the definitions, coverage descriptions, perils, exclusions, limitations and conditions that apply to Businessowners Property Coverages.

## DEFINITIONS

1. **Basic Territory** — This means the United States of America, its territories and possessions, Canada and Puerto Rico.

2. **Terms** — This means all provisions, limitations, exclusions, conditions and definitions that apply.

3. **We, Us, Our** — These words mean the company providing this coverage.

4. **You, Your** — These words mean the persons or organizations named on the Declarations.

## COVERAGE A - BUILDINGS and COVERAGE B - BUSINESS PERSONAL PROPERTY

We provide insurance for the following coverages indicated by a specific limit or premium charge on the Declarations. We insure against loss caused by the Perils Covered.

### COVERAGE A — BUILDINGS

We cover the buildings and structures described on the Declarations. This includes the following property located on the described premise:

1. additions;

2. fixtures, machinery and equipment which are a permanent part of the buildings and are used to provide building services;

3. outdoor fixtures;

4. personal property used for maintenance or service of the described premises, including air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dishwashing and laundering;

5. material, equipment and supplies intended for use in construction, alteration or repair of the buildings; and

6. buildings that are auxiliary to the described buildings.

## COVERAGE B — BUSINESS PERSONAL PROPERTY

We cover **your** business personal property in the described buildings or in the open (or in vehicles) on or within 100 feet of the described premises. This includes:

1. **your** interest in personal property of others to the extent of **your** labor, material and service; and

2. **your** use interest in improvements to the described buildings. Improvements means fixtures, alterations, installations or additions to a building **you** do not own. These improvements must have been made or acquired at **your** expense, other than rent, and not be legally subject to removal by **you**.

## PROPERTY NOT COVERED AND EXCLUSIONS

The following exclusions and limitations are applicable to Coverage A — Buildings and Coverage B — Business Personal Property. Limited coverage of some of these types of property is included in the Supplemental Property Coverages.

1. Animals and Pets — **We** do not cover animals and pets, except those held for sale.

2. Antennas, Awnings, Canopies, Fences and Signs— **We** do not cover outdoor:

   a. radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring;
   b. awnings or canopies of fabric or slat construction or their supports;
   c. fences; or
   d. signs.

3. Contraband — **We** do not cover contraband or property in the course of illegal transportation or trade.

4. Foundations, Retaining Walls, Pilings, Piers, Wharfs or Docks — **We** do not cover:

   a. foundations which are below the lowest basement floor or below ground level if there is no basement;
   b. retaining walls that are not part of buildings; or

— 3 —

© Copyright 1987 AAIS
Case ID: 191003548

c. pilings, piers, wharves or docks.

5. Land, Cost of Excavation, Grading or Filling, Paved Surfaces or Underground Pipes, Flues or Drains — We do not cover:

   a. land, including land on which the property is located;
   b. cost of excavations, grading or filling;
   c. paved outdoor surfaces, including driveways, parking lots, roads and walks; or
   d. underground pipes, flues and drains.

6. Money, Securities or Lottery Tickets — We do not cover money, securities or lottery tickets.

7. Personal Property of Landlord — We do not cover under Building Coverage, property in apartments or rooms you furnish as a landlord, other than personal property used for maintenance or service of the building.

8. Personal Property of Others — We do not cover personal property owned by others.

9. Property More Specifically Insured — We do not cover property which is more specifically insured in whole or in part by any other insurance. We do cover the amount in excess of the amount due from the more specific insurance.

10. Trees, Shrubs and Plants — We do not cover trees, shrubs and plants, including lawns and growing crops.

11. Vehicles, Aircraft and Watercraft — We do not cover:

    a. vehicles designed for use on public roads;
    b. aircraft; or
    c. watercraft, including motors, equipment and accessories, while afloat.

12. Water — We do not cover underground or surface water.

| SUPPLEMENTAL | PROPERTY |
|---|---|
| **COVERAGES** | |

We provide the following extensions of **your** Property Coverages.

Unless otherwise stated, each supplemental coverage:

   a. applies for loss caused by a Peril Covered;
   b. applies only at the described premises; and
   c. is an additional amount of insurance.

1. We provide the following extensions of either Coverage A — Buildings or Coverage B — Business Personal Property:

   a. Antennas — **You** may apply an amount up to $500 to cover **your** outdoor radio, television, satellite, dish-type or other antennas, including their masts, towers or lead-in wiring.
   b. Awnings, Canopies — **You** may apply an amount up to $1,000 to cover **your** outdoor awnings and canopies of fabric or slat construction or their supports.
   c. Fences — **You** may apply an amount up to $1,000 to cover fences. We only cover loss caused by aircraft, civil commotion, explosion, fire, lightning or riot.
   d. Fire Department Service Charges — **You** may apply an amount up to $1,000 to cover **your** liability, assumed by contract or agreement prior to the loss, for fire department service charges.

   This coverage is limited to the charges incurred when the fire department is called to save or protect covered property from a peril covered.

   e. Signs — **You** may apply an amount up to $1,000 to cover outdoor signs.

2. We provide the following extensions of Coverage A — Buildings and Coverage B — Business Personal Property.

   a. Debris Removal — **We** cover the cost of removing debris of the covered property caused by a peril covered. This coverage does not include costs to:

      1) extract pollutants from land or water; or
      2) remove, restore or replace polluted land or water.

   Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor or waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

   **We** will not pay any more under this debris removal coverage than 25 percent of the amount we pay for the direct loss or damage. We will not pay more for loss to property and debris removal combined than the limit of insurance for the property.

   However, we will pay an additional amount of debris removal expense up to $5,000 when the

© Copyright 1987 AAIS

Case ID: 191003548

debris removal expenses exceeds 25 percent of the amount **we** pay for direct loss or damage or when the loss to property and debris removal combined exceeds the limit of insurance for the property.

**We** will not pay any expenses unless they are reported to **us** within 180 days of the direct physical loss or damage to covered property.

b. Removal — **We** cover loss to covered property while removed from the insured location for preservation from damage caused by a peril covered. This coverage applies for up to 10 days, but does not extend past the expiration of the policy.

c. Repairs — **We** cover the cost of repairs that are reasonable and necessary to protect covered property from further damage after damage resulting from a peril covered. **We** will not pay more for loss to property and repairs combined than the limit of insurance for the property.

3. **We** provide the following extensions of Coverage A — Buildings:

a. Building Coverage — Off Premises — **You** may apply an amount up to $5,000 to property covered while temporarily at locations that **you** do not own, control, rent or lease. **We** only cover loss at such locations within the **basic territory**. This coverage does not include property while in transit.

b. Buildings — Newly Acquired — **You** may apply an amount up to 25 percent of the limit of insurance, but not exceeding $250,000, to cover **your** buildings or structures being built or that **you** acquire. This coverage is for up to 30 days after construction is started or **you** acquire the building, but not beyond the expiration of the policy. **We** only cover loss at such locations within the **basic territory**. Additional premium will be charged from the date construction is started or the date **you** acquire the building.

c. Trees, Shrubs and Plants — **You** may apply an amount up to $1,000 to cover outdoor trees, shrubs and plants. **We** only cover loss caused by aircraft, civil commotion, explosion, fire, lightning or riot. This coverage is limited to $250 on any one tree, shrub or plant, including debris removal expense.

4. **We** provide the following extensions of Coverage B

— Business Personal Property:

a. Personal Effects — **You** may apply an amount up to $500 to cover household and personal effects owned by **you** or **your** employees, officers or partners. This coverage is limited to $100 for property owned by any one person.

b. Personal Property — Acquired Locations — **You** may apply an amount up to 10 percent of the limit of insurance, but not exceeding $20,000, to property covered at locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

**We** only cover loss at such locations within the **basic territory**. Additional premium will be charged from the date **you** acquire the locations.

c. Personal Property — Off Premises — **You** may apply an amount up to $5,000 to property covered while temporarily at locations that **you** do not own, control, rent or lease. **We** only cover loss at such locations within the **basic territory**. This coverage includes property while in transit. **We** do not cover theft loss from unattended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence that the entry was forced.

d. Personal Property of Others — **You** may apply an amount up to $2,500 to cover personal property of others in **your** care. This coverage is only for the benefit of the owners of the personal property.

e. Valuable Papers and Records — **You** may apply an amount up to $1,000 to cover the cost of research or other expenses necessary to reproduce, replace or restore **your** valuable papers and records.

## COVERAGE C — LOSS OF INCOME

**We** provide the Earnings and Extra Expense Coverage shown below when **your** business is necessarily interrupted by loss or damage to real or personal property caused by a peril covered during the policy period. This coverage applies only when the loss or damage to real or personal property is at the described premises or in the open within 100 feet thereof.

© Copyright 1987 AAIS
Case ID: 191003548

We will pay only the loss of earnings and extra expenses incurred within 12 consecutive months after the loss or damage to property. When a limit of insurance is shown on the Declarations, we will not pay more for earnings and extra expenses combined than the limit.

## EARNINGS

We cover your actual loss of net income normally earned by your business and payroll expense, taxes, interest, rents and other operating expenses normally incurred by your business. Net income means profit or loss before income tax.

We cover only such expenses as are necessary during this interruption of business. Consideration will be given to continuation of payroll and other expenses to the extent necessary to resume your business with the same quality of service that existed before the loss.

We cover your loss for the time it should reasonably take to resume your business, but no longer than the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage. This loss is not limited by the expiration date of the policy.

You must do all you can to reduce the loss. We do not cover any increase in loss due to your failure to use reasonable efforts to resume complete or partial business. This includes making use of other locations and property to reduce the loss.

In determining a loss, we will consider the experience of your business before the loss and the probable experience had no loss occurred.

## EXTRA EXPENSES

We cover the necessary extra expenses that you incur in order to continue as nearly as practical your normal business following damage by a peril covered.

We cover your extra expenses for the time it should reasonably take to resume your normal business, but no longer than the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage. The loss is not limited by the expiration date of the policy.

You must do all you can to resume your business and to reduce the loss. We do not cover any increase in loss due to your failure to use reasonable efforts to resume complete or partial business. This includes making use of other locations and property to reduce the loss.

The salvage value of any property bought for temporary use shall be deducted from the extra expenses.

The following additional exclusions and limitations are applicable to Coverage C — Loss of Income.

1. Delayed Rebuilding, Repairing or Replacement — We do not cover any loss beyond the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage.

2. Electronic Equipment — We do not cover earnings loss caused by loss or damage to media, programs or records for electronic data processing or electronically controlled equipment beyond 60 consecutive days, or the time necessary to rebuild, repair or replace other damaged property, whichever is greater.

3. Environmental Damage — We do not cover any increase in loss caused by any law, regulation, or decree that regulates the prevention, control, repair, decontamination, clean-up or restoration of environmental damage.

4. Fire Extinguishment — We do not cover expenses to put out a fire.

5. Leases, Licenses, Contracts or Orders — We do not cover any increase in loss due to the suspension, lapse or cancellation of leases, licenses, contracts or orders.

   We do cover such loss resulting directly from the interruption of your business, but not beyond the time the business could have been resumed.

6. Property Damage — We do not cover the normal cost of repair, replacement or restoration of property.

   We will cover expenses in excess of normal that you necessarily incur to reduce the loss, but only to the extent that they reduce the loss under this coverage.

7. Records — We do not cover the cost of research or other extra expense necessary to replace records, including electronic data processing or electronically controlled equipment programs, data or media.

   We will cover expenses in excess of normal that

## EXCLUSIONS AND LIMITATIONS

© Copyright 1987 AAIS

Case ID: 191003548

**you** necessarily incur to reduce loss, but only to the extent that they reduce the loss under this coverage.

8. Strikes, Protests and Other Interference — **We** do not cover any increase in loss due to interference by strikers or other persons at the described premises. This applies to interference with rebuilding, repairing or replacing property or with the resumption of **your** business.

## SUPPLEMENTAL LOSS OF INCOME COVERAGES

We provide the following extensions of Coverage C — Loss of Income:

1. Alterations and New Buildings — **We** extend **your** coverage to include loss caused by damage to additions, alterations and new buildings under construction at the described premises by a peril covered. **We** cover **your** loss for the delay in using such additions, alterations and new buildings starting from the time business would have begun had no damage occurred. This does not increase the limit of insurance.

2. Interruption by Civil Authority — **We** extend **your** coverage to include loss while access to **your** premises is specifically denied by an order of a civil authority. This order must be a result of damage to property in the immediate vicinity and caused by a peril covered. This extension is limited to two consecutive weeks. This does not increase the limit of insurance.

3. Newly Acquired Locations — **We** extend **your** coverage for an amount up to $100,000, to include loss caused by damage to locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

   **We** only cover loss at such locations within the **basic territory** and caused by a peril covered. Additional premium will be charged from the date **you** acquire the locations.

   This is an additional amount of insurance.

4. Period of Loss Extension — **We** extend **your** coverage to cover loss for the time from the date the property that incurred the loss or damage is rebuilt, repaired or replaced, until the date **you** could reasonably resume **your** normal business, or

the end of 30 consecutive days, whichever is earlier. This does not increase the limit of insurance.

## PERILS COVERED

The Perils Covered apply to Coverage A — Buildings, Coverage B — Business Personal Property and Coverage C — Loss of Income.

**We** insure against risks of direct physical loss, except as excluded or limited.

Specified Perils — When reference is made to "specified perils," we mean aircraft; breakage of building glass; civil commotion; collapse of buildings; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; sinkhole collapse; smoke; sonic boom; vandalism; vehicles; volcanic action; water damage; weight of ice, snow or sleet; and windstorm, all except as excluded or limited.

## PERILS NOT COVERED EXCLUSIONS AND LIMITATIONS

A. **We** do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   1. Civil Authority — **We** do not cover loss caused by order of any civil authority, including seizure, confiscation or destruction of property.

      **We** will cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

   2. Earth Movement or Volcanic Eruption — **We** do not cover loss caused by any earth movement (other than sinkhole collapse) or caused by eruption, explosion or effusion of a volcano.

      Earth movement includes, but is not limited to, earthquake; landslide; mudflow; mudslide; or sinking, rising or shifting of earth.

      Sinkhole collapse means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

      **We** will cover direct loss by fire, explosion or volcanic action resulting from either earth

© Copyright 1987 AAIS

Case ID: 191003548

movement or eruption, explosion or effusion of a volcano.

Volcanic action means:

a. airborne volcanic blast or airborne shock waves;
b. ash, dust or particulate matter; or
c. lava flow

All volcanic eruptions that occur within a 72-hour period shall be considered a single loss.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss to the covered property.

3. Nuclear Hazard — **We** do not cover loss caused by nuclear hazard. This means nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled. Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. This exclusion does not apply to direct loss by fire resulting from nuclear hazards.

4. Ordinance or Law — **We** do not cover loss or increased cost caused by enforcement of any code, ordinance or law regulating the use, construction, repair or demolition of any building or structure.

5. Utility Failure — **We** do not cover loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the described location. Interruption includes reduced voltage, low pressure or other interruptions of normal services.

We will cover the direct loss by a peril insured against which occurs on the described premises as a result of any power interruption.

6. War — **We** do not cover loss caused by war, including undeclared war; civil war; insurrection; rebellion; revolution; warlike act by a military force or military personnel; or destruction, seizure or use of property for a military purpose. **We** do not cover loss due the consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

7. Water Damage — **We** do not cover loss caused by:

a. flood, surface water, waves, tidal water, overflow of a body of water or spray from any of these whether wind driven or not;
b. water which backs up through sewers or drains; or
c. water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through or into a building, sidewalk, driveway, foundation, swimming pool or other structure.

We will cover the direct loss by fire, explosion or sprinkler leakage which may result.

B. **We** do not pay for loss or damage if one or more of the following exclusions apply to the loss:

1. Animals — **We** do not cover loss caused by or resulting from animals, including birds and insects. **We** will cover any resulting loss caused by "specified perils."

We do not cover loss to animals, including birds and insects, except death or destruction of animals held for sale caused by "specified perils."

2. Boilers - Steam — **We** do not cover loss to steam boilers, steam pipes, steam turbines or steam engines caused by any condition or occurrence within such equipment, including bursting, cracking, exploding or rupturing. This exclusion does not apply to loss or damage caused by explosion of gas or fuel in the firebox, combustion chamber or flues.

3. Building Materials — **We** do not cover under the Buildings Coverage loss by theft of building materials and supplies that are not attached to buildings.

We will cover loss caused by looting and pillaging at the time and place of a riot or civil commotion.

4. Collapse — **We** do not cover loss by collapse that results from an excluded cause or event.

5. Contamination — See Pollutants.

6. Criminal, Fraudulent or Dishonest Act — **We** do not cover loss caused by or resulting from fraudulent, dishonest or criminal acts committed

© Copyright 1987 AAIS

Case ID: 191003548

by **you**, any employees while working or otherwise, any associates or agents. This includes loss caused by **your** partners, officers, directors, trustees, joint adventurers or any persons to whom property may be entrusted, whether working alone or with others.

7. Defects, Errors and Omissions — **We** do not cover loss which results from one or more of the following:

   a. an act, error or omission (negligent or not) relating to:

      1) land use;
      2) the design, specification, construction workmanship, installation or maintenance of property;
      3) planning, zoning, development, siting, surveying, grading or compaction; or
      4) maintenance of property (including land, structures or improvements);

      whether on or off the premises;

   b. a defect, a weakness, the inadequacy, a fault or unsoundness in materials used in construction or repair, whether on or off the premises.

   In addition, we do not cover loss to Business Personal Property caused by deficiency or defects in design, specifications, materials or workmanship, or caused by or resulting from latent or inherent defects.

   **We** will cover any resulting loss caused by an insured peril unless the resulting loss itself is excluded.

8. Deterioration — **We** do not cover loss caused by or resulting from deterioration including corrosion, decay, fungus, mildew, mold, rot or rust.

   **We** will cover any resulting loss caused by "specified perils."

9. Disappearance — **We** do not cover unexplained or mysterious disappearance, or shortage discovered on taking inventory.

10. Electrical Currents — **We** do not cover loss caused by or resulting from arcing or by electrical currents other than lightning. If a fire results, **we** will cover only the damage caused by fire.

11. Explosion — **We** do not cover loss caused by or resulting from explosion of steam boilers, pipes, turbines or engines that **you** own or lease or that are operated under **your** control. This exclusion

does not apply to loss or damage caused by explosion of gas or fuel in the firebox, combustion chamber or flues.

If a fire results, **we** will cover only the damage caused by the fire.

12. Falling Objects — **We** do not cover, under "specified perils," loss caused by or resulting from falling objects to personal property in the open or to the interior of buildings or personal property inside buildings unless the exterior of the roof or walls are first damage by the falling objects.

13. Freezing — **We** do not cover water damage caused by or resulting from freezing of plumbing, heating, air-conditioned systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain heat in the building or to turn off water and drain the equipment, if heat is not maintained.

   **We** do not cover water damage caused by or resulting from freezing of fire protection systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain conditions necessary for the proper operation of the fire protection equipment.

14. Furs — **We** do not cover furs or fur garments for loss or damage by theft for more than $2,500 total in any one occurrence.

15. Glass Breakage — **We** do not cover building glass breakage loss for more than $100 for any plate, pane, multiple plate insulating unit, heating pane, jalousie, louver or shutter, or more than $500 in any one occurrence. These limits do not apply to loss by "specified perils" other than breakage of building glass or vandalism.

16. Glassware — Fragile Articles — **We** do not cover breakage of fragile articles, except as a result of "specified perils." This exclusion applies to articles such as glassware, statuary, porcelains and bric-a-brac. **We** will cover the breakage of bottles or other containers held for

© Copyright 1987 AAIS
Case ID: 191003548

sale, and lenses of photographic and scientific instruments.

17. Hot Water Boilers or Heaters — **We** do not cover loss to hot water boilers or heaters caused by any condition or occurrence within such equipment other than an explosion. This exclusion includes bursting, cracking or rupturing.

18. Increased Hazard — **We** do not cover loss occurring while the hazard has been materially increased by any means within **your** knowledge or control.

19. Jewelry, Watches, Jewels, Pearls and Precious Stones and Metals — **We** do not cover more than $2,500 total in any one occurrence for loss or damage by theft of jewelry; watches; watch movements; jewels; pearls; precious or semiprecious stones; gold, silver or other precious metals; or items consisting primarily of precious metals. This limitation does not apply to items of jewelry or watches worth $50 or less.

20. Neglect — **We** do not cover loss caused by or resulting from **your** neglect to use all reasonable means to save covered property at and after the time of loss.

We do not cover loss or damage caused by or resulting from **your** neglect to use all reasonable means to save and preserve covered property when endangered by a peril covered.

21. Patterns, Dies, Molds, Models and Forms — **We** do not cover more than $2,500 total in one occurrence for loss or damage by theft to patterns, dies, molds, models or forms.

22. Pollutants — **We** do not cover loss caused by or resulting from release, discharge or dispersal of pollutants unless the release, discharge or dispersal is caused by "specified perils."

Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor or waste. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

We will cover any resulting loss caused by "specified perils."

23. Protective Safeguards — **We** do not cover losses occurring while protective safeguards

that **you** control are not in working condition. This exclusion applies only to protective safeguards shown on the Declarations and to the property, premises and perils affected. This lasts until the safeguards are back in order.

24. Seepage — **We** do not cover loss caused by, or resulting from, continuous or repeated seepage or leakage from within a plumbing, heating or air-conditioning system or domestic appliance.

25. Settling, Cracking, Shrinking, Bulging or Expanding — **We** do not cover loss caused by or resulting from settling, cracking, shrinking, bulging or expanding of pavements, footings, foundations, walls, ceilings or roofs. We will cover any resulting loss by "specified perils."

26. Smog, Smoke, Vapor or Gas — **We** do not cover loss caused by or resulting from smog, smoke, vapor or gas from agricultural or industrial operations.

27. Stamps, Tickets, Letters of Credit — **We** do not cover more than $250 total in any one occurrence for loss to stamps, tickets or letters of credit. This limitation does not apply to "specified perils."

28. Temperature — Humidity — **We** do not cover loss to personal property caused by or resulting from dampness, or changes in or extremes of temperature. We will cover any resulting loss caused by "specified perils."

29. Vacancy — Unoccupancy — **We** do not cover loss occurring while the building has been vacant beyond 60 consecutive days.

We do not cover loss occurring while the building has been unoccupied for more than 60 consecutive days or for more than the usual or incidental unoccupancy period for the described premise, whichever is longer.

Unoccupied means that the customary activities or operations of the described occupancy are suspended, but personal property has not been removed. The building shall be considered vacant and not unoccupied when the occupants have moved, leaving the building empty except for limited personal property.

30. Valuable Papers and Records — **We** do not cover loss to valuable papers or records except by "specified perils." This limitation applies to

© Copyright 1987 AAIS

account books, bills, card index systems, data processing media, deeds, drawings, evidences of debt, manuscripts and other records.

31. Voluntary Parting — **We** do not cover loss caused by or resulting from voluntary parting with title or possession of any property because of any fraudulent scheme, trick or false pretense.

32. Wear — Breakdown — **We** do not cover loss caused by or resulting from wear and tear, mechanical breakdown, centrifugal force, marring or scratching.

    **We** will cover any resulting loss caused by "specified perils."

33. Weather — **We** do not cover loss to personal property in the open caused by rain, snow, ice or sleet.

    **We** do not cover loss to the interior of buildings caused by rain, snow, sand or dust unless entering through openings made by "specified perils."

    **We** do not cover when outdoors: radio, television, satellite, dish-type or other antennas or their masts, towers or lead-in wiring; awnings or canopies of fabric or slat construction or their supports; gutters and downspouts; outdoor fixtures; or personal property for loss caused by the weight of ice, snow or sleet, except as a result of collapse of the building.

    **We** do not cover loss resulting from weather conditions if the weather conditions contribute in any way with exclusions A. 1. through A. 7. **We** do pay any ensuing loss not excluded in this policy.

34. Work or Operations — **We** do not cover loss to property caused by or resulting from actual work or operations. This includes altering, constructing, installing, manufacturing, processing, servicing or testing. **We** will cover any resulting loss caused by "specified perils."

## WHAT MUST BE DONE IN CASE OF LOSS

1. Notice — **You** must promptly notify **us** or **our** agent (in writing, if requested). **You** must notify the police if the loss is a result of a violation of a law.

2. Protect Property — **You** must take all reasonable steps to protect the covered property from further damage.

3. **Right of Recovery** — **We** are not liable for a loss if **you** do anything after the loss occurs to impair **our** right to recover, except for waivers permitted in the Other Property Coverage Conditions.

   If **we** make a payment under this coverage, **we** may require that **you** assign to **us** **your** right of recovery against any person for the loss to the extent of the payment for the loss. **You** must do everything necessary to make this assignment and secure **our** rights.

4. **Proof of Loss** — **You** must send us a statement of loss (under oath, if requested) within 60 days after the loss. This must include the following information:

   a. the time, place and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. **your** interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title or occupancy of the property covered during the policy period;

   e. detailed estimates for repair or replacement of covered property;

   f. available plans and specifications of buildings or structures;

   g. detailed estimates of any covered loss of income and expenses; and

   h. if requested, an inventory of damaged covered personal property showing in detail the quantity, description, cost and amount of the loss. **You** must attach to the inventory copies of all bills, receipts and related documents that substantiate the inventory.

5. **Examination** — Any insured must submit to examination under oath in matters connected with the loss as often as **we** reasonably request and give **us** sworn statements of the answers. If more than one person is examined, **we** have the right to examine and receive statements separately and not in the presence of the others.

BP-200                    — 11 —                    © Copyright 1987 AAIS
Case ID: 191003548

6. **Records — You** must produce records, including tax returns and bank microfilms of all canceled checks, relating to value, loss and expense and permit copies and extracts to be made of them as often as **we** reasonable request.

7. **Damaged Property — You** must exhibit the damaged property as often as **we** reasonably request.

8. **Volunteer Payments — You** must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

9. **Abandonment of Property — We** do not have to accept any abandonment of property.

## VALUATION OF PROPERTY LOSSES

The valuation of property losses shall be based upon the following provisions:

1. **Actual Cash Value —** When replacement cost is not indicated on the Declarations for Property Coverage, the loss payment will be based upon the actual cash value at the time of loss with a deduction for depreciation.

2. **Replacement Cost —** When replacement cost is indicated on the Declarations for Property Coverage, the loss payment will be based upon the replacement cost without any deduction for depreciation.

   This replacement cost provision does not apply to objects of art, rarity or antiquity, or property of others.

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount **you** spend to repair or replace the damaged or destroyed property.

   Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. **You** may make a claim for actual cash value and later for the replacement cost if **you** notify **us** of **your** intent within 180 days after the loss.

3. **Rebuilding, Repairing or Replacing —** The valuation of losses is limited to the cost to rebuild, repair or replace with property of equivalent kind and quality, to the extent practicable.

4. **Glass —** Glass will be valued at the cost of safety glazing material where required by code, ordinance or law.

5. **Merchandise Sold —** Merchandise that **you** have sold but not delivered will be valued at the selling price less all discounts and unincurred expenses.

6. **Valuable Papers and Records —** The valuation of valuable papers and records is the cost of blank materials.

7. **Tenant's Improvements —** Tenant's Improvements losses will be valued at the basis applicable to Business Personal Property (actual cash value or replacement cost) if repaired or replaced at **your** expense within a reasonable time.

   Tenant's improvement losses are not covered if repaired or replaced at another's expense.

   Tenant's improvements losses will be valued at a portion of **your** original cost if not repaired or replaced within a reasonable time. This portion is the ratio between the time remaining on **your** lease and the time between the installation or acquisition of the improvements and the end of **your** lease. Any renewal options in **your** lease are to be considered in valuation of **your** loss.

   **EXAMPLE:**
   Tenant's improvements installed at the beginning of a five year lease with a five year extension. The value of the damaged or destroyed property after three years is 70 percent of **your** original cost if not repaired or replaced.

8. **Pair or Set —** Loss to an article which is part of a pair or set will be a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

9. **Appraisal —** If **you** and **we** do not agree on the amount of the loss, either party may demand that the amount be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

 © Copyright 1987 AAIS

Case ID: 191003548

If the appraisers submit a written report of any agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three, sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**.

## LOSS PAYMENT

1. **Our Options — We** have the following options:

   a. pay the loss;

   b. rebuild, repair or replace with property of equivalent kind and quality, to the extent practicable, within a reasonable time;

   c. take all or any part of the damaged property at the agreed or appraised value.

   **We** must give **you** notice of **our** intent to rebuild, repair or replace within 30 days after receipt of a duly executed proof of loss.

2. **Insurable Interest — We** do not cover more than **your** insurable interest in any property.

3. **Your Losses — We** will adjust all losses with **you**. Payment will be made to **you** unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with **you** or the filing of an appraisal award with **us**.

4. **Property of Others —** Losses to property of others may be adjusted with **you**. **We** reserve the right to adjust with and pay owners. Payment to the owners satisfies **our** obligation to **you** for loss to this property. **We** may also choose to defend any suits arising from the owners.

5. **Deductible — We** pay only that part of **your** loss over the deductible amount stated on the Declarations in any one occurrence.

6. **Limit of Insurance — We** will not pay more than **our** limit of insurance for any loss.

7. **Automatic Increase —** The limits of insurance are increased when a percentage increase is shown on the Declarations. The increase shown is the annual percentage increase and applies proportionally from the date of the most recent limit. The increase applies only to the limits of insurance shown on the Declarations.

8. **Seasonal Increase —** The limits of insurance for Business Personal Property will automatically increase by 25 percent to provide for seasonal increase. This increase applies only if the limit of insurance is at least 100 percent of **your** average monthly values for the 12 months immediately preceding the date of the loss or damage.

   If **you** have been in business less than 12 months, the limit of insurance must be 100 percent of **your** average monthly values for the time **you** have been in business.

9. **Insurance Under More Than One Coverage —** If more than one coverage of this policy insures the same loss, **we** pay no more than the actual claim, loss or damage sustained.

10. **Insurance Under More Than One Policy —** If there is any other insurance which applies to a loss, **we** pay only for the excess of the amount due from such other insurance, whether collectible or not.

11. **Benefit To Others —** Insurance under Property Coverage shall not directly or indirectly benefit anyone having custody of **your** property.

## OTHER PROPERTY COVERAGE CONDITIONS

1. **Control of Property —** The Property Coverage is not affected by any act or neglect beyond **your** control.

2. **Death of an Individual Named Insured —** If **you** die, **your** rights and duties under the Property Coverage pass to **your** legal representative or other person having proper temporary custody of **your** property.

3. **Mortgage Provisions —** If a mortgagee (mortgage holder) is named in this policy, loss to buildings shall be paid to the mortgagee and **you** as interests appear. If more than one mortgagee is named, they shall be paid in order of precedence.

© Copyright 1987 AAIS
Case ID: 191003548

The insurance for the mortgagee continues in effect even when **your** insurance may be void because of **your** acts, neglect, or failure to comply with the coverage terms. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify **us**.

**We** will also notify the mortgagee if **we** cancel the policy. The cancellation conditions apply to the mortgagee.

**We** may request payment of the premium from the mortgagee, if **you** fail to pay the premium.

If **we** pay the mortgagee for a loss where **your** insurance may be void, the mortgagee's rights to collect that portion of the mortgage debt from **you** then belongs to **us**. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from **you**. As an alternative, **we** may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

4. **Recoveries —** If **we** pay **you** for the loss under the Property Coverage and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. **You** must notify **us** promptly if **you** recover property or receive payment.
   b. **We** must notify **you** if **we** recover property or receive payment.
   c. Any recovery expenses incurred by either are reimbursed first.

5. **Suit Against Us —** No suit to recover any loss may be brought against **us** unless:

   a. the **terms** of the Property Coverages have been fully complied with; and
   b. the suit is commenced within one year after the loss.

   If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

6. **Waiver of Right of Recovery — You** may waive **your** right of recovery in writing before a loss without voiding the coverage.

   **You** may waive **your** right of recovery in writing after a loss only to the following parties:

   a. someone insured by this policy;
   b. **your** tenant;
   c. a business firm owned or controlled by you; or
   d. a business firm which owns or controls **your** business.

© Copyright 1987 AAIS

Case ID: 191003548

# COMMERCIAL LIABILITY COVERAGES

This Liability Coverage Section contains the definitions, coverage descriptions, exclusions, limitations and conditions that apply to the Businessowners Liability Coverages.

## DEFINITIONS

1. **Auto** — This means a land motor vehicle, a trailer or a semi-trailer which is designed for use on public roads. **Auto** includes attached machinery and equipment.

2. **Basic Territory** — This means the United States of America, its territories and possessions, Canada and Puerto Rico.

3. **Bodily Injury** — This means bodily harm, sickness or disease sustained by a person and includes the required care and loss of services. **Bodily injury** includes death that results from bodily harm, sickness or disease.

4. **Coverage Territory** — This means:

   a. the **basic territory**;
   b. international waters and airspace, only if the **bodily injury** or **property damage** occurs in the course of travel to or from the **basic territory**;
   c. the world, if the injury or damage arises out of;

      1) **products you** have made or sold in the **basic territory**; or
      2) the activities of a person who normally resides in the **basic territory**, but is away for a short time on **your** business; and

      provided that **your** liability to pay damages has been determined:

      1) in a suit on the merits in the **basic territory**; or
      2) in a settlement that **we** have agreed to.

5. **Impaired Property** — This means tangible property (other than **your product** or **your work**):

   a. whose value has been decreased:

      1) because it includes **your product** or **your work** that is, or is believed to be, defective, deficient or dangerous: or
      2) because **you** failed to carry out the terms of a contract; and

   b. whose value can be restored:

      1) by the repair, replacement, adjustment or removal of **your product** or **your work**; or

2) by **your** fulfilling the terms of the contract.

6. **Incidental Contract** — This means a written:

   a. lease of premises;
   b. easement agreement (this does not include an agreement in connection with any construction or demolition operation on or adjacent to a railroad);
   c. promise to indemnify a municipality if required by an ordinance (this does not apply in connection with work done for the municipality);
   d. sidetrack agreement; or
   e. elevator maintenance agreement.

7. **Insured** — If shown on the Declarations as an "individual," **insured** means **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.

   If shown on the Declarations as a "partnership" or a "joint venture," **insured** means **you** and all **your** partners or members and their spouses, but only with respect to the conduct of the business.

   If shown on the Declarations as an "organization" (other than a partnership or a joint venture), **insured** means **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties. It also includes **your** stockholders, but only for their liability as such.

   **Insured** also includes:

   a. anyone, except **your** employees, while acting as **your** real estate manager;
   b. if **you** die during the policy period, **your** legal representative while acting within the scope of his duties as such, or a person who has custody of **your** property with respect to liability arising out of the maintenance or use of that property until **your** legal representative is appointed;
   c. with respect to the operation, with **your** permission, of mobile equipment:

      1) **your** employee in the course of employment. This does not apply to a fellow employee injured in the course of employment;

      2) any other person. This includes anyone legally liable for the conduct for such person but only:

         a) for liability arising out of the operation of the equipment; and

© Copyright 1987 AAIS

Case ID: 191003548

b) if there is no other insurance covering the liability available to them;

3) no one is an **insured** for property damage to property owned by, rented to, in the charge of, or occupied by **you**, or an employee of anyone who is an **insured** under paragraph c.

d. **your** employees, for acts within the scope of their employment by **you** (this does not include **your** executive officers). None of these employees are **insureds** for:

1) injury to **you** or to a fellow employee;
2) **property damage** to property owned by, rented to or loaned to employees, or any of **your** partners or members and their spouses (if **you** are a joint venture or a partnership).

e. any organization (other than a joint venture or a partnership) newly acquired or formed by **you**, and in which **you** have a majority interest.

Such an organization is not an **insured**:

1) if there is other similar insurance available to it; or
2) after 90 days immediately following that acquisition or formation; or
3) for **bodily injury** or **property damage** that occurred prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not shown on the Declarations as an **insured**.

8. **Limit** — This means the **limit** of liability that applies.

9. **Loading or Unloading** — This means the movement of property:

a. starting with the time it is removed from the point where it has been accepted for transit by **auto**, aircraft or watercraft;
b. continuing while it is in or on such vehicle; and
c. ending when it has been removed form the vehicle to its point of destination.

**Loading or Unloading** includes movement by any mechanical device attached to the vehicle.

10. **Occurrence** — This means an accident and includes repeated exposure to similar conditions.

11. Products/Completed Work Hazard —

a. **Products hazard** means **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of **your product** after physical possession of it has been relinquished to others.
b. **Completed work hazard** means **bodily injury** or **property damage** arising out of **your work**. It does not include **work** that has not been completed, or that has been abandoned.

**Your work** is deemed completed at the earliest of the following times:

1) when all **work** specified in **your** contract has been done;
2) when all **work** to be done at a job site has been completed if **your** contract includes work at more than one site; or
3) when **your work** at a job site has been put to its intended use by someone other than another contractor or subcontractor working on the same job site.

**Work** which requires further service, maintenance, correction, repair or replacement because of a defect or deficiency, but which is otherwise complete, shall be deemed completed.

c. Neither of these hazards include **bodily injury** or **property damage** arising out of:

1) the transportation of property, unless the injury or damage arises our of a condition in or on a vehicle, created by **loading or unloading;**
2) the presence of tools, uninstalled equipment or abandoned or unused materials; or
3) **products** or **work** for which the classification on the Declarations specifies "Including **Products/Completed Work**."

12. **Products** — This means goods or **products** manufactured, sold, handled, distributed or disposed of by **you**, others trading under **your** name, or a person or organization whose business or assets **you** have acquired.

© Copyright 1987 AAIS

Case ID: 191003548

Products includes:

a. warranties or representations made at any time with respect to the fitness, quality, durability or performance of **your products**; and
b. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or **products**.

Products does not include:

a. vending machines;
b. property that is rented to or placed for the use of others, but not sold; or
c. real property.

13. **Property Damage —** This means:

a. physical injury or destruction of tangible property; or
b. the loss of use of tangible property whether or not it is physically damaged.

14. **Terms —** This means all provisions, limitations, exclusions, conditions and definitions that apply.

15. **We, Us, Our —** These words mean the company providing this coverage.

16. **Your, Your —** These words mean the persons or organizations named on the Declarations.

17. **Your Work —** This means:

a. work or operations performed by **you** or on **your** behalf;
b. materials, parts and equipment **you** supply for such work or operations; and
c. written warranties or representations made at any time regarding quality, fitness, durability or performance of any of the foregoing.

## PRINCIPAL COVERAGES

We provide insurance for the following coverages indicated by a specific **limit** or premium charge on the Declarations.

### COVERAGE L — BODILY INJURY LIABILITY<br>PROPERTY DAMAGE LIABILITY

We pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence**.

This insurance applies only to **bodily injury** or **property damage** which occur:

1. within the **coverage territory**; and

2. during the policy period.

### COVERAGE M — MEDICAL PAYMENTS

We pay the medical expenses defined below for **bodily injury** caused by an accident:

1. on premises **you** own or rent;

2. on ways adjacent or next to premises **you** own or rent; or

3. arising out of **your** operations.

We pay such expenses regardless of fault but only if:

1. they arise out of an accident that occurred in the **coverage territory** and during the policy period; and

2. they are incurred and reported within one year of the accident.

Medical expenses means the reasonable and necessary expenses for:

1. medical, surgical, x-ray and dental services, including prosthetic devices and eyeglasses;

2. ambulance, hospital, professional nursing and funeral services; and

3. first aid at the time of the accident.

### COVERAGE N — PRODUCTS/COMPLETED WORK

We pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** arising out of the **Products/ Completed Work Hazard** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence**. This insurance applies only to **bodily injury** or **property damage** which occur:

1. within the **coverage territory**; and

2. during the policy period.

### COVERAGE 0 — FIRE LEGAL LIABILITY

We pay for **property damage** to buildings, or parts

BP-200                                — 17 —                    © Copyright 1987 AAIS

thereof, which **you** rent if the **property damage** is caused by fire for which **you** are legally liable. Buildings include fixtures permanently attached thereto.

All of the exclusions otherwise applicable to **property damage** do not apply to this coverage. However, **we** do not cover:

1. liability arising under any contract to indemnify any person or organization for damages by fire to the premises; or

2. liability arising out of **property damage** expected, directed or intended by an **insured**.

## INCIDENTAL LIABILITY COVERAGES

These coverages are subject to all the **terms** of the Principal Coverages. They do not increase the **limits** stated for the Principal Coverages.

### INCIDENTAL MEDICAL MALPRACTICE INJURY

**We** cover **bodily injury** arising out of the rendering or failure to render the following services:

1. medical, surgical, dental, x-ray or nursing services or treatment, or the furnishing of food or beverages in connection therewith; or

2. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

1. expenses incurred by an **insured** for first aid to others at the time of an accident;

2. an **insured** or an employee engaged in the business or occupation of providing any of the services described under 1. and 2. above; or

3. injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described in 1. and 2. above.

### MOBILE EQUIPMENT

**We** pay all sums for which an **insured** is legally liable for **bodily injury** or **property damage** resulting from mobile equipment, including attached equipment and machinery.

This coverage applies only to land motor vehicles that meet one or more of the following criteria:

1. Those which are used only on premises owned by or rented to **you** (premises includes adjoining ways).

2. Those which are designed primarily for use off public roads.

3. Those which travel on crawler treads.

4. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

    a. power cranes, shovels, loaders, diggers or drills;
    b. concrete mixers (this does not include the mix-in-transit type); and
    c. graders, scrapers, rollers and other road construction or repair equipment.

5. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto:

    a. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment);
    b. geophysical exploration, lighting and well servicing equipment; and
    c. cherry pickers and similar devices used to raise or lower workers.

This coverage does not apply to self-propelled vehicles with the following types of permanently attached equipment:

1. equipment designed primarily for snow removal, street cleaning, road maintenance other than road construction or resurfacing;

2. cherry pickers and similar devices used to raise or lower workers;

3. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment);

4. geophysical exploration, lighting and well servicing equipment.

**We** cover **bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraphs 2., 3. and 4. above.

© Copyright 1987 AAIS
Case ID: 191003548

We will provide any liability, uninsured motorists, no fault or other coverages required by any motor vehicle insurance law. We will provide the required **limits** for such required coverage.

## DEFENSE COVERAGE

Payments under this coverage are in addition to the **limits** for the Commercial Liability Coverage.

We have the right and duty to defend a suit seeking damages for **bodily injury** or **property damage** which may be covered under the Commercial Liability Coverage. **We** may make investigations and settle claims or suits **we** decide are appropriate.

Suit includes any alternative dispute resolution proceeding involving **bodily injury** or **property damage** to which:

1. **you** must submit; or

2. **you** submit with **our** consent.

We do not have to provide defense after **we** have paid an amount equal to the **limit** as the result of:

1. a judgment; or

2. a written settlement agreed to by **us**.

If **we** defend a suit, **we** will pay:

1. The costs taxed to the **insured**.

2. The expenses incurred by **us**.

3. The actual loss of earnings by an **insured** for the time spent away from work at **our** request. **We** pay up to $100 per day.

4. The necessary expenses incurred by an **insured** at **our** request.

5. Pre-judgment interest awarded against any **insured** on that part of the judgment **we** pay. If **we** offer to pay the **limit**, **we** will not pay any pre-judgement interest based on that period of time after the offer.

6. The interest which accrues beginning with entry of a judgment and ending when **we** tender, deposit in court, or pay up to **our limit**.

7. The cost of appeal bonds or bonds for the release of attachments up to **our limit**. **We** are not required to apply for or furnish such bonds.

8. The cost, up to $500, for bail bonds required of an **insured** because of an accident or traffic violation

arising out of the use of a vehicle to which Coverage L applies. **We** are not required to apply for or furnish such bonds.

## EXCLUSIONS THAT APPLY TO ALL COVERAGES

**We** do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

1. **We** do not pay for **bodily injury** or **property damage** which is expected by, directed by, or intended by an **insured**. This exclusion does not apply to **bodily injury** that arises out of the use of reasonable force to protect people or property.

2. **We** do not pay for **bodily injury** or **property damage** liability which is assumed under a contract or an agreement. This exclusion does not apply to an **incidental contract**.

3. **We** do not pay for **bodily injury** or **property damage** that arises out of the rendering or the failure to render a professional service, except as provided by the coverage under Incidental Medical Malpractice Injury.

4. **We** do not pay for **bodily injury** or **property damage** that arises out of the use of mobile equipment in or in the practice or preparation for racing, speed, pulling or pushing, demolition or stunt activities or contests.

5. **We** do not pay for **bodily injury** or **property damage** that arises out of transporting mobile equipment by an **auto** owned by, operated by, rented to or loaned to an **insured**.

6. **We** do not pay for **bodily injury** or **property damage** that arises out of ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, **loading or unloading** of:

a. an aircraft;
b. an **auto**, except as provided under the Incidental Coverage — Mobile Equipment. This exclusion does not apply to the parking of an **auto** on premises owned by, rented to or controlled by **you** or on the ways immediately adjoining if the **auto** is not owned by or rented

BP-200        — 19 —        © Copyright 1987 AAIS

Case ID: 191003548

to or loaned to an **insured**;

c. a watercraft. This exclusion does not apply if the watercraft:

1) is on shore on premises owned by, rented to or controlled by **you**; or

2) is not owned by **you** and is:

a) less than 26 feet in length, and

b) not being used to carry persons or property for a charge;

d. mobile equipment, except as provided under Incidental Coverage — Mobile Equipment.

Exclusion 7. applies if **you** are in the business of manufacturing, distributing, selling or serving alcoholic beverages.

7. **We** do not pay for **bodily injury** or **property damage** for which an **insured** may be held liable by reason of:

a. causing or contributing to the intoxication of a person;

b. the furnishing of alcoholic beverages to a person under the influence of alcohol; or

c. a law or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

8. **We** do not pay for:

a. **bodily injury** to an employee of an **insured** if it occurs in the course of employment; or

b. consequential injuries to a spouse, child, parent, brother or sister of such injured employee.

Exclusion 8 applies where:

1) the **insured** is liable either as an employer or in any other capacity; or

2) there is an obligation to fully or partially reimburse a third person for damages arising out of paragraph 8.a. or 8.b. above.

Exclusion 8 does not apply to liability assumed by an **insured** under an **incidental contract**.

9. **We** do not pay for **bodily injury** or **property damage**:

a. arising wholly or partially out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

1) at or from premises **you** own, rent, use or occupy, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be;

2) at or from premise used by **you**, or for **you** or others, for the handling, storage, disposal, processing or treatment of waste;

3) occurring in the transporting, handling, treatment, storage, disposal or processing of any material, including waste, by or for **you** or by any person or organization for whom **you** may be legally liable; or

4) at or from any premises where **you** or any contractor or subcontractor, directly or indirectly under **your** control, are working or have completed work:

a) if the pollutant is on the premises in connection with such work, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be; or

b) if the work in any way involves testing, monitoring, clean-up, containing, treating or removal of pollutants.

b. due to any loss, cost or expense arising out of governmental action or inaction in any way the testing, monitoring, clean-up, containing, treating or removal of pollutants.

Pollutants means:

1) any solid, liquid, gaseous, thermal, electrical emission (visible or invisible) or sound emission pollutant, irritant or contaminant; or

2) waste, including materials to be recycled, reclaimed or reconditioned as well as disposed of.

10. **We** do not pay for **bodily injury** if benefits are provided or are required to be provided by an **insured** under a workers' compensation, nonoccupational disability, occupational disease or like law.

11. **We** do not pay for **bodily injury** or **property damage** that arises out of war. War includes undeclared war, civil war, insurrection, rebellion or

© Copyright 1987 AAIS

Case ID: 191003548

revolution, or an act or condition of war.

## ADDITIONAL EXCLUSIONS THAT APPLY TO PROPERTY DAMAGE LIABILITY

1. We do not pay for **property damage** to property owned by, occupied by or rented to an **insured**, except as covered under Coverage O.

2. We do not pay for **property damage** to premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises. This exclusion does not apply if the premises are **your work** and were not occupied, rented or held for rental by **you**.

3. We do not pay for **property damage** to property used by or loaned to **you** . This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

4. We do not pay for **property damage** to property in the care, custody or control of an **insured**. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

5. We do not pay for **property damage** to that specific part of real property on which work is being performed by:

   a. **you**, or
   b. a contractor or subcontractor working on **your** behalf,

   if the **property damage** arises out of such work. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

6. We do not pay for **property damage** to that specific part of any property that must be restored, repaired or replaced because of faulty workmanship. This exclusion does not apply to:

   a. **property damage** covered under the **Products/ Completed Work Hazard**; or
   b. liability assumed under a written sidetrack agreement.

7. We do not pay for **property damage** to **your products** if the damage is caused by the **product** or a part of it.

8. We do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the **Products/Completed Work Hazard**. This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

9. We do not pay for **property damage** to property that has not been physically injured or destroyed, or to **impaired property** that results from:

   a. a delay or failure to perform a contract by **you** or one acting on **your** behalf; or
   b. a defect, deficiency, inadequacy or unsafe condition in **your product** or **work** performed by **you** or on **your** behalf.

   This exclusion does not apply to the loss of use of property resulting from sudden and accidental injury to or destruction of **your products** or **your work** after the **products** or **work** have been put to their intended use.

10. We do not pay for any loss or expense incurred by **you** or anyone else arising out of the loss of use, disposal, withdrawal or recall (including any expenses involved in the withdrawal or recall) of **your products, your work, or impaired property**. This applies when the loss of use, disposal, withdrawal or recall was because of a known or suspected defect, deficiency or unsafe condition.

## ADDITIONAL EXCLUSIONS THAT APPLY TO MEDICAL PAYMENTS

1. We do not pay for medical expenses for **bodily injury** to an **insured**.

2. We do not pay for medical expenses for **bodily injury** to:

   a. a person hired by or on behalf of any **insured** to do work for an **insured**; or
   b. a tenant of an **insured**.

3. We do not pay for medical expenses for **bodily injury** to a person injured on the part of the premises owned by or rented to **you** that the person normally occupies.

4. We do not pay for medical expenses for **bodily injury** to a person while taking part in athletic activities.

5. We do not pay for medical expenses for **bodily injury** included in the **Products/Completed Work Hazard**.

                          © Copyright 1987 AAIS

Case ID: 191003548

6. We do not pay for medical expenses for **bodily injury** to any member of the named **insured**, if the named **insured** is a club.

7. We do not pay for medical expenses for **bodily injury** to a guest of the named **insured**, if the named **insured** is a hotel, motel or tourist court.

8. We do not pay for medical expenses for **bodily injury** to a person if benefits are provided or required to be provided under any workers' compensation, nonoccupational disability, occupational disease or like law.

9. We do not pay for medical expenses for **bodily injury** to a student, camper, patient or inmate enrolled in a program of any facility owned or operated by **you** or on **your** behalf.

## WHAT MUST BE DONE IN CASE OF LOSS

1. Notice —

   a. In the case of an **occurrence**, or if an **insured** becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverage, the **insured** must promptly give notice to **us** or **our** agent.
   b. The notice to **us** must state:

      1) the **insured's** name;
      2) the policy number;
      3) the time, the place and the circumstances of the **occurrence**; and
      4) the names and addresses of all known potential claimants and witnesses.

2. Volunteer Payments — An **insured** must not make payments or assume obligations or other costs except at the **insured's** own cost. This does not apply to first aid to others at the time of **bodily injury**.

3. Other Duties —

   a. If a claim is made or suit is brought, the **insured** must:

      1) promptly send to **us** copies of all legal papers, demands and notices; and
      2) at **our** request, assist in:

         a) a settlement;
         b) the conduct of suits. This includes the attendance at trials or hearings;
         c) the enforcing of rights against all parties

who may be liable to an **insured** for the injury or damage;
   d) the securing of and giving of evidence; and
   e) obtaining the attendance of all witnesses.

   b. In the case of a medical payments loss:

      1) the injured person (or one acting on such person's behalf) must:

         a) give **us** written proof of claim (under oath if requested) as soon as practicable; and
         b) give **us** permission to get copies of the medical records;

      2) The injured person must submit to medical exams by doctors chosen by **us** when and as often as we may reasonably require.

## HOW MUCH WE PAY

1. The **limits**, shown on the Declarations and subject to the following conditions, are the most we pay regardless of the number of:

   a. **insureds** under the Commercial Liability Coverage;
   b. persons or organizations who sustain injury or damage; or
   c. claims made or suits brought.

   The payment of a claim under Coverage M does not mean that we admit we are liable under other coverages.

2. The General Aggregate is the most we will pay during a policy period for the sum of:

   a. all damages under Coverage L, except damages due to injury or damage included in the **Products/Completed Work Hazard**; and
   b. all medical expenses under Coverage M.

3. The Aggregate Limit shown for **Products/Completed Work Hazard** is the most we will pay during a policy period under Coverage N for damages due to injury or damage included under the **Products/Completed Work Hazard**.

4. The Each Occurrence Limit, subject to the General Aggregate Limit and the **Products/Completed Work Hazard** Limit, is the most we will pay for the total of:

   a. damages under Coverage L and N; and

© Copyright 1987 AAIS

Case ID: 191003548

b.  medical expenses under Coverage M;

due to all **bodily injury** and **property damage** arising out of a single **occurrence**.

5.  Subject to the Each **Occurrence Limit** and General Aggregate **Limit, our limit** for **property damage** covered under Fire Legal Liability is $50,000 for each **occurrence** unless otherwise shown on the Declarations.

6.  Subject to the General Aggregate and Each **Occurrence Limit**, the Medical Payment **Limit** is the most that **we** will pay under Coverage M for all medical expenses because of **bodily injury** sustained by any one person.

The General Aggregate and Aggregate Limit shown for **Products/Completed Work Hazard** apply separately to each consecutive 12-month period beginning with the inception date of the Commercial Liability Coverage shown on the Declarations. They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Liability Coverage has been extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining **limits**.

## CONDITIONS

1.  **Bankruptcy —** Bankruptcy or insolvency of an **insured** does not relieve **us** of **our** obligations for Commercial Liability Coverage.

2.  **Suit Against Us —** No suit may be brought against **us** unless:

    a.  all the **terms** of the Commercial Liability Coverage have been complied with; and
    b.  the amount of the **insured's** liability has been determined by:

        1)  a final judgment against an **insured** as a result of a trial; or
        2)  a written agreement by the **insured,** the claimant and **us.**

    No person has a right under the Commercial Liability Coverage to join **us** or implead **us** in actions that are brought to determine an **insured's** liability.

3.  **Subrogation —**If **we** pay under the Commercial Liability Coverage, **we** may require from an **insured** an assignment of any right of recovery. **We** are not liable under the Commercial Liability

Coverage if any **insured** has impaired **our** right to recover. An **insured** may waive its right to recover, in writing, before an **occurrence** takes place without voiding coverage.

4.  **Commercial Liability Coverage Premium —** If the premium is shown on the Declarations as a deposit premium, **we** will compute the final earned premium at the end of each audit period shown on the Declarations. If it is more than the deposit premium paid by **you**, **we** will bill **you** for the difference. If the final earned premium is less than the deposit premium paid by **you, we** will return the difference to **you. You** must maintain records of information that is necessary for computing the premium. Copies of the records must be sent to **us** at the end of the audit period or when requested by **us**.

5.  **Insurance Under More Than One Policy —** (Applies to all coverages except Coverage M — Medical Payments.)

    a.  Insurance under this Commercial Liability Coverage is primary except as provided under paragraph 5.c. below, or unless otherwise stated. The amount of **our** liability is not reduced because of other insurance which applies to the loss on other than a primary basis.
    b.  If the other insurance is also primary, **we** will share in the loss as follows:

        1)  If the other insurance provides for contribution by equal shares, **we** will pay equal amounts with other insurers until:

            a)  the lowest applicable **limit** under any one policy is reached; or
            b)  the full amount of the loss is paid. If part of the loss remains unpaid, **we** will pay an equal share with the other insurers until the full amount of the loss is paid, or until **we** have paid **our limit** in full.

        2)  If the other insurance does not provide for contribution by equal shares, **we** will pay no more than that proportion of the loss to which the applicable **limit** under this policy for such loss bears to the total applicable **limit** for all insurance against the loss.

    c.  Insurance under this Commercial Liability Coverage is excess over any other insurance:

        1)  if the other insurance, whether primary, excess, contingent or on any other basis, provides:

BP-200                          — 23 —                          © Copyright 1987 AAIS

Case ID: 191003548

a) fire, extended coverage, builders' risk, installation risk or similar coverage for **your** work; or

b) fire insurance for premises rented to **you**; or

2) if the other insurance applies to any loss arising out of the maintenance or use of aircraft, **autos** or watercraft which may be covered by this policy.

d. When this insurance is excess over any other insurance:

1) **we** will have no duty under Coverage L to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, **we** will do so. However, **we** will be entitled to the **insured's** rights against all those other insurers.

2) **we** will pay **our** share of the amount of loss, if any, that exceeds the sum of:

a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b) the total of all deductibles and self-insured amounts required by such other insurance.

**We** will share the remaining loss with any other insurance that is not described in this excess insurance provision and was not bought specifically to apply in excess of the **limits** of insurance shown on the Declarations page of this Commercial Liability Coverage.

6. **Separate Insureds** — Coverage provided under the Commercial Liability Coverage applies separately to each **insured** against whom claim is made or suit is brought. This does not affect the **limits** stated under How Much We Pay.

7. **Motor Vehicle Financial Responsibility Certification** — When Commercial Liability Coverage is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided for **bodily injury** liability or **property damage** liability will comply with the provisions of the law to the extent of the coverage and **limits** of insurance required by that law.

---

## NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply:

1. under any liability coverage, to **bodily injury** or **property damage**:

a. with respect to which an **insured** under the policy is also an **insured** under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any policy but for its termination upon exhaustion of its **limit** of liability; or

b. resulting from the **hazardous properties** of **nuclear material** and with respect to which:

1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or

2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. under any liability coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material** if:

a. the **nuclear material**:

1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured**; or

2) has been discharged or dispersed therefrom;

b. the **nuclear material** is contained in spent fuel or **waste** at any time possessed, handled, used, stored, processed, transported or disposed of by or on behalf of an **insured**; or

c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance,

---

     © Copyright 1987 AAIS

Case ID: 191003548

operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c.) applies only to **property damage** to such **nuclear facility** and any property thereat.

## DEFINITIONS

The following definitions apply to the Nuclear Energy Liability Exclusion:

1. **Hazardous Properties** — These include radioactive, toxic or explosive properties.

2. **Nuclear Material** — This means **source material, special nuclear material** or **by-product material.**

3. **Source Material, Special Nuclear Material, By-product Material** — These have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

4. **Spent Fuel** — This means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.**

5. **Waste** — This means any **waste** material:

   a. containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and
   b. resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**

6. **Nuclear Facility** — This means:

   a. any **nuclear reactor.**
   b. any equipment or device designed or used for:

      1) separating the isotopes of uranium or plutonium;
      2) processing or utilizing **spent fuel;** or
      3) handling, processing or packaging **waste.**

   c. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-223 or any combination thereof, or more than 250 grams of uranium-235.
   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste;**

   and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

7. **Nuclear Reactor** — This means any apparatus designed or used:

   a. to sustain nuclear fission in a self-supporting chain reaction; or
   b. to contain a critical mass of fissionable material.

8. **Property Damage** — This includes all forms of radioactive contamination of property.

© Copyright 1987 AAIS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Complaint has been served and filed this day via ECF to the following person(s):

Steven J. Schildt, Esquire
Jeffrey M. Brenner, Esquire
POST & SCHELL, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103-2808
215-587-1089
*Attorneys for Defendant*
*Utica First Insurance Company*

**REED SMITH LLP**

Dated:  February 7, 2020

By: _/s/ Douglas R. Widin_____
Douglas R. Widin, Esquire
Elizabeth Vieyra, Esquire
REED SMITH LLP
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
*Attorneys for Plaintiff*